**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELANIE HOEG, ANGELA DAVIS, MELINDA GARCIA, and 1,025 OTHER INDIVIDUALS[1], | ) ) ) ) | |
| Petitioners, | ) ) | Civil Action No. 1:23-cv-01951 |
| vs. | ) ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD. (d/b/a Samsung Electronics America, Inc.), | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

**PETITIONERS' MOTION TO COMPEL ARBITRATION (CORRECTED)**

---

[1] A list containing the full names and locations of each of the 1,028 Individual Petitioners is attached to the Petition to Compel Arbitration as Exhibit A. [ECF 1-1].

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 4

    A.  Samsung Requires That Users Consent to its Arbitration Agreement .................................. 4

    B.  Petitioners Filed Individual Arbitration Demands Against Samsung for BIPA Violations, Satisfied all Filing Requirements, and Paid Their Filing Fees. ............................................. 6

    C.  Samsung Failed to Pay Its Portion of the Initial Filing Fees. ............................................... 7

APPLICABLE LAW ...................................................................................................... 8

ARGUMENT ................................................................................................................. 8

    A.  The Parties Entered into a Valid Arbitration Agreement. ..................................................... 9

    B.  The Arbitration Agreement Covers the Present Dispute. ..................................................... 11

    C.  Samsung Refused to Arbitrate in Breach of the Agreement When it Willfully Failed to Pay its Share of Filing Fees as Directed by AAA. ................................................................. 12

    D.  The Court Should Compel Samsung to Arbitrate Under the Terms of its Agreement. ........ 14

CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*Abernathy v. DoorDash, Inc*.,
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................................... 13

*Allemeier v. Zyppah, Inc.*,
    CV 18-7437 PA (AGRX), 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ..................... 13

*Am. Express Co. v. Italian Colors Rest.,*
    570 U.S. 228 (2013)......................................................................................................... 14

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).................................................................................................... 1, 8

*Beauperthuy v. 24 Hour Fitness USA, Inc.,*
    No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011)......................................... 13

*Beture v. Samsung Elecs. Am.,*
    2018 WL 4621586 (D.N.J. July 18, 2018).................................................................. 8, 10

*Bland v. Rahar*,
    No. 06-3072, 2008 WL 109388 (C.D. Ill. Jan. 9, 2008)................................................. 10

*Cannon-Stokes v. Potter*,
    453 F.3d 446 (7th Cir. 2006) ........................................................................................... 1

*Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*,
    2016 WL 4036754 (N.D. Ill. July 28, 2016).................................................................... 8

*Croasmun v. Adtalem Glob. Educ., Inc.*,
    No. 20 C 1411, 2020 WL 7027726 (N.D. Ill. Nov. 30, 2020)................................... 13, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985).......................................................................................................... 8

*Devito v. Chicago Park Dist.*,
    270 F.3d 532 (7th Cir. 2001) .......................................................................................... 10

*Evans v. Affiliated Computer Servs. Inc.*,
    682 F. App'x 608 (9th Cir. 2017) ................................................................................... 15

*FCC v. Airadigm Commc'ns, Inc.*,
    616 F.3d 642 (7th Cir. 2010) .......................................................................................... 10

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) .......................................................................................... 11

*In re Prochnow*,
    467 B.R. 656 (C.D. Ill. 2012) ........................................................................... 11

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    298 F. Supp. 3d at 1300 .................................................................................. 7, 10

*Matter of Cassidy*,
    892 F.2d 637 (7th Cir. 1990) ............................................................................ 10

*McClenon v. Postmates Inc.*,
    473 F. Supp. 3d 803 (N.D. Ill. 2020) ............................................................... 14

*McNamara v. Samsung Telecommunications America*,
    2014 WL 5543955 (N.D. Ill. Nov. 3, 2014) .................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .............................................................................................. 15

*Postmates Inc. v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. Jan. 19, 2021) ................................................... 13

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) ....................................................................... 13

*Rapaport v. Soffer*,
    No. 2:10–cv–00935–KJD–RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011) ................. 13

*Schein v. Archer and White Sales, Inc.*,
    139 S. Ct. at 530 (Jan. 8, 2019) ....................................................................... 11

*Schmidt v. Samsung Elecs. Am. Inc.*,
    2017 WL 2289035 (W.D. Wash.) .................................................................. 7, 10

*Sink v. Aden Enters, Inc.*,
    352 F.3d 1197 (9th Cir. 2003) ......................................................................... 13

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) .............................................................................................. 12

*Spaine v. Cmty. Contacts, Inc.*,
    756 F.3d 542 (7th Cir. 2014) ............................................................................. 1

*Taylor v. Samsung Elecs. Am.*,
    2020 WL 1248655 (N.D. Ill. Mar. 16, 2020) .................................................... 7

*Tillman v. Tillman*,
  825 F.3d 1069 (9th Cir. 2016) ........................................................................ 15

*U.S. Titan, Inc. v. Guangzhou Zhen HUA Shipping Co.*,
  No. 96-CIV-0936 WCC, 2003 WL 23309445 (S.D.N.Y. Sept. 26, 2003) ...................... 15

*Unite Here Loc. 1 v. The Standard Club*,
  No. 07-CV-2530, 2007 WL 2962788 (N.D. Ill. Oct. 5, 2007) ........................................ 8

*Vasadi v. Samsung Elecs. Am. Inc.*,
  2021 WL 5578736 (D.N.J. Nov. 29, 2021) ........................................... 4, 7, 9, 10

*Velasquez-Reyes v. Samsung Elecs. Am. Inc.*,
  2020 WL 6528422 (C.D. Cal. Oct. 20, 2020) ........................................... 7, 10

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  466 F.3d 577 (7th Cir. 2006) ........................................................................ 8

**STATUTES**

9 U.S.C. § 4 ................................................................................. 3, 8, 14, 15

Federal Arbitration Act ("FAA") ................................................................. 1

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA") ............................. 2

## INTRODUCTION

### "Arbitration for me, but not for thee."

As Samsung just recently acknowledged in another federal district court barely two weeks ago, "The first lines of [Samsung's] Arbitration Agreement notify users that it is a ***binding legal agreement*** between [the user] and Samsung Electronics America, Inc." Declaration of Gary Klinger ("Klinger Decl.") Ex. P [Samsung's Motion to Compel Arbitration in *McDougall v. Samsung Elecs. Am., Inc.*, No. 1:23-cv-00168-LGS (S.D.N.Y. Apr. 11, 2023)] at 5 (cleaned up and emphasis added); *see also id.* at 24 ("The Arbitration Agreement between Plaintiff and [Samsung] is the paradigm of a broad clause to arbitrate[.]") (cleaned up). Yet, in what could well be the literal definitions of hypocrisy and irony, at the ***very same time*** that Samsung is seeking to enforce the Arbitration Agreement against a Galaxy smartphone user in the Southern District of New York, Samsung is seeking to dodge the ***very same*** Arbitration Agreement in this case. Samsung is judicially estopped from taking diametrically opposite positions in two federal district courts, and this Court should not let Samsung use the federal judiciary in its attempt to pervert the justice system. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial estoppel is designed to prevent the perversion of the judicial process") (Easterbrook, J.); *see also Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014) ("The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions.").

The Federal Arbitration Act ("FAA") "ensur[es] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (cleaned up). For more than a decade, Samsung has championed this principle to avoid meaningful accountability in consumer-oriented litigation. Through a panoply of shrinkwrap and clickwrap

agreements, Samsung requires that its customers relinquish their right to trial by jury and their ability to engage in class actions, and forces them into mandatory, final, and binding arbitration. According to the terms and conditions that apply to the use of Samsung Galaxy devices, accessories, and software, electronic acceptance or the mere use, retention, or opening of a Samsung Galaxy Device's packaging constitutes assent to the terms of Samsung's dispute resolution process. Under those terms, every user of a Samsung Galaxy smartphone agrees to resolve any dispute with Samsung through arbitration administered by the American Arbitration Association ("AAA") under its rules for consumer arbitration (the "Consumer Rules").

Petitioners here are Samsung Galaxy device users pursuing arbitral claims against Samsung and alleging that Samsung's technology surreptitiously collects, captures, or otherwise obtains scans of Petitioners' facial geography via the "Gallery app" without first obtaining their written informed consent, as required under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Between October 11 and October 25, 2022, Petitioners filed 1,028 individual demands with AAA. On November 18, 2022, Petitioners were notified that they fulfilled all administrative filing requirements, including payment of filing fees. The AAA subsequently informed the parties that Samsung was now responsible for its portion of the filing fees and warned on multiple occasions that, unless the AAA received payment from Samsung, the AAA would administratively close the files. Samsung then tactically breached its own agreement by refusing to pay its share of the initial administrative filing fees, resulting in the administrative closure of the cases.[2]

---

[2] An administrative closure is not a disposition on the merits or a dismissal with prejudice. AAA expressly represented that Petitioners "may refile these cases." Ex. J [ECF 1-12] at 2.

Unless otherwise indicated, all "Ex." citations refer to exhibits attached to the Petition [ECF 1].

Petitioners, therefore, seek an order requiring that Samsung arbitrate each Petitioner's claim in accordance with the arbitration provision pursuant to 9 U.S.C. § 4. The Court should grant Petitioners' Motion, enforce the arbitration provision as written, and order Samsung to comply with AAA's administrative determinations, for three reasons:

First, there is no genuine dispute that Petitioners and Samsung entered into a valid arbitration agreement. Samsung drafted the underlying agreement at issue and Petitioners do not dispute its existence or enforceability. Indeed, Samsung has time and again enforced its arbitration provision to prevent users from litigating in court, just like Samsung is doing in *McDougall*—and is estopped from taking an inconsistent position here.

Second, Petitioners' claims fall squarely within the scope of the arbitration agreement. The governing language is broad and requires both parties to resolve exclusively through final and binding arbitration before AAA all disputes related in any way to or arising from the sale, condition, or performance of Samsung's products. The terms, therefore, encompass Petitioners' claims because their claims are all related to their use of Samsung Galaxy devices preloaded with the Gallery app.

Third, when Samsung failed to pay its share of the filing fees as the AAA directed, it refused to proceed with arbitration. As a matter of law, a refusal to pay is a material breach of the agreement. It is also a futile (and transparent) attempt to shift the entire cost of arbitration onto individual consumers—contrary to the terms of the agreement, Samsung's own positions before other district courts, AAA's directive, and public policy.

Samsung chose arbitration. Samsung drafted the agreement. Samsung made the business decision to preclude class, collective, and representative claims in hopes that consumers would forego their claims altogether based on the economics of arbitration and inability to hire legal

counsel. That Samsung regrets its business decision is irrelevant. The Court should not turn a blind eye to Samsung's Orwellian doublespeak—and should compel Samsung to arbitration as other courts have in analogous cases, including ordering Samsung to pay its share of the arbitration fees to AAA.

## BACKGROUND

### A. Samsung Requires That Users Consent to its Arbitration Agreement.

By opening the device packaging or using the device (even if not the purchaser), every user of a Samsung Galaxy device agreed Samsung's Terms & Conditions (the "Terms"), which were provided with the device and contained, among other things: (1) Samsung's "Arbitration Agreement;" (2) Samsung's "Standard Limited Warranty;" (3) Samsung's "End User License Agreement (EULA);" and (4) Samsung's "Health & Safety Information." Petition to Compel Arbitration [ECF 1] (hereinafter, "Petition") ¶ 3; Ex. B-1; Ex. B-2; Ex. B-3. These agreements contain substantively identical provisions requiring mandatory individual arbitration (the "Mutual Arbitration Provision"). Ex. B-1 § 1 at 9-12; Ex. B-2 at 2-3; Ex. B-3 §16. The Mutual Arbitration Provision unambiguously applies to "all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product" which "shall be resolved exclusively through final and binding arbitration, and not by a court or jury." *Id*. Each Petitioner received and agreed to those terms—indeed, Petitioners could not have used their devices without agreeing to Samsung's terms. Klinger Decl. Ex. Q [Decl. of Nicole Cantwell iso Samsung's Motion to Compel Arbitration in *McDougall v. Samsung Elecs. Am., Inc.*, No. 1:23-cv-00168-LGS (S.D.N.Y. Apr. 11, 2023)] ¶¶ 4-24; *accord* Klinger Decl. Ex. R [Decl. of Nicole Cantwell iso Samsung's Motion to Compel Arbitration in *G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021)] ¶¶ 4-41; Klinger Decl. Ex. S [Decl. of Nicole Cantwell iso Samsung's Motion to Compel Arbitration in *Vasadi v. Samsung Elecs. Am.,*

*Inc.*, No. 2:21-cv-10238 (D.N.J. Jul. 12, 2021)] ¶¶ 3-38; Ex. T [Decl. of Tim Rowden iso Samsung's Motion to Compel Arbitration in *McNamara v. Samsung Telecomms. Am., LLC*, No. 1:14-cv-01676 (N.D. Ill. May 4, 2014)] ¶¶ 2-42.

If a party disputes the enforceability of the Mutual Arbitration Provision or how that provision should be applied, that dispute must itself be decided by an arbitrator. Ex. B-1 § 1 at 10; Ex. B-2 at 2; Ex. B-3 §16 ("The arbitrator shall decide all issues of interpretation and application of this Agreement."). There is no exception to this broad delegation clause. *Id*. The Mutual Arbitration Provision also provides that each Petitioner's arbitration "shall be governed by the [AAA's] Commercial Arbitration Rules applicable to consumer disputes." *Id*. Consistent with the delegation clause in Samsung's arbitration agreement, the AAA Consumer Rules state that the arbitrator will resolve "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Ex. C, Consumer Rule 14(a).

By designating the Consumer Rules to govern disputes, Samsung and users are deemed to "have made these Consumer Arbitration Rules a part of their arbitration agreement." Ex. C, Consumer Rule 1(a). The Consumer Rules also state that "[w]hen parties agree to arbitrate under [the Consumer Rules] . . . they thereby authorize the AAA to administer the arbitration." *Id*., Consumer Rule 1(b). Once an arbitrator is appointed, "[t]he arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties." *Id*., Consumer Rule 53. But before an arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." *Id*. Notably, AAA is authorized to "***require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee***." *Id*., Consumer

Rule 6 (emphasis added); *accord id.*, Consumer Rule 54. Moreover, the Mutual Arbitration Provision between Petitioners and Samsung expressly require that Samsung pay a portion of these fees and costs necessary to commence arbitration, including as determined by AAA. Ex. B-1 at 10; Ex. B-2 at 2; Ex. B-3 § 16.

AAA's Consumer Fee Schedule for Multiple Case Filings applies where, as here, twenty-five (25) or more similar claims for arbitration are filed against the same party and counsel for the parties is consistent across all cases. Ex. C, Consumer Rules at 33. The Multiple Case Filing Fee Schedule in effect when Petitioners filed their demands capped an individual's filing fee at $100 for the first 500 individuals and $50 for the remainder of individuals, and imposes a filing fee on companies of $300 per individual for the first 500 individuals, $225 per individual for the next 1,000 individuals, $150 per individual for the next 1,500 individuals, and $75 per individual for the remainder, plus a $1,400 case management fee for each individual.[3] The Multiple Case Fee Schedule further provides that "[t]he business's share of filing fees is due as soon as the employee or individual meets his or her filing requirements." *Id.* at 2.

### B. Petitioners Filed Individual Arbitration Demands Against Samsung for BIPA Violations, Satisfied all Filing Requirements, and Paid Their Filing Fees.

Beginning October 11, 2022, Petitioners filed their 1,028 individual demands before AAA containing each claimant's individual information, describing each claimant's individual claims, and requesting individual relief. Petition ¶ 9; Ex. E. In correspondence dated November 18, 2022, AAA determined that each claimant's demand met AAA's filing requirements, including the payment of the claimant filing fees. Petition ¶ 10; Ex. F. The correspondence also stated that

---

[3] AAA Consumer Arbitration Rules (eff. Nov. 1, 2020), https://www.adr.org/sites/default/files/ Consumer_Fee_Schedule_2.pdf.

"Samsung is now responsible for payment of the initial administrative filing fees totaling $311,000," and provided a due date of "December 19, 2022." Petition ¶ 10; Ex. F at 1.

**C. Samsung Failed to Pay Its Portion of the Initial Filing Fees.**

Samsung did not pay. Instead, Samsung waited until the final day before its share of the arbitration fees was due to tell AAA that it "will provide a substantive response to [AAA's e-mail] shortly." Petition ¶ 11; Ex. G [ECF 1-9]. After counsel for Petitioners inquired to AAA regarding the status of the matter and Samsung's payment, AAA provided Samsung with an extension until January 11, 2022, and warned that "[a]bsent receipt of a payment from the Respondent, the AAA will be closing our files administratively." Petition ¶ 12; Ex. H. Samsung still did not pay the filing fee, but asked (with Petitioners' permission) that AAA stay the matter (including Samsung's payment of the fees) pending the outcome of an upcoming mediation. Petition ¶ 13; Ex. I. AAA declined Samsung's request, administratively closed the cases, and returned Petitioners' filing fees, all due to Samsung's failure to pay its share of the required filing fees. Petition ¶¶ 14-17; Ex. J; Ex. K. The mediation failed, and Samsung continued refusing to pay the fees, thus forcing the instant Petition filed on March 28, 2023.

Samsung's refusal is all the more perplexing (and hypocritical) because it repeatedly enforced the very same Mutual Arbitration Provision—and preventing consumers from pursuing class action claims—when Samsung deems it beneficial. *See, e.g.*, *Vasadi v. Samsung Elecs. Am. Inc.*, 2021 WL 5578736, at *9 (D.N.J. Nov. 29, 2021); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020); *Schmidt v. Samsung Elecs. Am., Inc.,* 2017 WL 2289035, at *3-4 (W.D. Wash. May 25, 2017); *McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955, at *1 (N.D. Ill. Nov. 3, 2014); *Taylor v. Samsung Elecs. Am., Inc*., 19 C 4526, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig*., 298 F. Supp. 3d 1285,

1300 (N.D. Cal. 2018); *Beture v. Samsung Elecs. Am., Inc*., 2018 WL 4621586, at *6 (D.N.J. July 18, 2018).

## APPLICABLE LAW

Under the FAA, courts "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Concepcion*, 563 U.S. at 339. The FAA codifies the right of a party to specific performance of an arbitration agreement: "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (emphasis added). When a party moves to compel arbitration pursuant to Section 4 of the FAA, it need show only (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). If these requirements are met, the FAA "mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).[4]

Where, as here, the parties agreed to a broad "delegation clause" that delegates questions regarding the enforceability or scope of an arbitration clause to an arbitrator, the court need only determine that the parties entered into a valid arbitration agreement. Any other issues are for the arbitrator.

## ARGUMENT

---

[4]     Petitioners may institute a court action by filing a petition to compel arbitration, as they have done here. *See, e.g.*, *Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, 2016 WL 4036754, at *2 (N.D. Ill. July 28, 2016); *Unite Here Loc. 1 v. The Standard Club*, No. 07-CV-2530, 2007 WL 2962788, at *1 (N.D. Ill. Oct. 5, 2007).

### A. The Parties Entered into a Valid Arbitration Agreement.

It is beyond dispute that Petitioners and Samsung entered into a valid arbitration agreement. Within the packaging of each Samsung Galaxy device is a copy of the Terms, with included Mutual Arbitration Provision, which each Petitioner agreed to by opening the product packaging, using the device, and/or registering the device. Petition ¶ 3; Exs. B-1, B-2, & B-3. As Samsung recently detailed in a motion to compel arbitration *against* a Samsung Galaxy user—the same devices at issue in this action—users are informed in multiple ways that using and retaining the device constitutes acceptance of the Mutual Arbitration Provision: "(i) in bold font on the Galaxy S21's exterior package; (ii) in a short 'Terms and Conditions' pamphlet included inside the box; (iii) on-screen during the device's set-up process; (iv) in the preloaded 'Settings' on the device itself; and (v) on SEA's website." Klinger Decl. Ex. P [Samsung Mot. to Compel Arb. in *McDougall*, No. 1:23-cv-00168-LGS (S.D.N.Y. Apr. 11, 2023)] at 1, 3-8; Klinger Decl. Ex. Q [Decl. of Nicole Cantwell iso Samsung's Motion to Compel Arbitration in *McDougall*, No. 1:23-cv-00168-LGS (S.D.N.Y. Apr. 11, 2023)] ¶¶ 4-24; *accord* Klinger Decl. Ex. R [Decl. of Nicole Cantwell iso Samsung's Motion to Compel Arbitration in *G.T.*, No. 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021)] ¶¶ 4-41; Klinger Decl. Ex. S [Decl. of Nicole Cantwell iso Samsung's Motion to Compel Arbitration in *Vasadi*, No. 2:21-cv-10238 (D.N.J. Jul. 12, 2021)] ¶¶ 3-38; Ex. T [Decl. of Tim Rowden iso Samsung's Motion to Compel Arbitration in *McNamara*, No. 1:14-cv-01676 (N.D. Ill. May 4, 2014)] ¶¶ 2-42.

Here, too, Petitioners each purchased a Samsung Galaxy device and received the Terms with included arbitration provision. *See, e.g.*, Petition ¶¶ 2-4, 19, 27-28, 39; Ex. E; Ex. F. Petitioners also unboxed their devices, completed the set-up process, and used their devices. *Id.* And Petitioners did not opt-out of arbitration. *Id.* As such, Petitioners accepted Samsung's mandatory arbitration requirement.

Samsung routinely enforces its arbitration agreement against consumers and successfully compels them to arbitrate their claims, including in this very District. *See, e.g.*, *Vasadi*, 2021 WL 5578736, at *9 (enforcing Arbitration Agreement announced on Samsung "Galaxy S20 box" and "'Terms and Conditions' pamphlet contained in the Galaxy S20 box"); *Velasquez-Reyes*, 2020 WL 6528422, at *5 (compelling arbitration based on clickwrap set-up process requiring SEA user to acknowledge arbitration provision); *Schmidt*, 2017 WL 2289035, at *3-4 (users assented to Arbitration Agreement where they "were warned on the outside of the [device's] box that 'additional Samsung terms and conditions' applied to their devices"); *McNamara*, 2014 WL 5543955, at *1 (holding that smartphone's product user guide provided reasonable notice of the arbitration clause); *Taylor*, 2020 WL 1248655, at *4 (same); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig*., 298 F. Supp. 3d at 1300 (arbitration clause binding because plaintiff received notice of arbitration clause and opt-out option in multiple ways); *Beture*, 2018 WL 4621586, at *6 (rejecting argument that smartphone users "lacked reasonable notice of" arbitration agreement where notice was "displayed . . . during initial activation"). These are just a few examples. The result should be no different where, as here, it is the consumer enforcing the arbitration agreement against Samsung.

Of note, Samsung cannot argue in good faith that Petitioners may not enforce the Mutual Arbitration Provision. "The doctrine of judicial estoppel is applied to prevent litigants from 'playing fast and loose with the courts.'" *Bland v. Rahar*, No. 06-3072, 2008 WL 109388, at *2 (C.D. Ill. Jan. 9, 2008) (quoting *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)). It prevents a party who prevailed a case on one ground from turning around in a later case and repudiating that ground in an effort to win a second victory. *Devito v. Chicago Park Dist.*, 270 F.3d 532, 535 (7th Cir. 2001). Mutuality of parties is not required to invoke judicial estoppel. *FCC v. Airadigm*

*Commc'ns, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010). The factors considered when applying judicial estoppel include: whether the party to be estopped (1) took a position inconsistent with an earlier position; (2) convinced a court to accept the earlier position such that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re Prochnow*, 467 B.R. 656, 665 (C.D. Ill. 2012) (citation and internal quotation marks omitted).

Here, again, Petitioners seek to invoke the same Mutual Arbitration Provision that Samsung successfully enforced against other consumers in other litigation. It is plainly inconsistent to argue before one court that the same Mutual Arbitration Provision is enforceable, and to subsequently argue before another court that it is not. Surely Samsung would derive an unfair advantage though such inconsistent positions—*i.e.*, enforcing the agreement when it suits its interests but repudiating the same agreement when it does not.

Accordingly, the parties entered into a valid arbitration agreement.

## B. The Arbitration Agreement Covers the Present Dispute.

That the parties have entered into a valid arbitration agreement is sufficient by itself to compel arbitration because Samsung's Terms delegate to the arbitrator all questions regarding the scope of the arbitration agreement: "The arbitrator shall decide all issues of interpretation and application of this Agreement." Exs B-1, B-2, & B-3. It is well-settled that, under a broad delegation clause like that in the Terms, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Schein*, 139 S. Ct. at 530. Samsung agrees—it argued in *G.T.* that "the scope of the Arbitration Agreement—including whether it encompasses Plaintiffs' claims—is an issue that should be resolved by the arbitrator." Ex. O at 17 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).

Regardless, the Mutual Arbitration Provision covers the present dispute. The Terms state that "all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product shall be resolved exclusively through final and binding arbitration, and not by a court or jury." Exs. B-1, B-2, & B-3. And Petitioners allege that Samsung's use of facial-recognition technology in its Galaxy devices violates Illinois law, Petition ¶¶ 2, 27-28, which is a dispute over the "sale, condition, or performance" of Samsung devices. Samsung, again, agrees that the Petitioners' BIPA claims are within the scope of the Mutual Arbitration Provision: "[t]he relevant Arbitration Agreement language is broad and requires arbitration of all disputes related to the Gallery App and other activities on the phone." Ex. O at 6.

### C. Samsung Refused to Arbitrate in Breach of the Agreement When it Willfully Failed to Pay its Share of Filing Fees as Directed by AAA.

Petitioners filed their arbitration demands with AAA and timely paid the associated filing fees. Petition ¶ 9. AAA had barely begun administration of the cases when Samsung refused to pay its fee—thereby halting the matter, resulting in administrative closure, and forcing Petitioners to seek a court order compelling Samsung to arbitration. Petition ¶¶ 10-17. AAA made clear that Petitioners "may refile these cases," Ex. J at 2, as Petitioners will do upon issuance of an order compelling arbitration.

It is axiomatic that contracts "to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." *Southland, Corp. v. Keating*, 465 U.S. 1, 7 (1984). "Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Id.* A refusal to pay is, therefore, a refusal to arbitrate. Courts around the country consistently hold that (1) a failure to pay filing fees as directed by an arbitrator equates to a refusal to arbitrate and a breach of contract, and (2) the non-breaching party may

compel arbitration. *See, e.g.*, *Croasmun v. Adtalem Glob. Educ., Inc.*, No. 20 C 1411, 2020 WL 7027726, at *3 (N.D. Ill. Nov. 30, 2020) (compelling arbitration where party refused to pay arbitration fees); *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *9 (C.D. Cal. Jan. 19, 2021) ("under the FAA, 'failure to pay required costs of arbitration [i]s a material breach' that allows the counterparty to elect to proceed in court or compel specific performance."); *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *1, *4 (C.D. Cal. Sept. 21, 2018) (defendant refused to arbitrate in part by repeatedly refusing to pay its portion of the filing fee as determined by the AAA); *Rapaport v. Soffer*, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011) (finding the defendant was in default under FAA § 3 because the AAA "closed" or "terminated" the case because of his failure to pay fees); *Sink v. Aden Enters, Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (failure to pay required costs of arbitration was a material breach of obligations in connection with the arbitration); *Beauperthuy v. 24 Hour Fitness USA, Inc.,* 2011 WL 6014438, at *2, *4 (N.D. Cal. Dec. 2, 2011) (rejecting argument that defendants were not refusing to arbitrate under the FAA because they were willing to arbitrate in another location); *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1297 (10th Cir. 2015) (holding that a party defaulted on its arbitration agreement when AAA terminated the arbitration due to the party's nonpayment because "the AAA did not ask [the non-breaching party] to advance [the breaching party's] fees").

This principle applies with particular force where, as here, it is the drafting party with superior bargaining power and resources that refuses arbitrate. As explained by Judge Alsup in *Abernathy v. DoorDash, Inc*., 438 F. Supp. 3d 1062 (N.D. Cal. 2020):

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual

arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. ***This hypocrisy will not be blessed***, at least by this order.

*Id.* at 1067–68 (emphasis added).  This Court, too, should put an end to Samsung's shenanigans.

In the same vein, because AAA determined that Petitioners' filings comply with AAA's rules, any disputes regarding the Terms' interpretation or application are for the arbitrator. That cannot happen until Samsung pays its share of the filing fees—so arbitrators can be assigned.

**D.  The Court Should Compel Samsung to Arbitrate Under the Terms of its Agreement.**

Once a court determines a valid arbitration agreement exists, it must enter an order "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA "mandates that district courts ***shall*** direct the parties to proceed to arbitration." *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 806 (N.D. Ill. 2020) (emphasis added).

Here, as explained above, the Terms incorporates the AAA rules which provide that Samsung is responsible for filing, administrative, and arbitration fees according to the fee schedules for consumer disputes and mass filings. *See, e.g.*, Ex. B-1 at 10 ("Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ('Large Claim') shall be determined according to AAA rules."); Ex. B-2 at 2 (same); Ex. B-3 § 16 (same). Because Samsung and each Petitioner entered into a valid arbitration agreement applicable to each Petitioner's underlying privacy claims, and because Samsung breached that agreement, this Court's role is clearly defined—it must "rigorously enforce the arbitration agreement in accordance with [its] terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013), and issue an "order directing that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4.

Petitioners emphasize that Samsung's failure to pay its portion of filing fees has effectively shut the door to arbitral relief from AAA—which can be remedied only by an order compelling arbitration. Critically, if Samsung continues its refusal to arbitrate and pay its share of fees despite a court order compelling arbitration, and AAA "declines to take jurisdiction without payment of its fees, ***petitioners should not face checkmate***." *Croasmun v. Adtalem Glob. Educ., Inc.*, No. 20 C 1411, 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020) (emphasis added). In that event, Samsung should be held in civil contempt. *See Evans v. Affiliated Computer Servs. Inc.*, 682 F. App'x 608, 609 (9th Cir. 2017) ("The district court did not abuse its discretion in granting defendants' motion for contempt where, on more than one occasion, *Evans* violated the district court's order to arbitrate her employment-based claims."); *U.S. Titan, Inc. v. Guangzhou Zhen HUA Shipping Co*., 2003 WL 23309445, at *5 (S.D.N.Y. Sept. 26, 2003) ("The Court . . . orders that unless Guangzhou complies with that Order by proceeding with arbitration in London as promptly as is reasonably practicable, this Court will impose sanctions . . . ."). Anything less would deprive Petitioners of access to the arbitral forum they and Samsung mutually consented to and contravene the spirit and policy of the FAA. *Tillman v. Tillman*, 825 F.3d 1069, 1075–76 n.1 (9th Cir. 2016) ("it may be contrary to the 'structure and purpose of the FAA' to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules.").

Lastly, the FAA further mandates that a motion to compel be decided on an expedited basis. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Samsung has stalled for nearly 10 months. This case is ripe for summary disposition.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel Samsung to arbitration.

Dated:  May 10, 2023

Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
Stuart A. Davidson
Mark Dearman
Alexander C. Cohen (*pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
acohen@rgrdlaw.com

Jonathan B. Cohen (*pro hac vice*
forthcoming)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
(813) 699-4056
jcohen@milberg.com

Attorneys for Petitioners

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of May, 2023, I caused a true and correct copy of the foregoing notice to be filed with the Clerk of the Court for the Northern District of Illinois via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

*/s/ Gary M. Klinger*

Gary M. Klinger
