THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MELANIE HOEG, ANGELA DAVIS, MELINDA GARCIA, and 1,025 OTHER INDIVIDUALS,**

                        *Petitioners*,

         - against -

**SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD**. (d/b/a Samsung Electronics America, Inc.),

                        *Respondents*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        :    Civil Action No: 1:23-cv-1951

        :    Hon. Jorge L. Alonso

## RESPONDENTS' OPPOSITION TO
## PETITIONERS' MOTION TO COMPEL ARBITRATION

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
   SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700


Dated: June 14, 2023

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................4

    A.    The AAA Has Rules Designed For Mass Arbitrations That Govern This Dispute ................................................................4

    B.    Milberg's Mass Arbitration Model Is Designed To Leverage Large Pools Of Claimants And Enormous Arbitration Fees To Extract Unwarranted Settlements................................................................5

    C.    August 2021–Early 2022: Another Law Firm Brings A Putative BIPA Class Action Against Samsung; Milberg Then Uses Misleading Advertisements To Solicit Tens Of Thousands Of BIPA Claimants Against Samsung ................................................................9

    D.    June–September 2022: Milberg Threatens To File Thousands Of Arbitrations Against SEA Without Regard To The Merits Of The Claims (Or Lack Thereof) ................................................................16

    E.    October 2022: Milberg, Now Partnered With Robbins Geller, Files Over A Thousand Arbitration Demands Against SEA And Threatens To File Tens Of Thousands More ................................................................17

    F.    October 2022: Labaton Commences The *Wallrich* Action On Behalf Of 49,986 Mass Arbitration Clients Based On The Same Baseless BIPA Claims ................................................................19

    G.    November 2022–January 2023: Samsung, Milberg, And Robbins Geller Agree To Stay The Arbitrations Pending Mediation; The AAA Instead Closes Them, But States That The Demands Can Be Refiled If The Mediation Is Unsuccessful ................................................................19

    H.    Samsung's Review Of Milberg's Claimant List Identifies Numerous Deficiencies................................................................20

    I.    March 22–28, 2023: The Parties Conduct An Unsuccessful Mediation; Thereafter, Instead Of Refiling Any Arbitration Demands, Milberg And Robbins Geller Commence This Action Putatively Seeking To Compel Arbitration................................................................21

J.      March 30, 2023: Samsung Files A Motion To Reassign This Case To The Judge Already Presiding Over The *Wallrich* Action, Pointing Out That Nearly A Quarter Of The Petitioners In This Action Are Also Petitioners In *Wallrich* .................................................................................................22

ARGUMENT ..........................................................................................................................24

I.      THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED BECAUSE NEITHER SEA NOR SEC REFUSED TO ARBITRATE ...............24

II.    PETITIONERS CANNOT COMPEL SEC TO ARBITRATE BECAUSE THEY NEVER PREVIOUSLY DEMANDED ARBITRATION AGAINST SEC..................................................................................................25

III.   PETITIONERS' REQUEST THAT SAMSUNG BE ORDERED TO PAY ARBITRATION FEES SHOULD BE DENIED BECAUSE NO FEES ARE OUTSTANDING AND THE COURT DOES NOT OTHERWISE HAVE THE AUTHORITY TO ORDER A PARTY TO PAY ARBITRATION FEES .........................................................................................27

IV.   PETITIONERS HAVE ADEQUATE REMEDIES AT LAW AND ARE NOT ENTITLED TO ANY EQUITABLE RELIEF ...........................................32

V.    THE DOCTRINE OF JUDICIAL ESTOPPEL IS INAPPLICABLE HERE........33

VI.   THE PETITION SHOULD BE DISMISSED FOR THE REASONS SET FORTH IN SAMSUNG'S MOTION TO DISMISS ...........................................35

CONCLUSION.......................................................................................................................35

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Abernathy v. DoorDash, Inc.*,
438 F. Supp. 3d 1062 (N.D. Cal. 2020) ..........................................................31

*Adams v. Postmates, Inc.*,
414 F. Supp. 3d 1246 (N.D. Cal. 2019),
*aff'd*, 823 F. App'x 535 (9th Cir. 2020)..........................................................27

*Allemeier v. Zyppah, Inc.*,
No. CV 18-7437 PA (AGR), 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ..................31

*Armbrister v. Pushpin Holdings, LLC*,
896 F. Supp. 2d 7463 (N.D. Ill. 2012) ..........................................................24

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011)....................................30, 31

*Bland v. Rahar*,
No. 06-3072, 2008 WL 109388 (C.D. Ill. Jan. 9, 2008) ........................................34, 35

*Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*,
No. 10 C 7031, 2013 WL 1286700 (N.D. Ill. Mar. 27, 2013) ........................................18

*Briggs & Stratton Corp. v. Local 232, International Union, Allied Industrial Workers of America*,
36 F.3d 712 (7th Cir. 1994) ..........................................................26

*Cannon-Stokes v. Potter*,
453 F.3d 446 (7th Cir. 2006) ..........................................................35

*City of Livonia Employees' Retirement System v. Boeing Co.*,
306 F.R.D. 175 (N.D. Ill. 2014)..........................................................18

*Croasmun v. Adtalem Global Education Inc.*,
No. 20 C 1411, 2020 WL 7027726 (N.D. Ill. Nov. 30, 2020)....................................28, 30

*Crooms v. Southwest Airlines Co.*,
459 F. Supp. 3d 1041 (N.D. Ill. 2020) ..........................................................12

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884, 887 (5th Cir. 2009) ..........................................................29

*DeVito v. Chicago Park District*,
270 F.3d 532 (7th Cir. 2001) ..........................................................35

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    725 F.2d 192 (2d Cir. 1984) ..................................................................................25

*FCC v. Airadigm Communications, Inc. (In re Airadigm Commc'ns, Inc.)*,
    616 F.3d 642 (7th Cir. 2010) .................................................................................35

*Gingiss International, Inc. v. Bormet*,
    58 F.3d 328 (7th Cir. 1995) ...................................................................................34

*Greco v. Uber Technologies, Inc.*,
    No. 4:20-cv-02698-YGR, 2021 WL 134578 (N.D. Cal. Jan. 14, 2021) ..........................31

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ...............................................................................................27

*Jacobs v. USA Track & Field*,
    374 F.3d 85 (2d Cir. 2004) ....................................................................................25

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
    390 F.3d 194 (2d Cir. 2004) ...................................................................................25

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
    363 F.3d 1010 (9th Cir. 2004) ...............................................................................29

*Livingston v. Associates Finance, Inc.*,
    339 F.3d 553 (7th Cir. 2003) .................................................................................34

*Lumbermens Mutual Casualty Co. v. Broadspire Management Services, Inc.*,
    623 F. 3d 476 (7th Cir. 2010) ................................................................................27

*Margalioth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    695 F. Supp. 756 (S.D.N.Y. 1988) ....................................................................28, 29

*Marzano v. Proficio Mortgage Ventures, LLC*,
    942 F. Supp. 2d 781 (N.D. Ill. 2013) .......................................................................26

*McClenon v. Postmates Inc.*,
    473 F. Supp. 3d 803 (N.D. Ill. 2020) .................................................................28, 29

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022) ..........................................................................................31

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) .................................................................................................24

*Mosley v. City of Chicago*,
    252 F.R.D. 445 (N.D. Ill. 2008) .............................................................................29

*Noe v. Smart Mortgage Centers, Inc.*,
    No. 21 CV 1668, 2021 WL 4283027 (N.D. Ill. Sept. 21, 2021)........................................34

*PaineWebber Inc. v. Faragalli*,
    61 F.3d 1063 (3d Cir. 1995)..........................................................................................26

*Paragon Micro, Inc. v. Bundy*,
    22 F. Supp. 3d 880 (N.D. Ill. 2014) ..............................................................................26

*Pohlman v. NCR Corp.*,
    No. 12 cv 6731, 2013 WL 3776965 (N.D. Ill. July 17, 2013) ........................................34

*Postmates Inc. v. 10,356 Individuals*,
    No. CV 20-2783 PSG (JEMx), 2021 WL 540155 (C.D. Cal. Jan. 19, 2021)...................30

*Pre-Paid Legal Services, Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) ....................................................................................30

*Prochnow v. Apex Properties, Inc.* (*In re Prochnow*),
    467 B.R. 656 (C.D. Ill. 2012) ......................................................................................35

*Rapaport v. Soffer*,
    No. 2:10-CV-00935-KJD-RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011)...................30

*Sanders v. JGWPT Holdings, LLC*,
    No. 14 C 9188, 2017 WL 4281123 (N.D. Ill. Sept. 27, 2017).......................................33

*Scholz v. Americare at Adams Pointe Assisted Living, LLC*,
    No. 20-CV-3034, 2021 WL 661841 (C.D. Ill. Feb. 19, 2021) ......................................24

*Sink v. Aden Enterprises, Inc.*,
    352 F.3d 1197 (9th Cir. 2003) ......................................................................................30

*Sjogren v. Maybrooks, Inc.*,
    214 Ill. App. 3d 8882 (1991) .......................................................................................33

*Spaine v. Community Contacts, Inc.*,
    756 F.3d 542 (7th Cir. 2014) ........................................................................................35

*Steffanie A. v. Gold Club Tampa, Inc.*,
    No. 8:19-cv-3097-T-33TGW, 2020 WL 4201948 (M.D. Fla. July 22, 2020).................32

*Tillman v. Tillman*,
    825 F.3d 1069 (9th Cir. 2016) ......................................................................................31

*Unilectric, Inc. v. Holwin Corp.*,
    243 F.2d 393 (7th Cir. 1957) ........................................................................................32

v

*Union Central Life Insurance Co. v. Andraos*,
  Nos. 1:09-cv-758, 1:11-cv-75, 2011 WL 6091771 (S.D. Ohio Oct. 21, 2011)*,
  report and recommendation adopted*, No. C-1-09-758, 2011 WL 6100275
  (S.D. Ohio Dec. 7, 2011) ...........................................................................27, 29

*United States v. Rural Electric Convenience Cooperative Co.*,
  922 F.2d 429 (7th Cir. 1991) ..................................................................32

*Vasadi v. Samsung Electronics America, Inc.*,
  No. 21-10238-WJM-AME, 2021 WL 5578736 (D.N.J. Nov. 29, 2021)..........................34

*Velasquez-Reyes v. Samsung Electronics America, Inc.*,
  No. ED CV 16-1953-DMG (KKx), 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020)..........34

*Zurich American Insurance Co. v. Watts Industries, Inc.*,
  466 F.3d 577 (7th Cir. 2006) ..................................................................24

## **STATUTES**

9 U.S.C. § 4.........................................................................................24, 26

Biometric Information Privacy Act,
  740 ILCS 14/1 *et seq.*........................................................................1, 9, 16

## **OTHER AUTHORITIES**

AAA Consumer Arbitration Rules........................................................ *passim*

AAA Supplementary Rules for Multiple Case Filings ..........................................4, 5, 28

## PRELIMINARY STATEMENT

*"It's like déjà vu all over again."*—Yogi Berra

This proceeding is just the latest in a continuing series of mass arbitrations brought by plaintiffs' firms asserting baseless claims. The playbook is always the same: gather thousands— or tens of thousands—of "clients" through online solicitations, threaten to file an enormous number of substantially identical arbitration demands regardless of the underlying merits of the claims, and seek to use the specter of hundreds of millions of dollars in arbitral fees to extract a hefty settlement.

For Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC") (collectively, "Samsung"), this is not a new story. In fact, there is already an action pending in this Court ("*Wallrich*")[1] addressing another firm's efforts to use substantially similar mass arbitration tactics to extract a settlement from Samsung based on essentially the same claims under Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"). There is *also* a putative class action against Samsung pending in this Court addressing the same claims.[2] The underlying claims have no merit: the design of the Samsung devices at issue in these actions ensures that no data that could ever constitute "biometric" information is sent to or accessible by Samsung. But the merit (or lack of merit) of these claims is irrelevant for these claimants and their counsel.

Samsung's feelings of déjà vu are particularly profound here because, upon the filing of the Petition to Compel Arbitration on March 28, 2023 ("Petition" or "Pet.," ECF No. 1), Samsung discovered that many of the Petitioners in this action—nearly a quarter of them—are

---

[1]  *Wallrich v. Samsung Elecs. Am., Inc.*, No. 1:22-cv-05506 (N.D. Ill., filed Oct. 7, 2022).

[2]  *G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976 (N.D. Ill., removed Sept. 20, 2021).

*also* petitioners in *Wallrich*, where they are seeking the very *same* relief. Samsung discovered this remarkable fact by mechanically comparing the publicly-filed lists of petitioners in the *Wallrich* action and Petitioners in this action. When Samsung pointed out this problem in its motion suggesting that both actions be handled by the same judge, Petitioners' counsel did not accept any responsibility for this lack of diligence—even though they could have performed the same exercise that Samsung did. Instead, they criticized Samsung for not having informed them and also (remarkably) blamed their own clients. Petitioners' counsel did, however, promise the Court that they would promptly address that issue. Yet, more than two months have passed and they have not done so.[3] Instead, all 1,028 Petitioners in this action have now filed this Motion to Compel Arbitration ("Motion" or "Mot.," ECF No. 28).[4]

That Motion should be denied for the following independent reasons:

***First***, SEA should not be compelled to arbitrate because it did not refuse to arbitrate. The American Arbitration Association ("AAA") closed the arbitrations previously filed against SEA by Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") (collectively, "Petitioners' Counsel") when the parties jointly requested a stay of those arbitrations pending mediation. When the subsequent mediation was unsuccessful, Petitioners' Counsel did not refile their demands as the AAA suggested.

***Second***, Petitioners cannot compel SEC to arbitrate because they have never asked SEC

---

[3]    There are also other significant deficiencies in the lists of claimants that Petitioners' Counsel have provided to SEA: among other things, deceased claimants, claimants who provided fictitious personal information, and instances where three different law firms (including Petitioners' Counsel) in three different arbitrations have filed demands for arbitration purportedly on behalf of the same claimants asserting the same claims against SEA or SEC.

[4]    Petitioners filed a Motion to Compel Arbitration on May 4, 2023 (ECF No. 25), followed by a "Corrected" Motion on May 10 (ECF No. 28), because the original Motion exceeded the applicable page limit (*see* ECF No. 27). All references herein are to the Corrected Motion.

to arbitrate.  Petitioners did not name SEC as a respondent in their prior demands for arbitration nor have they otherwise demanded that SEC arbitrate at any time prior to commencing this proceeding.

**Third**, Samsung cannot be compelled to pay arbitration fees because there are no outstanding arbitrations or associated fees that Samsung has been asked to pay.  The AAA closed the prior arbitrations against SEA and refunded the initial filing fees to Petitioners' Counsel.  And SEC obviously cannot be compelled to pay fees relating to arbitrations that were never brought against it.  In any event, Samsung respectfully submits that this Court does not have the authority—under the Federal Arbitration Act (the "FAA"), the applicable arbitration agreements, the AAA rules, or otherwise—to order a party to pay arbitration fees.

**Fourth**, Petitioners' request that Samsung be ordered to pay arbitration fees plainly seeks an equitable remedy, which—even assuming *arguendo* there were any fee assessments outstanding and this Court had the authority to order such relief—must be denied where Petitioners have an adequate remedy at law.  Here, Petitioners have adequate remedies at law: under the AAA rules, Petitioners may advance the arbitration fees and seek to recoup them in arbitration, or they may waive their right to arbitration and proceed on the merits in court.

**Fifth**, Petitioners' invocation of the doctrine of judicial estoppel is misplaced.  Samsung has not refused to arbitrate nor has Samsung argued that the underlying arbitration agreements are unenforceable.  Samsung's position in this matter does not contradict its position in any other case.  Even if it did, courts have long held in the arbitration context that a party may take different positions on whether to enforce an arbitration agreement in one dispute without affecting its rights in separate disputes involving different facts or parties.

**Sixth**, for the reasons set forth in Samsung's Motion to Dismiss the Petition, filed

concurrently, the Petition is procedurally defective and Petitioners are entitled to no relief on it. Samsung incorporates these arguments by reference herein.

Accordingly, the Motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The AAA Has Rules Designed For Mass Arbitrations That Govern This Dispute

Petitioners claim to be residents of Illinois (*see* Pet. ¶¶ 6, 17 n.4, 23, 27) and further claim that all of them "are purchasers of Samsung [Galaxy] Devices." (*Id.* ¶ 27.) They allege that "Samsung entered into a binding agreement with each Petitioner requiring that Samsung and the Petitioner individually arbitrate any claim arising from the performance of the Devices." (*Id.* ¶ 28.) Their Petition attaches copies of three Samsung agreements with arbitration clauses that they assert are applicable here (*see id.*; *see also id.*, Exs. B-1, B-2, B-3 (collectively, the "Arbitration Agreement").) The Arbitration Agreement provides for consumer arbitration administered by the AAA and also contains collective action and class action waivers. (*Id.*, Ex. B-1 at 10; *id.*, Ex. B-2 at 2; *id.*, Ex. B-3 ¶ 16.)

Before closing the prior arbitrations, the AAA determined that its Consumer Arbitration Rules ("AAA Rules," Pet., Ex. C) and its Supplementary Rules for Multiple Case Filings ("Supplementary Rules," Ex. 1) applied to those arbitrations. (Pet., Ex. F; *see also* Pet. ¶¶ 28–32 (stating that the AAA Rules and the Supplementary Rules apply to these arbitrations).) The Supplementary Rules apply to "Multiple Case Filings," defined as "twenty-five or more similar Demands for Arbitration" filed "against or on behalf of the same party or related parties" and where "representation of the parties is consistent or coordinated across the cases." (Ex. 1, MC-1(b).) Under its terms, the AAA has the "sole discretion" to "interpret and apply" those rules. (*Id.*, MC-1(g).)

The AAA has a fee schedule for consumer arbitrations which provides that the consumer

and the business are each responsible for an initial filing fee.  (*See* Pet., Ex. C at 33.)[5]  In each individual arbitration, the consumer pays a filing fee of between \$75–\$125 and the business pays a filing fee of \$100–\$325.  The business is responsible for all other fees in the arbitration, including \$1,400–\$1,775 in case management fees and at least \$1,500 in arbitrator compensation.  Thus, in each such arbitration, a business can expect to pay between \$3,000 and \$5,100 in fees, depending on whether there is a hearing.

The AAA's Supplementary Rules provide a particular protocol for payment of fees in a "Multiple Case Filing."  Where a party does not pay its initial filing fees, the Supplementary Rules permit the other party to "advance the required payment within the time specified by the AAA."  (Exhibit 1 hereto ("Ex. 1"), MC-10(d).)  The party that advances such fees may seek to recover them in the final arbitration award.  (Pet., Ex. C, R-44(d).)  Alternatively, if neither party pays the filing fees, then "the AAA may suspend or terminate those proceedings."  (Ex. 1, MC-10(e).)  In that event, "either party may choose to submit its dispute to the appropriate court for resolution."  (Pet., Ex. C, R-1(d).)

**B.     Milberg's Mass Arbitration Model Is Designed To Leverage Large Pools Of Claimants And Enormous Arbitration Fees To Extract Unwarranted Settlements**

Milberg has a growing mass arbitration practice.  Gary M. Klinger, a Milberg attorney of record in this action, advertises on his website that he "represents consumers in class actions and mass arbitration."[6]  Mr. Klinger recently served on a panel discussing mass arbitrations and BIPA at Mass Torts Puerto Rico, a conference for mass torts practitioners.  (*See* Ex. 2.)  Milberg

---

[5]     The AAA's current consumer arbitration fee schedule, effective as of January 1, 2023, is available at https://www.adr.org/sites/default/files/Consumer_Fee-Schedule.pdf.

[6]     *See* Milberg, *Gary Klinger*, https://milberg.com/attorney/gary-klinger/ (last visited June 13, 2023).  Klinger is one of two Milberg attorneys who describe mass arbitration as part of their practice.  *See also* Milberg, *Tyler Litke*, https://milberg.com/attorney/tyler-litke/ (last visited June 13, 2023).

is also now recruiting both attorneys and legal assistants for a "mass arbitration team." (*See* Ex. 3.)

Although Milberg regularly solicits clients for class actions on its own website,[7] it uses another website—confusingly called *ClassAction.org*—to solicit claimants for mass arbitrations. Milberg has at least 33 mass arbitration solicitations currently posted on that site. (*See, e.g.*, Ex. 4.) Milberg explains its strategy clearly:

> The aim of a mass arbitration proceeding is to grant relief on a large scale (similar to a class action lawsuit) for those who sign up by getting the company to agree to a quick settlement instead of arbitrating every claim and paying the costly upfront fees.[8]

Milberg's other solicitations use similar language, stating, for example:

> A company faced with a mountain of arbitration claims may, in some cases, decide to settle the matter on what is essentially a class-wide basis instead of arbitrating each individual claim—and paying the costly upfront fees to do so.[9]

The greater the number of claimants that Milberg can enlist, the larger "the costly upfront [arbitration] fees" (*see id.*) to the respondent business.[10]

Milberg also solicits claimants through a Facebook page entitled "Claims for Justice."

---

[7]    *See* Milberg, *Cases & Investigations*, https://milberg.com/cases/ (last visited June 13, 2023).

[8]    (Ex. 4 at 6.)  A legend at the bottom of the webpage advises that "[t]he information submitted on this page will be forwarded to Milberg Coleman Bryson Phillips Grossman, PLLC who has sponsored this investigation." (*Id.* at 8.)

[9]    (*See, e.g.*, Ex. 4 at 15; *see also id.* at 25 (similar); Ex. 5.)

[10]    Other firms pursuing mass arbitration strategies acknowledge that their efforts are focused on quickly extracting a lucrative settlement and have nothing to do with helping consumers.  In a PowerPoint presentation initially designed to secure litigation funding for mass arbitration, one firm described its "ideal targets" as companies with valuations "high enough so they aren't judgment proof and can settle for hundreds of millions of dollars, but low enough that $200 million+ in arbitration fees creates an existential crisis forcing a quick settlement" or companies with "[a] likely IPO or potential acquisition that will make carrying litigation risk unpalatable." (*See* Ex. 6 at 6.)  The presentation suggests that the firm should monitor dockets to "copycat existing legal theories with potentially better advertising approach." (*Id.*)

Consumers are encouraged to sign up to pursue a claim with "[a]ttorneys working with Claims for Justice." Not until consumers click on the "sign-up" button and are re-directed to a ClassAction.org claim form does Milberg reveal itself as the law firm behind this effort. Consumers who sign up through this back-door form are not even provided the most basic information about the mass arbitration process—or any information regarding the obligations and liabilities that come with joining any legal action. (*See* Ex. 7.) Milberg has used similar methods to solicit claimants in other contexts, including aggressive telemarketing tactics which has resulted in the firm being hauled into federal court at least three times in 2023 alone for alleged violations of the Telephone Consumer Protection Act ("TCPA"). Most recently, in *Dobronski v. Milberg Coleman Bryson Phillips Grossman, PLLC*, the plaintiff alleged that Milberg used third parties who provided false or spoofed caller IDs to solicit claimants for a putative class action relating to damages caused by water contamination at the Marine Corps base in Camp Lejeune. Compl. ¶¶ 63–76, No. 2:23-cv-11232 (E.D. Mich. May 25, 2023), ECF No. 1.[11]

Milberg's mass arbitration solicitations have caused consumer confusion. For example,

---

[11] *See also* Compl. ¶ 51, *Callier v. Milberg Coleman Bryson Phillips Grossman, PLLC*, No. 3:23-cv-00049 (W.D. Tex. Feb. 3, 2023), ECF No. 1 ("Defendant Milberg instructs their telemarketers to say they're from the 'Camp Lejeune Enrollment Center' in order to hide their true identity and duck liability for violating the TCPA."); Compl. ¶¶ 41–42, *Dominguez v. Milberg Coleman Bryson Phillips Grossman, PLLC*, No. 3:23-cv-00175 (W.D. Tex. Apr. 28, 2023), ECF No. 1 (same). In all three cases, the plaintiffs further alleged that even though they purposely provided false information they nonetheless passed the verification stage and were presented with a Milberg retainer agreement to sign. *See Callier* Compl. ¶¶ 48, 55 ("Plaintiff was annoyed and frustrated by the persistent unauthorized phone calls from telemarketers soliciting Camp Lejeune lawsuit claims so Plaintiff gave the telemarketer his brother's information along with saying his father was stationed at Camp Lejeune for the sole purpose of identifying the company responsible for the calls . . . . Plaintiff then received an email from Toni from info@consumerenrollments.org that contained the retainer for Plaintiff to sign from Defendant Milberg."); *see also Dobronski* Compl. ¶¶ 133, 140; *Dominguez* Compl. ¶¶ 30, 32.

on April 26, 2023, the English news service HITC reported on consumer confusion as to whether Milberg's mass arbitration against Instagram had settled and whether consumers were entitled to payments, when in fact no settlement had even been reached.[12]  This confusion was expressed in consumer comments on ClassAction.org, one posting "So where's my payment," another stating "I was told the payout was supposed to be paid November or December la[t]est.  After a frantic phone call urging me to sign my Docs.  Not a word or story from them," and a third writing "Yea WTF, this whole thing seems to have gone dead."  (Ex. 8.)

Milberg has also used mass arbitration to assert BIPA claims against other companies.  In January 2021, Milberg filed a putative BIPA class action against the social media company Snap, Inc. ("Snap") in Illinois state court.  Snap removed the case to the Southern District of Illinois and successfully moved to compel arbitration.  *Clark v. Snap, Inc.*, No. 3:21-cv-00009 (S.D. Ill.), ECF Nos. 1, 51.  Milberg then pivoted to its mass arbitration playbook: it informed Snap that it had been retained by "several thousand [clients who are] Snap users and that they intended to pursue arbitration against Snap on behalf of each of [those] claimants."[13]  The parties thereafter agreed that "Plaintiffs' counsel would file ten individual arbitrations" to serve as bellwether cases and test the merits of Milberg's claims.  *Id.*  Milberg's own expert then reviewed the relevant Snap source code and found "no evidence that any face measurement data is transmitted from consumers' phones to Snap."  *Id.* at 24.  *See also id.*, Ex. 5 ¶¶ 49, 64 ("there appears to be

---

[12]   Chaitra Krishnamurthy, *Is the Instagram 'Settlement' Real and Is There a Claim Form?*, HITC (Apr. 26, 2023), https://www.hitc.com/en-gb/2023/04/26/is-the-instagram-settlement-real-and-is-there-a-claim-form/ ("Instagram users in Illinois have confused the [mass arbitration solicitation] for a settlement.  Many are under the assumption that they will be receiving a claim form or have already signed up for their share when neither has happened.").

[13]   Pls.' Unopposed Mot. for Prelim. Approval of Class Action Settlement at 5, *Boone v. Snap Inc.*, No. 2022LA000708 (Ill. Cir. Ct. Aug. 5, 2022) ("*Snap* Mot. For Settlement Approval").

no transmission of face measurement data to Snapchat servers").[14]  Milberg settled the matter

shortly thereafter.[15]

C.     **August 2021–Early 2022: Another Law Firm Brings A Putative BIPA Class Action Against Samsung; Milberg Then Uses Misleading Advertisements To Solicit Tens Of Thousands Of BIPA Claimants Against Samsung**

On August 11, 2021, a putative class action ("*G.T.*") was filed in the Circuit Court of

Cook County, Chancery Division, by a law firm not involved in this action alleging that a

functionality of certain Samsung Galaxy devices violated BIPA.  On September 20, 2021,

Samsung removed that action to this District.  *See G.T.*, ECF No. 2.  *G.T.* is now assigned to

Judge Nancy L. Maldonado.  Each of the Petitioners here would be members of the putative class

in *G.T.*, assuming (as they allege) that they actually purchased a Samsung device and were

Illinois residents during the relevant time period.  In the wake of the filing of the *G.T.* action,

many firms began to solicit claimants to threaten mass arbitrations against Samsung on the same

BIPA claims asserted in *G.T.*

One of those firms was Milberg.  In early 2022, a solicitation sponsored by Milberg

began running on ClassAction.org entitled "Samsung Biometric Privacy Case: Join Illinois

Residents Taking Action."  (Ex. 5 at 1; *see id.* at 9 ("The information submitted on this page will

be forwarded to Milberg who has sponsored this investigation.").)  Notwithstanding that the

website is named "ClassAction.org," this solicitation targeted "Illinois residents" to "sign[] up"

for a BIPA "[m]ass arbitration" against Samsung.  (*Id.* at 1–3.)  The page claimed that Samsung

was "illegally collecting and storing the facial scans of millions of Illinois residents whose faces

---

[14]     Such a finding would be fatal to the plaintiffs' allegations that Snap was ever "in possession" of the data under 740 ILCS 14/15(a) and (c), or that Snap "collect[s], capture[s], or otherwise obtain[s]" the data under 740 ILCS 14/15(b).

[15]     *Snap* Mot. for Settlement Approval at 6.

appear in photos taken with certain model phones and tablets." (*Id.* at 3.) The solicitation conflated mass arbitration with a class action and failed to accurately inform prospective claimants about the process. For example:

- Although Milberg was soliciting claimants for "mass arbitration," the solicitation elsewhere described the matter as the "Samsung Biometric Lawsuit." (*Id.* at 1.)

- Milberg explained that "mass arbitration" was a process that "allows a large group of people to simultaneously bring claims against a company over the same issue." (*Id.* at 2.) This description both contradicted the terms of the Arbitration Agreement and misdescribed the purpose of individual arbitration, which is intended to resolve claims on an individualized basis, not to serve as a version of consolidated proceedings.

- In answer to the question "What Does This Cost?," Milberg stated that "if your attorney doesn't win your claim, you don't pay." (*Id.*) This was not correct, because it did not account for either Samsung's right under the AAA Rules to seek recoupment of its costs from individuals who are pursuing frivolous claims, (*see* Pet., Ex. C, R-44(c)), or Samsung's right to assert counterclaims (*see id.*, R-2(d)).

- Milberg expressly acknowledged its intention to use arbitration fees as a tactic to exert pressure to settle in response to the question "What is Mass Arbitration?": the page explains that "[b]ecause handling individual arbitration disputes can be costly and time consuming, some companies may choose to quickly settle any outstanding claims rather than spend the time and money needed to resolve them." (Ex. 5 at 5.)

- Even after Samsung withdrew its motion to compel arbitration in *G.T.*, *see G.T.*, ECF No. 33, Milberg's solicitation continued to incorrectly state that "Samsung has argued . . . that consumers cannot bring a class action lawsuit over the alleged biometric violations because they agreed to arbitrate any claims against the company when they purchased and set up their devices." (*Id.* at 4–5.) Milberg continued: "This is why attorneys working with ClassAction.org have decided to handle the matter on a 'mass arbitration' basis." (*Id.* at 5.)

Milberg's recommendation to prospective clients that they pursue individual arbitrations against Samsung was also at odds with the position Milberg has taken in numerous putative BIPA class actions, where it has argued that "[c]lass-wide relief is essential to compel compliance with BIPA."[16] Milberg has even made this contention in cases where an arbitration agreement

---

[16]    Am. Class Action Compl. ¶ 59, *Luthe v. Walmart, Inc.*, No. 3:22-cv-02104 (S.D. Ill. Oct. 11, 2022), ECF No. 20; Class Action Compl. ¶ 87, *Hess v. 7-Eleven, Inc.*, No. 1:22-cv-02131 (N.D. Ill. Apr. 25, 2022), ECF No. 1; *see also* Consolidated Class Action Compl. ¶ 43, *Sloan v.*

encompassed the BIPA claims.[17]

Milberg's Samsung-related solicitation directed readers to "fill out a quick form" under a "Sign Up Today" link (Ex. 5 at 2.)  By clicking that link, an individual was led to a separate "Milberg" claims form.  (*See* Ex. 9.)  That form set forth five questions that Milberg stated would "help us determine if you are eligible to make a claim for compensation."  (*Id.*)  Those questions asked only: did the individual own a Samsung Galaxy phone, were they an Illinois resident when they owned the phone, approximately what year did they buy the phone, what model was the phone, and had they ever taken or saved photos on their Samsung Galaxy phone or someone else's Samsung Galaxy phone.  (*Id.*)  The claims form did not ask consumers to provide any documentation or other proof or verification of their answers to these questions. Milberg provided no information as to the type of proceeding that an individual was signing up for or indicate that it would be asserting an independent legal claim in their name.[18]  It also did

---

*Anker Innovations Ltd.*, No. 1:22-cv-07174 (N.D. Ill. Apr. 6, 2023), ECF No. 31 ("A class action is superior to any other available means for the fair and efficient adjudication of this controversy," whereas "[i]ndividualized litigation creates a potential for inconsistent or contradictory judgments."); Am. Class Action Compl. ¶ 89, *Daichendt v. CVS Pharmacy, Inc.*, No. 1:22-cv-03318 (N.D. Ill. Feb. 7, 2023), ECF No. 22 ("Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class members, and result in judicial consistency."); Am. Class Action Compl. ¶ 98, *Marschke v. YouTube, LLC*, No. 3:22-cv-06987 (N.D. Cal. Dec. 12, 2022), ECF No. 52 ("[A] class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be achieved.").

[17]  *See, e.g.*, Class Action Compl. ¶ 52, *Clark v. Snap, Inc.*, No. 3:21-cv-00009 (S.D. Ill. Jan. 6, 2021), ECF No. 1-1 ("Class action treatment provides a fair and efficient method for the adjudication of the controversy herein described" and would avoid "unnecessary expense or duplication.").

[18]  It is unknown at this time whether Petitioners, because of the solicitation process, have inadvertently misrepresented to third parties, including regulators, employers, and mortgage companies (among others), that they are not named parties in any threatened or filed legal proceedings.

not inquire whether consumers had already signed up with another law firm to represent them on the same claims—even though Milberg has asked this question in other solicitations.[19]

Milberg also ran a host of misleading paid advertisements on Facebook. Those advertisements were entitled "SAMSUNG GALAXY CLASS ACTION" and repeatedly referred to signing up for a "class action" against Samsung.[20] None of Milberg's advertisements even contained the word "arbitration." Each advertisement contained a link to the same Milberg claims form that did not specify what type of proceeding an individual was signing up for.[21] The advertisements were also designed to induce individuals to sign up as quickly as possible. One advertisement boasted that customers can "[s]ee if [they are] eligible in less than one minute." (Ex. 14.)

Milberg also appears to have delegated some client solicitation work to a third-party marketing group named Reda Marketing ("Reda"). A YouTube video demonstrates how consumers signed up.[22] The video, presented by an individual who appears to be a Reda

---

[19] (*See* Ex. 7 at 2 ("Have you hired another attorney to represent you in connection with the TitleMax data breach?").)

[20] (*See* Exs. 10–13 (referencing a "SAMSUNG GALAXY CLASS ACTION," "SAMSUNG CLASS ACTION," and "JOIN CLASS ACTION"); *see also* Exs. 14–15 (twice referencing a "SAMSUNG GALAXY CLASS ACTION"). Milberg also ran another advertisement on Facebook, Instagram, and Audience Network, again referencing a "SAMSUNG GALAXY CLASS ACTION." (Exs. 15–17.)

[21] It is unclear whether Milberg even has the authority to commence arbitrations on behalf of individuals who may have engaged the firm exclusively for the purpose of filing a class action on their behalf. *See Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1058 (N.D. Ill. 2020) (Seeger, J.) (denying defendant's motion to compel arbitration of BIPA claims because "the consent forms gave counsel authority to act on behalf of [the named plaintiffs] in the FLSA lawsuit (only)" and counsel therefore did not have the authority to enter into an arbitration agreement agreeing to arbitrate these plaintiffs' separate BIPA claims).

[22] *See* YouTube, *How a Consumer Protection Law Firm Generated over 200 Signed Cases in 1 Week*, https://www.youtube.com/watch?v=wBkrS4ap3LIf (last viewed June 13, 2023), a transcript of which has been provided as Ex. 18.

employee, first describes the "lead generation" package for a "*class action* for [a] Samsung Galaxy Phone" (Ex. 18 at 1 (emphasis added)) that Reda assembled for the law firms it was working for, including Milberg, and it shows that this package yielded 264 signed retention agreements for just the week of May 19, 2022, and cost the firms only $219.01, or 83¢ per signed retention agreement. (*Id.* at 1, 30.) Before showing the actual sign-up process, the presenter notes that the process is done "100[%] online, there is no involvement from the law firm at any point." (*Id*. at 2.)

The video then shows Facebook ads for the BIPA claims against Samsung that were run by Milberg's then co-counsel, Swigart Law Group, APC ("Swigart"). (*Id*. at 4–5.) The video explains that when a consumer clicks on an advertisement, the consumer is taken immediately to a sign up form containing four screening questions (similar to those discussed above). (*Id*. at 5–6.) Provided that the consumer hits "yes" for each question, the consumer is then taken to a form to provide contact information. (*Id*. at 8–9.) To demonstrate the ease with which one can complete this information, the presenter fills out the form with clearly incorrect information, such as test@gmail.com for the requested email address, "44" for the home address, and "TF" for the city. (*Id*. at 9–10.)

The public video reflects that once the consumer provides that information, the consumer is then taken to an agreement entitled "Legal Services Agreement Between Swigart Law Group, APC, Milberg Coleman Bryson Phillips Grossman PLLC, and [the consumer]." (*Id*. at 11; *see also* Ex. 19, a transcription of the Legal Services Agreement.) That agreement states that the consumer is hiring Milberg and Swigart "to represent [the consumer] in [his or her] potential claim(s) against Samsung Electronics America, Inc. and/or (and any other relevant affiliates and other entities)." (Ex. 19 at 1.) It further provides that the firms' contingency fee may be up to

*70%* of any recovery, and states that the firms do not represent the consumer for purposes of any

counterclaims:

- Under "SCOPE OF REPRESENTATION," the agreement indicates that Milberg and Swigart would be bringing "a lawsuit," not an arbitration. (§ 1; *see id.* ("We will . . . oppose any motion for new trial . . .").)

- Under "LIMITATION OF REPRESENTATION," the agreement expressly states that Milberg and Swigart *do not* represent the consumer on any counterclaims. (*See id.* § 2 ("Our representation does not include independent or related matters that may arise . . . . If any such matters arise later, we will either negotiate a separate legal services agreement with you, if we all agree that we will perform such additional legal work, or you will engage separate counsel with respect to the cross-claim, counter-claim, or additional legal work.")).

- Under "ATTORNEYS' FEES AND COSTS," the agreement states that "[w]e will be paid a portion of any final recovery and that the amount of this contingency fee is not set by law and is negotiable at the time of signing." (*Id.* § 3.) That fee "is either 1) 45% of the recovery; or 2) the value of [Milberg and Swigart's] time; or 3) anything above the damages. Whichever fee structure is most is Our fee." (*Id.*) As an example, the agreement explains that where a claimant recovers $10,000, Milberg and Swigart's fee (not including costs) would be a minimum of $4,500 (i.e., 45% of the recovery) and potentially up to $7,000 (i.e., 70% of the recovery).

- In that same section, the agreement states that the consumer "*will not owe us* anything for attorney fees unless we recover some benefit for you." (*Id.* (emphasis added).) It further states: "If You are not in the prevailing party in Your case, the court may award attorney fees and costs of the type enumerated in Paragraph 3 and 6 to the prevailing party and payment of such attorney fees and costs will be Your sole responsibility." (*Id.*)

- Under "AGGREGATE SETTLEMENT," the agreement states that Milberg and Swigart "represent many clients with claims similar to Yours against the same defendants/respondents. The claims may be brought under the same or similar consumer statutes. *We endeavor to obtain individual settlement offers*, but We may receive an aggregate settlement offer for Your claim." (*Id.* § 7 (emphasis added).)

- The signatories to the agreement are Mr. Klinger from Milberg and Joshua Swigart from Swigart Law. The client is invited to provide an e-signature. (*Id.* at 7.)

Milberg also apparently recycles claimants from one mass arbitration effort to another.

For example, on December 1, 2022, a consumer posted on Facebook a copy of an email that

Milberg had sent them, which stated that "we currently represent you in a BIPA Violation claim

against either SnapChat or Samsung" and "[w]e are writing to let you know about another

14

biometrics privacy case that Milberg is investigating on behalf of Illinois residents," which Milberg was pursuing against Meta Platforms, Inc. ("Meta").  (Ex. 20.)  The email further said that if the consumer was "interested in having Milberg pursue your claims and recover your damages resulting from Meta's misconduct," they could click a link to the claim sign up form. (*Id.*)  The Facebook poster clearly thought this was another class action lawsuit, not an arbitration, because they wrote: "ANOTHER LAWSUIT/CLAIM THIS 1 FOR INSTAGRAM YALL CLICK THE LINK TAP IN." (*Id.*)

Milberg's solicitations and advertisements generated significant consumer confusion. Some individuals thought they would be getting "free money," others thought they were joining a "class action," and yet others dismissed the whole thing as "likely a scam":

- "Free money (Illinois) just like the Facebook one… Google Samsung Lawsuit." (Ex. 21.)

- "FYI class action against Samsung Galaxy." (Ex. 11.)

- "Now, of [sic] the Samsung class action would pay out…Cha-Ching!! . . . .  Samsung had a class action suit against them for a biometric issue.  It's gonna payout about 5k or more for those who signed up." (Ex. 22.)

- "That's more then [sic] likely a scam." (Ex. 14.)

- An individual posted a Milberg Facebook advertisement for their "Samsung Class Action" with the caption "For the people who missed out on the Facebook lawsuit." Another individual commented "But Why?," to which the first individual responded, "Don't know but me and my wife just got a check for almost 4 hundred dollars from Facebook." (Ex. 13.)

- Another individual posted a Milberg Facebook advertisement for their "Samsung Class Action" with the caption "Got my 4hundo."  In response, someone commented: "This real?"  The original poster responded: "Yea, I don't remember if this is the exact one I used but I did get a check for 400."  The second individual asked: "did you get a check for this or the [Facebook] lawsuit that everyone that filed is getting 397.00 check now?"  The original poster responded: "I don't even remember which one.  Just did some snapchat one too the other day.  We'll see if that pans out."  The second individual then commented: "haha… Well I guess I'll try it out." (Ex. 23.)

Two other firms with which Milberg was working also solicited BIPA claims against Samsung.  (*See* Ex. 24; Ex. 25.)  And while Milberg's solicitation on ClassAction.org states that

the "Investigation [was] Closed as of August 24, 2022" (Ex. 26), these other firms' solicitations remain open.

### D. June–September 2022: Milberg Threatens To File Thousands Of Arbitrations Against SEA Without Regard To The Merits Of The Claims (Or Lack Thereof)

On June 13, 2022, Milberg sent a "Notice of Claims" to SEA stating that, "along with" another law firm, they "represent[] at least 15,000 individual claimants ('Claimants') who intend to initiate individual arbitrations, pursuant to the applicable terms and conditions, against [SEA] for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1, et seq." (Pet., Ex. D at 1.)  The Notice further stated that Milberg was "open to exploring a resolution of Claimants' claims prior to the initiation of arbitration," but only if SEA contacted Milberg "[b]efore July 1, 2022" (i.e., within about two weeks).  (*Id.* at 2.)  SEA responded, explaining that the claims were without merit and were based on a misunderstanding of the technology. (Ex. 27.)  SEA also requested a list of Milberg's claimants so that it could perform "further evaluation of your clients' claims."  (*Id.*)

By July 8, 2022, Milberg claimed to have amassed 30,000 clients and refused to cease further improper solicitation efforts unless SEA immediately engaged in settlement discussions. On July 22, 2022, Milberg sent SEA a list of 31,461 claimants that it claimed to represent and demanded a mediation to settle the claims.  (Ex. 28 at 6 (attachment intentionally omitted).)  In response, SEA again asked for an opportunity to explain why the claims were without merit, suggesting that they "proceed first with an informal discussion where we can give you some information on how the Gallery App works."  (*Id*. at 4–5.)  SEA also stated that "[i]n the meantime, we would ask that you hold off on initiating arbitration so that we can focus on making the call as productive as possible."  (*Id.*)  But Milberg was not interested in that discussion.

16

On September 6, 2022, Milberg advised SEA that "we will be filing arbitration claims later this week." (*Id*. at 1.) SEA responded the same day, noting that "because you now say you will file your claims before we speak, we write to put you on notice, before your filings, regarding the baseless nature of any BIPA claims against Samsung." (Ex. 29.) SEA attached a declaration from an SEC engineer, Youngil Shin (the "Shin Declaration," Ex. 30), which further explained the functionality of the Samsung technology at issue and why it did not implicate BIPA. SEA reiterated that "we remain willing to discuss the substantive issues related to your threatened claims" but advised Milberg that proceeding with its meritless claims would "expose both [Milberg] and [their] clients to liability to pay for Samsung's fees and costs under the governing Arbitration Agreement, AAA rules, and the law," and that SEA would pursue any available claims and counterclaims. (Ex. 29.)

**E.  October 2022: Milberg, Now Partnered With Robbins Geller, Files Over A Thousand Arbitration Demands Against SEA And Threatens To File Tens Of Thousands More**

SEA did not hear from Milberg for over a month. Then, on October 11, 2022, Milberg re-emerged and informed SEA that it had filed arbitration demands on behalf of 44 claimants against SEA with the AAA, along with Robbins Geller. (Pet., Ex. E; *see also* Pet., ¶ 9; Mot. at 6.) Milberg did not refer to its prior co-counsel or the other firms copied on Milberg's correspondence with SEA. On October 25, 2022, Milberg and Robbins Geller filed another 1,000 arbitration demands against SEA, bringing the total number filed to 1,044. (*See* Pet. ¶¶ 9, 33.)[23] Milberg subsequently informed SEA that it had now amassed over 50,000 claimants

---

[23]  It appears that Petitioners' Counsel are confused about how many arbitration demands they in fact filed. While the Petition states they filed a total of 1,044 demands in October 2022 (*see* Pet. ¶¶ 9, 33), the Motion conversely states that "[b]etween October 11 and October 25, 2022, Petitioners filed 1,028 individual demands with AAA." (Mot. at 2.)

and that it was preparing to file further rounds of arbitration demands.

The introduction of Robbins Geller, and the increase in the number of claimants, might not have been coincidental. Robbins Geller was one of the counsel that represented the plaintiffs in a $650 million BIPA class settlement, captioned *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747 (N.D. Cal. Aug. 17, 2015). Those firms, including Robbins Geller, have access to a confidential class settlement list from that litigation, including names and email addresses for 12 million people. That class list is an extremely valuable resource for firms seeking to solicit BIPA claimants because most of the individuals listed thereon are Illinois residents, and BIPA only applies in Illinois. Even though that settlement class list is subject to a protective order in that litigation, at least one of the other plaintiffs' counsel from that case—Labaton Sucharow ("Labaton")—has used the class to improperly solicit BIPA claims against Samsung.[24] It appears that Robbins Geller (now collaborating with Milberg) might also be using (and sharing) that confidential class list to solicit BIPA claimants.[25]

---

[24] By way of example, one consumer posted a screenshot of an email from Labaton that states: "We recently represented you in a class action against Facebook and are reaching out about another case that may be of interest to you" and that "We are bringing claims of up to $5,000 on behalf of Samsung Galaxy users in Illinois." Labaton also provides a link for consumers to sign up for a claim. (*See* Ex. 31.)

[25] This Court has previously addressed Robbins Geller's failure to perform the requisite diligence on a case. *See, e.g.*, *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 182 (N.D. Ill. 2014) (Castillo, J.) (imposing Rule 11(b) sanctions and disqualifying Robbins Geller from a case after the firm proceeded with a case that lacked evidentiary support, characterizing the firm's conduct as "ostrich tactics" where "counsel put their heads in the sand to avoid discovering the truth" and noting Robbins Geller "failed to verify the allegations so as to remain ignorant of the truth, and this conduct is reckless and unjustified"); *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, No. 10 C 7031, 2013 WL 1286700, at *13 (N.D. Ill. Mar. 27, 2013) (Grady, J.) (sanctioning Robbins Geller for filing a frivolous lawsuit, noting that the firm applied a "shoot first, aim later" strategy and did not conduct a proper pre-suit investigation.).

18

**F.      October 2022: Labaton Commences The *Wallrich* Action On Behalf Of 49,986 Mass Arbitration Clients Based On The Same Baseless BIPA Claims**

On October 7, 2022, Labaton filed a petition and motion to compel arbitration in this Court on behalf of 49,986 petitioners, seeking to compel Samsung to arbitrate BIPA claims substantially identical to the claims here and to pay the related arbitration fees. *See Wallrich*, ECF No. 1. Labaton, like Milberg, had sought to improperly use the threat of mass arbitration to try to coerce an exorbitant settlement against Samsung that had no basis in the merits of the claims (which had no merit). *Wallrich*, ECF No. 27. After Samsung exercised its rights under the AAA's rules not to pay the arbitration fees, and Labaton declined to advance those fees, the AAA (at Labaton's request) closed the arbitrations. Labaton thereafter commenced the *Wallrich* action, which is pending before Judge Harry D. Leinenweber. Labaton's motion to compel arbitration and Samsung's motion to dismiss the petition to compel arbitration in *Wallrich* have both been fully briefed.[26]

**G.      November 2022–January 2023: Samsung, Milberg, And Robbins Geller Agree To Stay The Arbitrations Pending Mediation; The AAA Instead Closes Them, But States That The Demands Can Be Refiled If The Mediation Is Unsuccessful**

On November 18, 2022, the AAA acknowledged receipt of the 1,044 arbitration demands filed by Petitioners' Counsel against SEA, and the AAA invoiced SEA $311,000 in filing fees. (Pet., Ex. F; *see also* Mot. at 6–7.)[27] SEA, Milberg, and Robbins Geller agreed to mediate and,

---

[26]    Also in October 2022, a second putative BIPA class action was filed against Samsung in this Court asserting substantially similar claims to *G.T. See Jones v. Samsung Elecs. Am., Inc.*, No. 1:22-cv-05662 (N.D. Ill. Oct. 14, 2022), ECF No. 1. The *G.T.* and *Jones* actions have now been consolidated.

[27]    Under the AAA's fee schedule, for these 1,044 arbitrations, SEA would have to pay at least $4,451,100 in filing fees, case management fees, and arbitrator compensation. If Petitioners' Counsel were to file 60,000 demands, as they have threatened, SEA would owe a total of $180,375,000 in fees and arbitrator compensation for desk arbitration or $270,375,000 if the arbitrations involved a hearing. *See* AAA, *Consumer Arbitration Rules: Costs of Arbitration*, https://www.adr.org/sites/default/files/Consumer_Fee_Schedule.pdf (effective Jan. 1, 2023).

accordingly, on January 11, 2023—before SEA's extended deadline to pay the arbitration fees had arrived[28]—they "jointly request[ed] that AAA stay the matter . . . against Samsung Electronics America . . . pending the outcome of the March 22, 2023 mediation." (Pet., Ex. I.)[29]

On January 18, 2023, the AAA advised that rather than staying the arbitrations it would be administratively closing its files on those arbitrations and refunding Milberg its filing fees. (Pet., Ex. J.) However, it further stated that "[s]hould the parties not settle these matters through mediation, the Claimant may refile these cases." (*Id.*) On January 24, 2023, the AAA confirmed that the arbitrations "have now been administratively closed" and that it would refund the filing fees to Milberg. (*Id.*, Ex. K.)

## H.   <u>Samsung's Review Of Milberg's Claimant List Identifies Numerous Deficiencies</u>

As noted above, on July 22, 2022, Milberg—together with a different firm that was acting as its co-counsel at the time—provided SEA with the list of 31,461 claimants that it allegedly represented at that time. (*See* Ex. 28 at 6 (attachment intentionally omitted).)[30] That list provided only the following information for each claimant: "First Name," "Last Name," "Client Mobile Phone," and "City, State." Samsung has identified a large number of troubling deficiencies with the list, including:

- Deceased claimants;

- "Claimants" who had provided fictitious personal information;

---

[28]   On December 23, 2022, the AAA extended Samsung's payment deadline to January 11, 2023. (Pet. ¶ 12; *id.*, Ex. H; *see also* Mot. at 6.)

[29]   The Petition misleadingly asserts that SEA sent this letter and unilaterally requested the stay, merely "copying Petitioners' counsel" (Pet. ¶ 13) when in fact the letter clearly stated that "*[t]he parties jointly request*" a stay (Pet., Ex. I (emphasis added); *see also* Mot. at 7 (stating that Samsung sought an extension "with Petitioners' permission").)

[30]   To date, Milberg has provided SEA with information on only 31,461 of the 60,000 clients Milberg now purports to represent in connection with these claims.

- "Claimants" identified by fake names that are vulgar puns;

- A large number of claimants who had also purported to bring identical claims against Samsung with another law firm that did not appear to be coordinating with Milberg. This includes instances where three different law firms (including Petitioners' Counsel) in three different arbitrations have filed demands for arbitration purportedly on behalf of the same claimant asserting the same claims against SEA or SEC;

- Claimants who were not Illinois residents; and

- Claimants as to whom Samsung had no record of such person ever being a customer or owning any of the devices at issue.

In one instance, no fewer than three sets of firms (Milberg, Labaton, and Kind Law) purport to represent various members of a family of five individuals, which includes two minor children—one of whom appears to be in pre-school.[31]

## I. March 22–28, 2023: The Parties Conduct An Unsuccessful Mediation; Thereafter, Instead Of Refiling Any Arbitration Demands, Milberg And Robbins Geller Commence This Action Putatively Seeking To Compel Arbitration

On March 22, 2023, the parties mediated, but the mediation was unsuccessful.  Just six days later, rather than refiling their demands for arbitration as permitted by the AAA, *see supra* at pp. 20, Petitioners' Counsel instead filed the instant Petition to Compel Arbitration on behalf of 1,028 of the 1,044 claimants for whom they had previously commenced the now-closed arbitrations.[32]  Petitioners named both SEA and SEC as respondents, even though the prior demands for arbitration had been brought solely against SEA and Petitioners had never before demanded arbitration against SEC.  The Petition further stated that "[a]s of the date of this filing, counsel for Petitioners represents approximately 60,000 Illinois Device users, all of whom have

---

[31]  Because the documentation relating to these matters contains a substantial amount of personal identifying information, Samsung has not submitted that documentation as exhibits, but is prepared to do so if the Court requests.

[32]  Petitioners' Counsel have not explained why they excluded 16 of the original claimants from the Petition.

identical claims against Samsung for its violations of BIPA" (Pet. ¶ 17 n.4), while acknowledging that "the remaining approximately 58,956 Petitioners" had not filed demands for arbitration (*id.* ¶ 17).

The Petition alleged that Samsung failed to pay the "initial administrative filing fees due and owed to [the] AAA" by the January 11, 2023 deadline imposed by the AAA, and thereby "refus[ed] to honor its contractual agreements and pay its share of the arbitration fees." (Pet. ¶¶ 13, 17.) But by January 11, 2023, the AAA had closed the arbitrations and refunded Petitioners' Counsel the initial filing fees, and there were no outstanding fees "due and owed to [the] AAA." The Petition further alleged that "Samsung has stated that it will not honor its contractual agreements or pay its share of the arbitration fees for the remaining approximately 58,956 Petitioners who have not yet perfected their respective demands for arbitration." (*Id.* at ¶ 17.) That allegation was also incorrect: none of these 58,956 purported claimants had filed demands for arbitration, Milberg had not (and still has not) provided SEA with information regarding half of them, and at no time had SEA been asked to pay fees for non-existent arbitrations relating to these claimants.

**J.     March 30, 2023: Samsung Files A Motion To Reassign This Case To The Judge Already Presiding Over The *Wallrich* Action, Pointing Out That Nearly A Quarter Of The Petitioners In This Action Are Also Petitioners In *Wallrich***

After this Petition was filed, Samsung mechanically compared the petitioner list submitted by Labaton in the *Wallrich* action (*see Wallrich*, ECF No. 1, Ex. A) with the list of "Individual Petitioners" attached to the present Petition. *See* ECF No. 1, Ex. A. This was a simple process that Petitioners' Counsel could have readily performed prior to filing. Samsung discovered that at least 241 of the 1,028 Petitioners here (i.e., 23%) were also petitioners represented by Labaton in *Wallrich*. On March 30, 2023, Samsung moved for reassignment of this action to the judge presiding over *Wallrich*, noting that the actions presented overlapping

issues and substantially identical demands for relief and pointing out the overlapping petitioners in the actions. *See Wallrich*, ECF No. 40. The press also reported on Labaton and Milberg and Robbins Geller's "double dipping client lists."[33]

In response, Labaton admitted that "[o]n multiple occasions, prior to any filing before this Court, Samsung alleged that some of the [*Wallrich*] Petitioners were represented by additional firms." *Wallrich*, ECF No. 42 ¶ 2. Labaton blamed Samsung for not providing them with a list of those Petitioners and blamed their own clients for "misremembering having already completed the retention process with the initial firm." *Id.* ¶¶ 2–3. For their part, Milberg and Robbins Geller made baseless assertions in their response regarding their recent mediation with SEA in violation of mediation and settlement privilege, *id.*, ECF No. 41 at 1–2, but like Labaton, Milberg and Robbins Geller blamed "this dual-representation issue" on Samsung and their own clients. *See id.* at 2.

Both responses also stated that petitioners' counsel in the two actions had met and conferred to address the "dually represented Petitioners." *Wallrich*, ECF No. 42 ¶ 5; ECF No. 41 at 2. To date, no action appears to have been taken, and counsel in the two actions have not sought to amend their petitions. Instead, on May 4, 2023, Petitioners—including the 241 individuals who are also petitioners in *Wallrich*—filed this Motion to Compel Arbitration (and filed a "Corrected" version of the Motion on May 10, 2023 to bring it within the applicable page limit).

---

[33] *See* Alison Frankel, *Mass Arbitration Miscue? Samsung Says Plaintiffs' Firms Double Dipping Client Lists*, Reuters (Mar. 31, 2023), https://www.reuters.com/legal/litigation/mass-arbitration-miscue-samsung-says-plaintiffs-firms-double-dipping-client-2023-03-31/.

## ARGUMENT

I. **THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED BECAUSE NEITHER SEA NOR SEC REFUSED TO ARBITRATE**

The Motion should be denied because neither SEA nor SEC failed or refused to arbitrate with Petitioners. The Motion itself acknowledges that one of the elements that a party must show to compel arbitration under Section 4 of the FAA is "a refusal by the opposing party to proceed to arbitration." (Mot. at 8.) *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may move to compel arbitration.) A refusal to arbitrate is an "indispensable element" of a cause of action under Section 4. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983); *see also Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (party seeking to compel arbitration must show "a refusal by the opposing party to proceed to arbitration"). Federal courts in Illinois have considered multiple factors to determine whether a party has, in fact, "refused to arbitrate," including whether a respondent participates in settlement discussions, fails to participate in an arbitration proceeding, or seeks relief in court rather than through arbitration. *See Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 753 (N.D. Ill. 2012) (Bucklo, J.).

Here, the record shows that SEA did not refuse to arbitrate Petitioners' claims. *See supra* pp. 19–20. *See Scholz v. Americare at Adams Pointe Assisted Living*, *LLC*, No. 20-CV-3034, 2021 WL 661841, at *2 (C.D. Ill. Feb. 19, 2021) (courts may consider "matters outside the pleadings" when ruling on a motion to compel arbitration). Petitioners' Counsel filed 44 demands for arbitration against SEA on October 11, 2022. Two weeks later, Petitioners filed an additional 1,000 demands. On November 18, 2022, the AAA sent SEA a $311,000 invoice for initial filing fees with a due date of December 19, 2022, which was later extended to January 11,

24

2023.  On that date, before SEA's deadline to pay the invoice had passed, the parties "jointly request[ed] that AAA stay the matter and all related deadlines . . . pending the outcome of the March 22, 2023 mediation."  (Pet., Ex. I.)  The AAA declined to stay the arbitrations, and instead administratively closed them.  The AAA fully refunded Petitioners' filing fees and further stated that "[s]hould the parties not settle these matters through mediation, the Claimant may refile these cases."  (Pet., Ex. J; *see also id.*, Ex. K.)  Instead of refiling their demands for arbitration, Petitioners filed this action.  Thus, Petitioners cannot demonstrate that SEA has refused or failed to arbitrate.  *See Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (affirming denial of petitioner's motion to compel arbitration where "respondents [have not] failed to comply with an order to arbitrate by the AAA").[34]

As to SEC, Petitioners did not file *any* demands for arbitration against it, and Petitioners did not separately demand arbitration against SEC at any time prior to filing this Motion (or the Petition).  Accordingly, SEC cannot possibly be said to have refused to arbitrate.  Petitioners' further suggestion that SEA or SEC should be held in contempt (*see* Mot. at 15) is utterly absurd: neither Respondent has refused to arbitrate and there is no court order that requires SEA or SEC to arbitrate anything at all.

## II.     PETITIONERS CANNOT COMPEL SEC TO ARBITRATE BECAUSE THEY NEVER PREVIOUSLY DEMANDED ARBITRATION AGAINST SEC

The Motion should also be denied as against SEC because Petitioners never previously demanded that SEC arbitrate any dispute.  Section 4 of the FAA requires that a party seeking to

---

[34]     *Accord LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198–99 (2d Cir. 2004) (affirming denial of motion to compel where respondent "answered the arbitral demand" and had not ignored any arbitral orders); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) ("[U]nless [employer] . . . is ordered to arbitrate this dispute by [the arbitral body] and fails to do so, it is not in default of any arbitration agreement it [had with employee].  Absent such default, arbitration cannot be compelled under Section 4.").

compel arbitration must first provide "written notice of the demand so that responding parties may agree to arbitrate and thus avoid court involvement. 'Judicial involvement prior to this sequence is premature, since it is only "the alleged failure, neglect, or refusal of another to arbitrate" which triggers jurisdiction under 9 U.S.C. § 4.'" *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 798–99 (N.D. Ill. 2013) (Castillo, J.) (quoting *All Saint's Brands, Inc. v. Brewery Grp. Den., A/S*, 57 F. Supp. 2d 825, 828 (D. Minn. 1999)); *accord* 9 U.S.C. § 4 (party seeking to compel arbitration must provide "[f]ive days' notice in writing of such application").

Petitioners were thus required to have demanded arbitration with SEC before they filed a petition to compel it to arbitrate. They did not do so. Petitioners' October 2022 demands for arbitration only named SEA (*and not SEC*) as a respondent. (Pet., Ex. E.) And Petitioners did not otherwise notify SEC prior to filing the Motion (or the Petition) that they demanded that it arbitrate with them. *See supra* at pp. 21-22, 25.

Because Petitioners failed to demand arbitration with SEC prior to filing this Motion, they cannot now seek to compel it to arbitrate pursuant to section 4 of the FAA. *Marzano*, 942 F. Supp. 2d at 799 ("Absent a request to compel arbitration and a showing that Plaintiffs have refused to arbitrate, this court will not compel arbitration *sua sponte*.").[35]

---

[35]    *Accord Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 894 (N.D. Ill. 2014) (Castillo, J.) (written notice of the demand to arbitrate is a prerequisite to compelling arbitration under Section 4 of the FAA); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995) ("[I]t is doubtful that a petition to compel arbitration filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance."); *see also Briggs & Stratton Corp. v. Loc. 232, Int'l Union, Allied Indus. Workers of Am.*, 36 F.3d 712, 715 (7th Cir. 1994) ("The [employment] dispute does not come within § 4 of the Arbitration Act because no one has demanded arbitration.").

26

III. **PETITIONERS' REQUEST THAT SAMSUNG BE ORDERED TO PAY ARBITRATION FEES SHOULD BE DENIED BECAUSE NO FEES ARE OUTSTANDING AND THE COURT DOES NOT OTHERWISE HAVE THE AUTHORITY TO ORDER A PARTY TO PAY ARBITRATION FEES**

While Petitioners ask the Court to "[r]equir[e]" Samsung to "pay[] the arbitration fees and costs necessary to empanel arbitrators and proceed with the arbitrations" (Pet. ¶ 43), there are no outstanding fees that SEA has been asked to pay. The AAA has closed the prior arbitrations and refunded Petitioners' Counsel's filing fees (Pet., Exs. J and K). *See supra* at pp. 20–21, 25. As for SEC, it cannot be "compelled" to pay fees relating to arbitrations to which it was never a party.

In any event, the Court respectfully does not have the authority—under the FAA, the Arbitration Agreement, the applicable AAA rules, or otherwise—to order a party to pay arbitration fees. A court's role in deciding a motion to compel arbitration is limited to "[w]hether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate." *See Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F. 3d 476, 480 (7th Cir. 2010) (citation omitted). Procedural disputes that develop over the course of arbitral proceedings are to be decided by the arbitration administrator or arbitrator, not a judge. *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge." (internal quotation marks and citation omitted)); *Lumbermens*, 623 F.3d at 481 (A "procedural question about a condition precedent to arbitration . . . is for the arbitrator to address."). Courts have consistently held that "the payment of arbitration fees . . . is a procedural condition precedent to be decided by the arbitrator." *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020); *accord Union Cent. Life Ins. Co. v. Andraos*, Nos. 1:09-cv-758, 1:11-cv-75, 2011 WL 6091771, at *5 (S.D. Ohio Oct. 21, 2011), *report and*

*recommendation adopted*, 2011 WL 6100275 (S.D. Ohio Dec. 7, 2011).

Here, the Arbitration Agreement provides that "[t]he arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes." (Pet., Ex. B-1 at 10; B-2 at 2; B-3 ¶ 16.) The AAA has already determined that the AAA Rules and the Supplementary Rules apply to the underlying arbitrations here. (*See* Pet., Ex. F.) The AAA Rules specifically provide the AAA—not the Court—with the authority to address the non-payment of arbitration fees. The AAA has done so in its Supplementary Rules, which contain a specific protocol applicable to non-payment of fees in the mass arbitration context: where one party does not pay its initial filing fees, the other party (or its counsel) may advance the fees and seek to recoup them in the arbitration, or they may waive their right to arbitration and proceed with their underlying claims in court. *See* Ex. 1, MC-10(d); Pet., Ex. C, R-1(d); *see also* Ex. 1, MC-1(g) ("In its sole discretion, the AAA has the authority to interpret and apply these Supplementary Rules."). Furthermore, the Arbitration Agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement." (Pet., Exs. B-1, B-2, B-3.) Petitioners' cases further support this point. *See McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 812 (N.D. Ill. 2020) (Rowland, J.) (cited in Mot. at 14) (the arbitrator alone decides disputes regarding "the payment of arbitration fees, including related expenses" (citation omitted)); *Croasmun v. Adtalem Glob. Educ. Inc*., No. 20 C 1411, 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020) (Lefkow, J.) (cited in Mot. at 13, 15) (declining to order payment of fees and holding that the "dispute over [the arbitral body's] filing fees [was] for the arbitrator to decide.").

Courts may not rewrite procedural rules agreed to by the parties, such as the AAA Rules that apply to this dispute. *See Margalioth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 695 F.

Supp. 756, 757 (S.D.N.Y. 1988) (where plaintiff elected to arbitrate before the National

Association of Securities Dealers (NASD), plaintiff must abide by NASD rules, but "[p]laintiff

cannot . . . refuse to comply with these rules or *ask a court to rewrite them merely because they*

*do not suit his interests*" (emphasis added)); *see also Mosley v. City of Chi.*, 252 F.R.D. 445, 449

(N.D. Ill. 2008) (Cole, Mag. J.) ("Courts are not at liberty to rewrite statutes and rules that

plainly and unambiguously prescribe duties, obligations and procedures.").  Courts have

repeatedly recognized that they do not have the authority to rewrite an agreement between the

parties by ordering a party to pay arbitration fees.  *See McClenon*, 473 F. Supp. 3d at 812

(declining "to grant the Petitioners' request that the Court order Postmates to . . . 'pay all

arbitration filing fees and arbitration retainers necessary to proceed with Petitioners' demands for

arbitration'" because "'the payment of arbitration fees, including related expenses, is a

procedural condition precedent to be decided by the arbitrator'" (citations omitted)); *Adams*, 414

F. Supp. at 1255-56 (noting that AAA Rules "include provisions regarding the payment of

arbitration fees, as well as the available remedies for non-payment" and "declin[ing] to enter an

order compelling Postmates to pay outstanding and future arbitration fees" (citation omitted)).[36]

　　　　Petitioners cite a number of other cases which, they assert, held that "(1) a failure to pay

---

[36]  *See also Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review. . . . The arbitrators are within their discretion to ask one or the other party to pay the entire fee, and tax the fee as part of the award, or, alternatively, suspend the arbitration."); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2004) ("[T]he FAA limits the court's discretion; . . . the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue" and, as a result, "the district court erred in holding that [respondent] must pay its pro-rata share of the arbitration fees."); *Union Cent. Life*, 2011 WL 6091771, at *5 ("The payment of arbitration fees is a condition precedent to arbitration, similar to the required submission of documents and abiding by time limits, which are considered procedural issues to be decided by an arbitrator.").

filing fees as directed by an arbitrator equates to a refusal to arbitrate and a breach of contract, and (2) the non-breaching party may compel arbitration." (Mot. at 12–13.) In the vast majority of those cases, the court did not hold that it had the authority to order a party to pay arbitration fees, and the remaining cases are readily distinguishable:

- Petitioners cite *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2021 WL 540155, at \*9 (C.D. Cal. Jan. 19, 2021), for the proposition that where a party refuses to pay arbitration fees, "that allows the counterparty to elect to proceed in court or compel specific performance." (Mot. at 13.) But the court did not rule on the issue of whether it could order a party to pay arbitration fees. *See Postmates*, 2021 WL 540155 at \*12 (parties agreed that "the payment of arbitration fees is a procedural condition precedent to be decided by the arbitrator," and therefore "decline[d] to direct Postmates to tender payment of certain [arbitral] fees" (citation omitted)).[37]

- In *Croasmun*, 2020 WL 7027726, at \*4, Judge Lefkow, citing *McClenon*, declined to order payment of fees, holding that that dispute "is for the arbitrator to decide."

- *Rapaport v. Soffer*, No. 2:10-CV-0935-KJD-RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011) did not address whether a court could order a party to pay arbitration fees. Rather, the court denied defendant's motion to compel arbitration where that party had previously "stopped paying his portion of the fees" in an AAA arbitration, the AAA had terminated the proceeding, and the party nonetheless attempted to compel the opposing party to arbitrate. *See id* at \*1–2.

- *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), like *Rapaport*, concerned a defendant that sought to continue arbitration after repeatedly refusing to pay the AAA's arbitration fees, which caused the AAA to terminate the arbitration. The court ultimately held that the defendant "was not entitled to maintain the stay [of litigation] under § 3" of the FAA and refused to compel plaintiff to arbitrate. *Id.* at 1294.

- *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) has nothing to do with whether a court can order a party to pay

---

[37] The *Postmates* court's discussion of specific performance was in the context of the respondent's argument that a California bill imposing penalties for a parties' refusal to pay arbitration fees was preempted by the FAA. *See Postmates*, 2021 WL 540155 at \*9. To the extent that that court considered whether it may be able to order specific performance, it relied solely on the Ninth Circuit's decision in *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003). However, the court in *Sink* did not address whether specific performance can be compelled by a court upon a party's failure to pay arbitration fees. *See id.* at 1200–01. In *Sink*, the court held only that a party whose failure to pay arbitration fees resulted in the arbitration being terminated could not maintain a stay of litigation or again compel arbitration. *Id.*

arbitration fees. The court in that case, as described by Petitioners, addressed a refusal to arbitrate in one location versus another. *See id.* at *2, *4.

- In *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020), the court granted motions to compel arbitration as to those petitioners who had established they had valid arbitration agreements with the respondent, but it did not order the payment of arbitration fees, nor did it consider whether it had the authority to do so.

In *Allemeier v. Zyppah, Inc.*, No. CV 18-7437 PA (AGR), 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) (cited at Mot. 13), an employer in an AAA arbitration involving a single employee sought to have the arbitration heard elsewhere. The court, in ordering the employer to proceed with the AAA arbitration, including paying AAA fees, *id.* at *4, cited *dicta* from the Ninth Circuit's decision in *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016), where the appellate court speculated—but did not hold—that "mindful, of course, of the 'liberal federal policy favoring arbitration,'" *id.* at 1075 (citation omitted), an order to pay arbitration fees may be proper in a case of "intentional noncompliance" with the arbitrator's rules. *Id.* at 1075 & n.1.

Here, Samsung did not refuse to arbitrate. In any event, the Supreme Court recently held in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022) that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules" and "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* at 1713. The FAA does not authorize courts to order a party to pay arbitral fees and, in light of *Morgan*, it is clear that any "federal policy favoring arbitration," *Tillman*, 825 F. 3d at 1075, does not authorize a federal court to arrogate such a power by "invent[ing]" a "special, arbitration-preferring procedural rule[]" and overriding the AAA's resolution of a fee question in accordance with its rules. *Morgan*, 142 S. Ct. at 1713.

Nor does this Court have the authority to second-guess the AAA's application of its own rules. The AAA, applying its own rules, declined the parties' joint request for a stay and instead closed the arbitrations. *See Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2021 WL

31

134578, at *3 (N.D. Cal. Jan. 14, 2021) ("The [AAA] rules allow the AAA to decline to administer arbitration 'in its sole discretion.'" (citation omitted)); *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 4201948, at *4 (M.D. Fla. July 22, 2020) (No "legal authority support[s] the proposition that a district court can force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case.").

## IV. PETITIONERS HAVE ADEQUATE REMEDIES AT LAW AND ARE NOT ENTITLED TO ANY EQUITABLE RELIEF

Petitioners seek an equitable remedy—compelling Samsung to pay arbitration fees. But as discussed in Part III *supra*, the Court does not have the authority to order Samsung to pay arbitration fees or to order the AAA to reopen cases it has already closed. Petitioners would not in any event be entitled to the equitable remedy of forcing Samsung to pay arbitration fees because they have an adequate remedy at law. "It is well settled that the availability of an adequate remedy at law renders injunctive relief inappropriate." *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 432 (7th Cir. 1991); *accord Unilectric, Inc. v. Holwin Corp.*, 243 F.2d 393, 396 (7th Cir. 1957) (party was not entitled to an order forcing the opposing party to pay royalties because potential for subsequent recovery of those royalties was an adequate remedy at law).

Here, Petitioners have two adequate remedies at law: under AAA rules, they (or their counsel) can advance fees and later seek reimbursement unless the claims are deemed frivolous or brought for an improper purpose,[38] or they can waive their right to arbitrate and proceed in court, where they can obtain the same relief through litigation that they would be able to seek in

---

[38] *See* Pet., Ex. C, R-44(c) ("The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for the purposes of harassment or is patently frivolous.").

arbitration.[39]  *See Sjogren v. Maybrooks, Inc.*, 214 Ill. App. 3d 888, 892 (1991) (refusing to grant equitable relief because the subject of the contract on which plaintiff sought specific performance was not "unique" and plaintiff "therefore had an adequate remedy at law for damages"); *see also Phillips v. Assocs. Home Equity Servs., Inc.*, 179 F. Supp. 2d 840, 845 (N.D. Ill. 2001) (Kennelly, J.) (arbitrators and courts have the power "to fashion the same relief"). Indeed, Petitioners' Counsel have repeatedly taken the position in federal court that "[c]lass-wide relief is essential to compel compliance with BIPA."  *See supra* note 16.

## V.    THE DOCTRINE OF JUDICIAL ESTOPPEL IS INAPPLICABLE HERE

Petitioners refer to other cases where Samsung moved to compel arbitration (*see* Mot. at 7–8), and suggest that in this case Samsung "is seeking to dodge the *very same* Arbitration Agreement."  (Mot. 1 (emphasis in original).)  Of course, SEC cannot "dodge" arbitrations that were never filed against it.  Nor is SEA "seeking to dodge" anything: it is Petitioners who chose not to refile their demands for arbitration.  *See supra* at 21–22.  But even setting aside those deficiencies in Petitioners' arguments, the doctrine of judicial estoppel is inapplicable here for several reasons:

***First***, judicial estoppel only applies where (i) the position taken by a party in one case is "clearly inconsistent" with a position it has taken in an earlier matter and (ii) the facts at issue in both cases are identical.  *Sanders v. JGWPT Holdings, LLC*, No. 14 C 9188, 2017 WL 4281123, at *5 (N.D. Ill. Sept. 27, 2017) (Ellis, J.).  Neither element is present here.  Samsung's position in the present case is not inconsistent with prior cases where it moved to compel arbitration.  In each of those cases, the plaintiffs were seeking to proceed with a putative class action against Samsung, and Samsung moved to compel arbitration of that dispute pursuant to the applicable

---

[39]     *See* Ex. 1, MC-10(d); Pet., Ex. C, R-1(d).

arbitration agreement. Here, Samsung has not refused to arbitrate, nor has it argued that the Arbitration Agreement is unenforceable. *See supra* at 21–22.[40] And the facts in those cases are not identical to the facts here; none of those cases involved mass arbitrations (including violations of the Arbitration Agreement's bar on collective actions), the failure of evidence that any agreement to arbitrate was entered with each petitioner, or the other abuses against Samsung documented here.

*Second*, even assuming *arguendo* that Samsung had taken a contrary position in other cases as to whether to enforce the Arbitration Agreement, courts have long held that a party may take a position on whether to enforce an arbitration clause in one matter without affecting its rights in litigation involving different facts or parties. *See Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 n.4 (7th Cir. 2003); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995); *Pohlman v. NCR Corp.*, No. 12 cv 6731, 2013 WL 3776965, at *5 (N.D. Ill. July 17, 2013) (Johnson Coleman, J.); *Noe v. Smart Mortg. Ctrs., Inc.*, No. 21 CV 1668, 2021 WL 4283027, at *3 n.7 (N.D. Ill. Sept. 21, 2021) (Shah, J.). Moreover, Petitioners do not identify any cases which applied judicial estoppel in the arbitration context and none of the cases that they do cite (*see* Mot. at 10–11) supports a finding that judicial estoppel should apply here.[41]

---

[40] Furthermore, the courts only granted Samsung's motions to compel arbitration in those cases after Samsung met its burden of establishing that there was a valid arbitration agreement between them and the plaintiffs. *See, e.g.*, *Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-10238-WJM-AME, 2021 WL 5578736, at *11 (D.N.J. Nov. 29, 2021) ("SEA has demonstrated the existence of a valid and enforceable Arbitration Agreement."); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, ED CV No. 16-1953-DMG (KKx), 2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020) ("[T]he Court finds that Samsung has met its burden of showing that [Plaintiff] consented to the Arbitration Agreement."). Here, however, Petitioners have not offered any evidence, beyond mere speculation, that each of them has a valid arbitration agreement with Samsung.

[41] Petitioners cite five bankruptcy cases, three of which held that bankruptcy petitioners who failed to disclose assets or non-liquidated claims may not later attempt to profit from or assert an interest in those undisclosed claims. *See Bland v. Rahar*, No. 06-3072, 2008 WL

## VI. THE PETITION SHOULD BE DISMISSED FOR THE REASONS SET FORTH IN SAMSUNG'S MOTION TO DISMISS

The Motion should also not be granted for the reasons set forth in Samsung's Motion to Dismiss the Petition, filed concurrently. In sum: (i) the 241 Petitioners who are also petitioners in *Wallrich* have brought improper parallel litigations and attempted to engage in impermissible claim splitting; (ii) the Petition fails to plead a sufficient basis for venue in this Court for each Petitioner; (iii) this Petition—purportedly filed on behalf of 1,028 Petitioners—violates the collective action waivers set forth in the Arbitration Agreement; and (iv) Petitioners have failed to show that each of them entered into an arbitration agreement with Samsung. Samsung will not burden the Court with duplicative arguments here but respectfully refers the Court to the briefing on that motion.

## CONCLUSION

For all of the foregoing reasons, Petitioners' Motion should be denied.

Dated: June 14, 2023

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
   SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

Respectfully submitted,

*/s/ Randall W. Edwards*
Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700

---

109388, at *2 (C.D. Ill. Jan. 9, 2008); *Prochnow v. Apex Properties, Inc. (In re Prochnow)*, 467 B.R. 656, 665 (C.D. Ill. 2012); *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). The remaining two cases are similarly distinguishable. One case held that a litigant cannot take a different position on appeal than it took before the bankruptcy court. *See FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*, 616 F.3d 642, 662-63 (7th Cir. 2010). The other held that the doctrine of estoppel was not even applicable to the dispute. *See Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014). In the only non-bankruptcy case that Petitioners cite—which addressed an employee's ADA claims against his employer—the court determined that judicial estoppel did not apply. *See DeVito v. Chi. Park Dist.*, 270 F.3d 532, 535 (7th Cir. 2001).

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*