**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| **MELANIE HOEG, ANGELA DAVIS, MELINDA GARCIA, and 1,025 OTHER INDIVIDUALS,** | : | Civil Action No: 1:23-cv-1951 |
| | : | Hon. Jorge L. Alonso |
| *Petitioners,* | : | |
| - against - | : | |
| **SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.** (d/b/a Samsung Electronics America, Inc.), | : | |
| *Respondents.* | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONDENTS' MOTION TO DISMISS
## THE PETITION TO COMPEL ARBITRATION

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
    SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700

James L. Kopecky
KOPECKY SCHUMACHER
    ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

Dated: June 14, 2023

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... iii

PRELIMINARY STATEMENT ........................................................1

FACTUAL AND PROCEDURAL BACKGROUND................................3

    A.    After Another Law Firm Filed A BIPA Putative Class Action Against Samsung, Milberg Began Soliciting Claimants For A "Mass Arbitration," Hoping To Use The Threat Of Massive Arbitral Fees To Coerce Samsung To Settle Meritless Claims .....................................................3

    B.    Petitioners' Counsel Filed 1,044 Arbitration Claims Against SEA Even Though They Were Informed That The Claims Had No Merit Whatsoever ..........4

    C.    Another Firm, Labaton, Pursuing Mass Arbitrations Against Samsung On The Same Baseless BIPA Claims, Filed An Action Against Samsung To Compel It To Pay Fees .............................................................5

    D.    The AAA Declined The Parties' Joint Request To Stay The Arbitrations Pending Mediation And Instead Closed Them; Petitioners' Counsel Chose Not To Refile After Mediation And Instead Filed This Petition ...........................6

    E.    Samsung Discovered That Nearly A Quarter Of The Petitioners In This Action Are Also Represented By Labaton On The Same Claims In That Firm's Action ...........................................................6

CORRECTIVE NOTE ON JURISDICTION ................................7

ARGUMENT ........................................................8

    I.    THE PETITION SHOULD BE DISMISSED AS A MATTER OF LAW WITH RESPECT TO THOSE PETITIONERS WHO BROUGHT TWO ACTIONS SEEKING THE SAME RELIEF AGAINST THE SAME RESPONDENTS ........................................................8

    II.    THE PETITION FAILS TO SUFFICIENTLY PLEAD A PROPER BASIS FOR VENUE IN THIS COURT AS TO ALL PETITIONERS................10

    III.    THE PETITION HAS BEEN BROUGHT IN DIRECT VIOLATION OF THE ARBITRATION AGREEMENT'S COLLECTIVE ACTION WAIVER........................................................12

    IV.    PETITIONERS HAVE FAILED TO SHOW THAT THEY ENTERED INTO ARBITRATION AGREEMENTS WITH SAMSUNG ..............14

i

A. Petitioners' Own Legal Authorities Confirm That The Court Cannot Compel Arbitration, Because Petitioners Have Failed To Establish That Each Of Them Entered Into A Valid Arbitration Agreement With Samsung ........................................................................14

B. If The Petition Is Not Dismissed, Then Discovery And An Evidentiary Hearing Must Be Had As To Whether Each Petitioner Entered Into An Agreement To Arbitrate ...................................................19

CONCLUSION ......................................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adkins v. Midland Credit Management, Inc.*,
    5:17-cv-04107, 2020 WL 5791295 (S.D.W. Va. Sept. 28, 2020) ....................................19

*Abernathy v. DoorDash, Inc.*,
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ..............................................................15, 18

*AG Leader Technology, Inc. v. NTech Industries, Inc.*,
    574 F. Supp. 2d 1011 (S.D. Iowa 2008) ...........................................................10

*Andrade v. American First Finance, Inc.*,
    No. 18-cv-06743-SK, 2022 WL 3369410 (N.D. Cal. Aug. 16, 2022)..............................19

*Badgerow v. Walters*,
    142 S. Ct. 1310 (2022).......................................................................................8

*Bland v. Edward D. Jones & Co.*,
    No. 18-cv-03673, 2020 WL 7027595 (N.D. Ill. Nov. 30, 2020) ......................................11

*Carter v. CVS Pharmacy, Inc.*,
    No. 18 CV 01482, 2019 WL 11505578 (N.D. Ill. Jan. 15, 2019).....................................15

*Cherelli v. InStore Group, LLC*,
    513 F. Supp. 3d 187 (D. Mass. 2021) .................................................................10

*Cohen v. UBS Financial Services, Inc.*,
    799 F.3d 174, 179 (2d Cir. 2015)........................................................................13

*Dassero v. Edwards*,
    190 F. Supp. 2d 544 (W.D.N.Y. 2002)..............................................................20

*Diaz v. Indian Head, Inc.*,
    686 F.2d 558 (7th Cir. 1982) ..........................................................................10

*In re Energy Cooperative, Inc.*,
    814 F.2d 1226, 1230 (7th Cir. 1987) ................................................................10

*In re Evanston Northwest Corp. Antitrust Litig.*,
    No. 07-4446, 2015 WL 13735423, at *4 (N.D. Ill. Sept. 4, 2015) ....................................18

*Figueredo-Chavez v. RCI Hospitality Holdings, Inc.*,
    No. 1:21-CV-21733-KMM, 2022 WL 457848 (S.D. Fla. Jan. 6, 2022)............................13

*Ford-Reyes v. Progressive Funeral Home*,
  418 F. Supp. 3d 286 (N.D. Ill. 2019) ................................................................11

*Freestone v. CACI, Inc.-Fed.*, No. 22-1322 (JEB), 2022 WL 16569197, at *3 (D.D.C.
  Aug. 22, 2022) ....................................................................................................14

*General Ass'n of Regular Baptist Churches v. Scott*,
  549 F. App'x 531 (7th Cir. 2013) ......................................................................15

*Gilbert v. I.C. System, Inc.*,
  No. 19-CV-04988, 2021 WL 292852 (N.D. Ill. Jan. 28, 2021)...................15, 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).........................................................................................15

*Hilton v. Fluent, LLC*,
  297 F. Supp. 3d 1337 (S.D. Fla. 2018) ..............................................................20

*Hyytinen v. Morhous*,
  No. C14-5537 BHS, 2015 WL 917621 (W.D. Wash. Mar. 3, 2015)..................10

*Igene v. Sessions*,
  No. H-17-3143, 2018 WL 1582239 (S.D. Tex. Mar. 29, 2018) .........................10

*Interstate Material Corp. v. City of Chicago*,
  847 F.2d 1285 (7th Cir. 1988) .............................................................................9

*Johnson v. Uber Technologies, Inc.*,
  No. 16 CV 5468, 2017 WL 1155384 (N.D. Ill. Mar. 13, 2017) ...................16, 20

*Melvin v. Big Data Arts, LL*C,
  553 F. Supp. 3d 447 (N.D. Ill. 2021) ............................................................16, 20

*Muhammad v. Dollar Tree*,
  2020 WL 1530750 (N.D. Ill. Mar. 31, 2020)..................................................15, 19

*Niiranen v. Carrier One, Inc.*,
  No. 20-cv-06781, 2022 WL 103722 (N.D. Ill. Jan. 11, 2022).........................12

*Olson v. Counts*,
  No. 12-218 ADM/TNL, 2012 WL 1394594 (D. Minn. Apr. 23, 2012) ............10

*Postmates Inc. v. 10,356 Individuals*,
  No. CV 20-2783 PSG (JEMx), 2021 WL 540155 (C.D. Cal. Jan. 19, 2021)..................18

*Powell v. Payday Loan Store of Ill., Inc.*,
  No. 09 C 4146, 2010 WL 3893894 (N.D. Ill. Sept. 28, 2010)..........................13

*Serlin v. Arthur Andersen & Co.*,
   3 F.3d 221 (7th Cir. 1993) ......................................................................9

*Swanson v. Endres*, No. 07 C,
   No. 07 C 1185, 2007 WL 1655230 (N.D. Ill. June 6, 2007) ...........................11

*Thomas D. Philipsborn Irrevocable Insurance Trust v. Avon Capital, LLC*,
   No. 11-3274, 2012 WL 4513903, at *1 (N.D. Ill. Oct. 1, 2012) ................14, 15

*Trejo v. Advance America, Cash Advance Centers of Illinois, Inc.*,
   No. 09 C 2278, 2009 WL 10713823 (N.D. Ill. June 23, 2009) .......................13

*U.S.O. Corp. v. Mizuho Holding Co.*,
   547 F.3d 749 (7th Cir. 2008) ...................................................................9

*Van Tassell v. United Marketing Group, LLC,*
   795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) ................................................18

*Walters v. Lane*,
   No. 87 C 3486, 1988 WL 31471 (N.D. Ill. Mar. 25, 1988) ..............................9

*Walton v. Eaton Corp.*,
   563 F.2d 66 (3d Cir. 1977).......................................................................9

*Weizeorick v. ABN AMRO Mortg. Grp., Inc.*,
   No. 01 C 713, 2004 WL 528006 (N.D. Ill. Mar. 16, 2004) ............................10

*Wembi v. Gibson's Restaurant Group Management Co. LLC*,
   No. 21 C 586, 2021 WL 2272399 (N.D. Ill. May 13, 2021) .....................16, 20

## STATUTES

9 U.S.C. § 4.....................................................................7, 14, 15, 19

9 U.S.C. § 204.............................................................................12

28 U.S.C. § 1391..........................................................................11

28 U.S.C. § 1331............................................................................7

28 U.S.C. § 1367............................................................................7

Biometric Information Privacy Act,
   740 ILCS 14/1 *et seq*.....................................................................3

## <u>OTHER AUTHORITIES</u>

AAA Consumer Arbitration Rules.................................................................................................12

## PRELIMINARY STATEMENT

This Petition to Compel Arbitration ("Petition" or "Pet.," ECF No. 1) seeks to compel Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC") (collectively, "Samsung") to arbitrate and pay arbitral fees in connection with 1,028 arbitrations that have been closed and to which SEC was never a party. Petitioners' counsel have also threatened to file tens of thousands of additional arbitrations. The Petition's purpose is not to facilitate any actual arbitration proceeding but to use the threat of the assessment of millions of dollars in arbitral fees to extract a settlement from Samsung that is untethered to the merits of the underlying claims. Considerable authority supports the rejection of the Petition's gambit.

The Petition—and Petitioners' recently-filed motion to compel arbitration ("Mot. to Compel Arb.," ECF No. 28)—is deficient as a matter of law for numerous reasons, including because SEA never refused to arbitrate, SEC was not even a party to the previously-filed arbitrations before the American Arbitration Association ("AAA") to which the Petition refers, and because the AAA has closed those arbitrations and no fees are due (or could be due) in connection with them. Even if those arbitrations were still ongoing proceedings, Samsung respectfully submits that the Court does not have the authority to step into the AAA's oversight of its arbitral proceedings and override the AAA's rules with regard to the payment of fees. Those points are addressed fully in Samsung's concurrently filed Opposition to Petitioners' Motion to Compel Arbitration ("Opp.") and Samsung will not burden the Court with duplicative briefing on them. Samsung incorporates these arguments by reference herein.

In addition, the Petition should be dismissed as a matter of law for each of the following additional independent reasons:

*First*, at least 241 of the Petitioners in this action—nearly a quarter of them—are already petitioners in a separate action pending in this Court, *Wallrich v. Samsung Electronics America*,

No. 1:22-cv-05506 (N.D. Ill.) ("*Wallrich*"), ECF No. 1, where they are asserting identical claims and seeking identical relief against the same respondents. *See* pp. 6–7 *infra*; *see also Wallrich*, ECF No. 40. These Petitioners have improperly brought parallel litigations and engaged in impermissible claim splitting, and their claims here should be dismissed for that reason alone.[1]

*Second*, Petitioners have failed to plead a sufficient basis for venue in this Court for each Petitioner. More than 300 of these Petitioners do not even reside in this District and therefore are incapable of establishing any basis for venue in this District.

*Third*, to the extent Petitioners are parties to arbitration agreements, the Petition—purportedly filed on behalf of 1,028 separate Petitioners each seeking relief as to separate arbitrations—has been brought in violation of collective action waivers set forth in the arbitration agreement that Petitioners assert is at issue. (Pet. Exs. B-1, B-2, B-3 (collectively, the "Arbitration Agreement").) That alone warrants the dismissal of the Petition in its entirety.

*Fourth*, Petitioners have failed to present evidence to satisfy their burden of demonstrating that a valid arbitration agreement exists between each of them and Samsung. Because Petitioners have not shown that they are each parties to an arbitration agreement with Samsung, this Court cannot offer them any relief on their Petition.

For those reasons and the reasons set forth in Samsung's Opposition to Petitioners' Motion to Compel Arbitration, the Petition should be dismissed with prejudice.

---

[1] Despite being on notice of this issue for months, Petitioners' Counsel have not withdrawn or amended the Petition or otherwise sought to remove these overlapping Petitioners.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     After Another Law Firm Filed A BIPA Putative Class Action Against Samsung, Milberg Began Soliciting Claimants For A "Mass Arbitration," Hoping To Use The Threat Of Massive Arbitral Fees To Coerce Samsung To Settle Meritless Claims**

On August 11, 2021, a putative class action was filed in the Circuit Court of Cook County, Chancery Division, alleging that a functionality of certain Samsung devices violated Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA").  The action was removed to this Court on September 20, 2021.  *G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976 (N.D. Ill.) (Maldonado, J.).  After the *G.T.* action was filed, various firms began soliciting claimants to bring "mass arbitrations" against Samsung on the same underlying purported BIPA claims.  One of those firms was Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"), co-counsel for Petitioners here.

Milberg has an extensive mass arbitration practice.  Milberg solicits mass arbitration claimants through a third-party website, ClassAction.org, through which it is presently soliciting for no less than 33 mass arbitrations.  (*See, e.g.*, Opp. Ex. 4.)  Milberg also acquires claimants through other channels, including leads generated by other law firms across the country.  These solicitations explain that the mass arbitration strategy is premised not on the merits of the underlying claims, but on the threat of arbitration fees to extract a quick settlement before any merits issues are adjudicated:

> The aim of a mass arbitration proceeding is to grant relief on a large scale (similar to a class action lawsuit) for those who sign up by getting the company to agree to a quick settlement instead of arbitrating every claim and paying the costly upfront fees.[2]

Milberg began soliciting for BIPA claimants on ClassAction.org (*see* Opp. Ex. 5) and also ran

---

[2]     (Exhibit 4 to Respondents' Opposition To Motion To Compel Arbitration, filed herewith ("Opp. Ex. 4") at 6.)

numerous paid advertisements on Facebook, Instagram, and Audience Network that did not reference arbitration but instead advertised bringing a "class action" against Samsung (*see* Opp. Exs. 10–17.)

Milberg initially partnered with several other firms in soliciting claimants, none of which have appeared in the present action. The publicly-available retainer agreement that Milberg and one of these firms presented to claimants included that their attorneys' fees could be up to *70%*—and no less than 45%—of the amount of any recovery. That retainer agreement also stated that Milberg would not represent the claimants on any counterclaims, and the claimants would be financially responsible for any attorneys' fees awarded to opposing counsel. (*See* Opp. Ex. 19 §§ 2, 3.) Milberg's current co-counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller," or collectively with Milberg, "Petitioners' Counsel") also appear to have assisted Milberg with soliciting claimants.

**B.    Petitioners' Counsel Filed 1,044 Arbitration Claims Against SEA Even Though They Were Informed That The Claims Had No Merit Whatsoever**

Milberg first contacted SEA in June 2022, stating that, "along with" another firm, it represented "at least 15,000 individual claimants" who intended to bring BIPA claims against Samsung in arbitration. (Pet. Ex. D.) Over the next few months, Milberg rebuffed SEA's attempts to discuss the merits of its clients' purported claims and instead regularly increased the number of claimants it purported to have signed up. (*See* Opp. Exs. 26–28.)

Although Petitioner's Counsel have now told Samsung they represent 60,000 claimants, (*e.g.*, Pet. ¶ 17 n.4) they have provided information only as to 31,461. SEA reviewed the limited information provided by Milberg as to those purported claimants (*see* Opp. Ex. 28 (attachment intentionally omitted)) and discovered claimants who were deceased, claimants who had provided fictitious personal information, claimants who were not Illinois residents (a requirement

4

for the underlying BIPA claims), claimants who Samsung had no record of ever being a customer or owning any of the devices at issue, and a large number of claimants who had also purported to bring identical claims against Samsung with other law firms.

In September 2022, after Milberg informed SEA that it would "be filing arbitration claims later this week" (Opp. Ex. 28), SEA sent Milberg a letter explaining that "because you now say you will file your claims before we speak, we write to put you on notice, before your filings, regarding the baseless nature of any BIPA claims against Samsung." (Opp. Ex. 29.) The letter attached a declaration of SEC engineer Youngil Shin (the "Shin Declaration"), which explained the functionality of the Samsung technology and how it did not implicate BIPA. (*See* Opp. Ex. 30.) In October 2022, Milberg, now partnered with Robbins Geller, proceeded to file a total of 1,044 demands for arbitration with the AAA against SEA (but not SEC). (Pet. Ex. E; *see also* Pet. ¶¶ 9, 33.) It further threatened to file additional, successive waves of arbitration demands.

## C.   Another Firm, Labaton, Pursuing Mass Arbitrations Against Samsung On The Same Baseless BIPA Claims, Filed An Action Against Samsung To Compel It To Pay Fees

On October 7, 2022, Labaton Sucharow LLP ("Labaton")—another firm that had been soliciting claimants to bring the same baseless BIPA claims against Samsung—filed a petition in this Court on behalf of 49,986 petitioners, seeking to compel Samsung to arbitrate substantially identical BIPA claims and pay the related arbitration fees. *See Wallrich*, ECF No. 1. Labaton had previously filed 50,000 demands for arbitration against both SEA and SEC with the AAA. Labaton thereafter requested the arbitrations be closed after Samsung exercised its right under the AAA rules not to pay the arbitration fees and Labaton exercised its right (also under the AAA rules) not to pay the fees and allow the arbitrations to proceed. *Wallrich*, ECF No. 27 at 15–16. In *Wallrich*, Samsung filed a motion to dismiss the petition to compel arbitration and an

opposition to the motion to compel arbitration, both of which have been fully briefed and are pending before Judge Harry D. Leinenweber.[3]

### D. The AAA Declined The Parties' Joint Request To Stay The Arbitrations Pending Mediation And Instead Closed Them; Petitioners' Counsel Chose Not To Refile After Mediation And Instead Filed This Petition

After SEA, Milberg, and Robbins Geller agreed to mediation, on January 11, 2023, the parties "jointly request[ed]" that the AAA stay the arbitrations, including SEA's deadline to pay arbitration fees. (Pet. Ex. I.) In response, the AAA closed the arbitration proceedings, refunded the filing fees paid by Petitioners' Counsel, and stated that "[s]hould the parties not settle these matters through mediation, the Claimant may refile these cases." (Pet. Ex. J; *id.* Ex. K.)

The mediation, conducted on March 22, 2023, proved unsuccessful. Six days later, Petitioners' Counsel filed this Petition, on behalf of 1,028 Petitioners, seeking to compel arbitration of Petitioners' purported BIPA claims.[4] The Petition named both SEA *and* SEC as respondents, even though the prior demands for arbitration had been brought solely against SEA. It further alleged that Petitioners' Counsel now represented a total of "approximately 60,000" claimants (Pet. ¶ 17 n.4), while acknowledging that "the remaining 58,956 Petitioners" had not filed demands for arbitration (*id.* ¶ 17.)

### E. Samsung Discovered That Nearly A Quarter Of The Petitioners In This Action Are Also Represented By Labaton On The Same Claims In That Firm's Action

On March 30, 2023, Samsung moved to have this newly-filed action reassigned to Judge

---

[3]  Also in October 2022, a second putative BIPA class action was filed against Samsung asserting substantially similar claims to the *G.T.* action. *See Jones v. Samsung Elecs. Am., Inc.*, No. 1:22-cv-05662. The *Jones* action was consolidated with *G.T.* in December 2022.

[4]  While the Petition refers to "1,044 Petitioners" (Pet. ¶ 9; *see id.* ¶¶ 13-15, 17), this Petition has only been brought on behalf of 1,028 Petitioners. (*See* Petition caption; *see also* Pet., Ex. A.) Petitioners' Counsel have not explained why the Petition omits 16 of the 1,044 arbitration claimants.

Leinenweber, the judge presiding over *Wallrich*. *Wallrich*, ECF No. 40. Samsung's motion identified the overlapping issues and overlapping relief sought in this action and Labaton's *Wallrich* action. *See id.* at 3–4. Samsung had compared the lists of petitioners attached to this Petition and the *Wallrich* petition and discovered that at least 241 of the 1,028 Petitioners in this action (*i.e.*, 23%) were also petitioners represented by Labaton in *Wallrich*. *See id.* at 3.[5] Samsung's motion advised the Court of that overlap. On April 6, 2023, in response, Labaton, Milberg, and Robbins Geller did not oppose reassignment, and regarding the showing of overlapping petitioners, stated that they had "established a protocol to address the dual-representation issue" and "[o]nce it is determined which law firm(s) will be representing which overlapping Petitioner, the Court and Respondents will be promptly advised." *Wallrich*, ECF No. 41 at 2. But to date, neither Labaton nor Milberg and Robbins Geller appear to have taken any steps to address the duplicate claimants. Instead, on May 4, 2023, all of the Petitioners in the present action filed their Motion to Compel Arbitration. (On May 10, 2023, they filed a "Corrected" version of the Motion, ECF No. 28, to bring it within the applicable page limit.)

## CORRECTIVE NOTE ON JURISDICTION

The Petition's allegations regarding subject matter jurisdiction are not correct, but this Court does have subject matter jurisdiction over this action.

Petitioners incorrectly contend that "[t]his Court has subject matter jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves a claim arising under federal law, specifically the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4." (Pet. ¶ 22.) But Section 4 of the FAA does not support federal

---

[5] Samsung's sampling analysis indicates that there is a similar percentage of overlap in the entire pool of claimants that each of Labaton and Milberg, respectively, purport to represent.

jurisdiction: instead, a court must "look through" to the "underlying substantive dispute" to assess its jurisdiction. *Badgerow v. Walters*, 142 S. Ct. 1310, 1311, 1314 (2022). The underlying dispute here does not involve a question of federal law (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)).

Petitioners' alternative assertion that this Court has diversity jurisdiction over this action is also incorrect: the amount in controversy here for each Petitioner does not "exceed[] $75,000, exclusive of interest and costs." (Pet. ¶ 23.) While Petitioners reference the damages they seek in their underlying BIPA claims pled in their arbitration demands, the Petition does not allege those claims: instead, it seeks the payment of arbitration fees—a large figure in the aggregate but substantially less than $75,000 for each Petitioner, which is the figure that matters in the diversity jurisdiction analysis.[6]

However, the Court does have subject matter jurisdiction over this Petition under Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.*, because, *inter alia*, SEC is a foreign corporation.

## <u>ARGUMENT</u>

### I.    THE PETITION SHOULD BE DISMISSED AS A MATTER OF LAW WITH RESPECT TO THOSE PETITIONERS WHO BROUGHT TWO ACTIONS <u>SEEKING THE SAME RELIEF AGAINST THE SAME RESPONDENTS</u>

At least 241 Petitioners here are also petitioners in the earlier-filed *Wallrich* action. The claims and relief sought by these Petitioners in both actions are identical, and the respondents are the same. Petitioners' Counsel have been on notice of this overlap for months and do not dispute it—but have nonetheless taken no steps to amend or withdraw the Petition. *See supra* pp. 6–7;

---

[6]    While Petitioners assert that they are entitled "to recover $1,000 or $5,000 for each separate BIPA violation" (Pet. ¶ 23 n. 5), in their arbitration demands they specified that they were seeking a total of $5,000. (*See* Pet. Ex. E at 2 § 3 (in response to the question "Specify the amount of money in dispute, if any," the demand stated "$5,000"); *id.* at 15 (similarly).)

*see also Wallrich*, ECF Nos. 40, 41. These Petitioners have thus brought improper parallel litigations and are engaging in improper claim splitting. Their duplicative claims should be dismissed.

A lawsuit is deemed "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (citation omitted); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("[A] suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" (citation omitted)). Parallel litigation is disfavored because it "would be wasteful of judicial resources and prejudicial to defendants." *Walters v. Lane*, No. 87 C 3486, 1988 WL 31471, at *1 (N.D. Ill. Mar. 25, 1988) (Alesia, J.). Indeed, because "[t]here is no reason why a court should be bothered or a litigant harassed with duplicating lawsuits on the same docket," *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (citation omitted), "a federal suit may be dismissed . . . 'whenever it is duplicative of a parallel action already pending in another federal court.'" *Serlin*, 3 F.3d at 223 (citations omitted).

Courts routinely dismiss actions that are impermissibly parallel to actions filed by the same plaintiff in another court. *See, e.g.*, *Serlin*, 3 F.3d at 224 (affirming dismissal of "duplicative" suits that involved "no significant differences between the claims, parties, and available relief" (footnote omitted)); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008) (upholding dismissal based on parallel litigation in Japan and other factors; "[t]here is no reason for identical suits to be proceeding in different courts in different countries thousands of miles apart."); *Lane*, 1988 WL 31471, at *1 ("Defendants contend that plaintiff's allegations . . . duplicate plaintiff's prior pending action . . . . The court agrees . . . . Accordingly,

defendants' motion to dismiss this claim is granted." (citation omitted)).[7]  The same result is appropriate here.

These Petitioners have also engaged in impermissible claim splitting, which provides another independent basis to dismiss them.  *See, e.g.*, *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987) ("[A]ll claims arising from that transaction must be brought in one suit or [be] lost" (citation omitted)); *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562 (7th Cir. 1982) ("[T]he issue, therefore, is whether the claim now raised arises out of the 'same basic factual situation' . . . and could properly have been raised in the earlier suit." (citations omitted)); *Weizeorick v. ABN AMRO Mortg. Grp., Inc.*, No. 01 C 713, 2004 WL 528006, at *3 (N.D. Ill. Mar. 16, 2004) (Hibbler, J.) ("[C]laim splitting is not favored because it multiplies the costs of litigation on an opponent[']s adversaries and the judicial system.").[8]

## II.     THE PETITION FAILS TO SUFFICIENTLY PLEAD A PROPER BASIS FOR VENUE IN THIS COURT AS TO ALL PETITIONERS

"When a defendant raises improper venue, the plaintiff has the burden to prove that the chosen venue is proper."  *Igene v. Sessions*, No. H-17-3143, 2018 WL 1582239, at *1 (S.D. Tex. Mar. 29, 2018).  Each Petitioner must demonstrate that venue is proper as to their individual

---

[7]     *See also AG Leader Tech., Inc. v. NTech Indus., Inc.*, 574 F. Supp. 2d 1011, 1016-17 (S.D. Iowa 2008) (dismissing case where "the Arizona litigation and the Iowa litigation are parallel as they involve parties in privity, as well as the same or substantially the same issues"); *Olson v. Counts*, No. 12-218 ADM/TNL, 2012 WL 1394594, at *1 (D. Minn. Apr. 23, 2012) (dismissing plaintiff's second case because it was "merely duplicative of the other"), *aff'd*, No. 12-2259 (8th Cir. July 12, 2012); *see also Cherelli v. InStore Grp., LLC*, 513 F. Supp. 3d 187, 193 (D. Mass. 2021) (dismissing action filed in the same court that involved "the same facts, the same allegations, the same putative class, [and] the same sought-after relief").

[8]     The actions of Petitioners and their counsel in filing duplicative litigation—wasting this Court's and Respondents' time and resources—have also exposed them to potential sanctions. *See, e.g.*, *Hyytinen v. Morhous*, No. C14-5537 BHS, 2015 WL 917621, at *5 (W.D. Wash. Mar. 3, 2015) ("Hyytinen filed two separate lawsuits based on the same events . . . . Morhous is therefore entitled to attorney fees . . . . ").  Samsung accordingly reserves the right to pursue appropriate relief.

claims.  *See, e.g.*, *Bland v. Edward D. Jones & Co.*, No. 18-cv-03673, 2020 WL 7027595, at \*5 (N.D. Ill. Nov. 30, 2020) (Wood, J.) (collecting cases) ("[N]umerous other courts have held that each named plaintiff in a class action must individually satisfy the applicable venue requirements.") (collecting cases).

Petitioners allege only that "[v]enue is proper in this District pursuant to 28 U.S.C. § 1391 because many of the Petitioners live in this District and the arbitrations were venued to take place in this District."  (Pet. ¶ 25.)  Neither allegation provides a sufficient basis to plead venue in this Court under Section 1391.

**First**, "when it comes to venue, the plaintiff's residence counts for nothing" because it is not a consideration under Section 1391.  *Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 290 (N.D. Ill. 2019) (Seeger, J.); *see also Swanson v. Endres*, No. 07 C 1185, 2007 WL 1655230, at \*2 (N.D. Ill. June 6, 2007) (Gettleman, J.) (rejecting allegation of venue based on plaintiff's residence).  To the extent Petitioners nevertheless seek to rely on their residences to suggest that "a substantial part of the events or omissions giving rise to the claim" occurred in this District for purposes of Section 1391(b)(2), Petitioners fail to establish that they all reside in the Northern District of Illinois.  Based on the information provided with the Petition, 203 reside in the Central District of Illinois, 114 in the Southern District of Illinois, and one lives in Indiana.[9]  Thus, at least 318 Petitioners reside outside this District.

**Second**, Petitioners alternatively contend that venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because "the arbitrations were venued to take place in this District."  (Pet. ¶ 25.)  This is also not a relevant consideration under Section

---

[9]    The list of "Individual Petitioners" exhibited to the Petition purports to contain the "First Name," "Last Name," "City," and "State" for each Petitioner.  (*See* Pet., Ex. A.)

1391.[10]  In any event, Petitioners' arbitrations have not been "venued" in this District or anywhere else.  The Arbitration Agreement does not designate a place of arbitration, nor has the AAA selected one.  While the AAA Rules contain a default provision specifying that the AAA may determine the locale of an arbitration, *see* AAA Rules, R-11 (2014), the AAA made no determination as to the venue of any of the previously-filed arbitrations before closing those proceedings.[11]  There is thus no support for Petitioners' assertion that venue is appropriate in the Northern District of Illinois because "the arbitrations were venued to take place in this District." (Pet. ¶ 25.)  Nor do Petitioners account for the approximately 318 Petitioners who appear to reside outside this District.

### III.    THE PETITION HAS BEEN BROUGHT IN DIRECT VIOLATION OF THE ARBITRATION AGREEMENT'S COLLECTIVE ACTION WAIVER

As Petitioners acknowledge (*see* Pet. ¶ 3), the Arbitration Agreement on which they rely includes a class and collective action waiver:

> Any such dispute [raised by a consumer] shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action.

(Pet. Ex. B-1 § 1 (capitalization omitted); *see also id.*, Ex. B-2 at 2 (similarly); *id.*, Ex. B-3 § 16 (similarly).)

Courts regularly enforce such class and collective action waivers.  *See, e.g.*, *Niiranen v. Carrier One, Inc.*, No. 20-cv-06781, 2022 WL 103722, at *8 (N.D. Ill. Jan. 11, 2022) (Wood, J.)

---

[10]    While the locale of an arbitration is a relevant consideration under the venue provision set forth in Chapter 2 of the FAA, 9 U.S.C. § 204, Petitioners did not invoke that provision in support of their venue allegations.  In any event, there has been no determination that arbitrations would be held in this District for Petitioners residing outside of this District.

[11]    While Petitioners may have requested in their demands for arbitration that any "in-person hearing" be held in Chicago (*see* Pet., Ex. E at pdf p. 2, § 5), which is of course located in this District, the AAA made no determination regarding this issue before closing the arbitrations.

(dismissing putative class claims against employer where a "class-action waiver itself provides that Plaintiffs waive their right to initiate or participate in any class action brought against [defendant]"); *Powell v. Payday Loan Store of Ill., Inc.*, No. 09 C 4146, 2010 WL 3893894, at *6 (N.D. Ill. Sept. 28, 2010) (Gottschall, J.) (upholding class action waiver and compelling individual arbitration); *Trejo v. Advance Am., Cash Advance Ctrs. of Ill., Inc.*, No. 09 C 2278, 2009 WL 10713823, at *7 (N.D. Ill. June 23, 2009) (St. Eve, J.) (same).

Courts have further held that collective action waivers prohibit the joinder of claims in court. In *Figueredo-Chavez v. RCI Hospitality Holdings, Inc.*, No. 1:21-CV-21733-KMM, 2022 WL 457848 (S.D. Fla. Jan. 6, 2022), the court denied a motion for reconsideration of its prior decision dismissing an FLSA collective action, finding that a collective action waiver contained in the underlying arbitration agreement was enforceable even outside an arbitration proceeding. *Id.* at *5. The court remarked that "a collective action waiver is a limitation on joinder procedures under the Federal Rules of Civil Procedure." *Id*. at *2; *see also Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 179 (2d Cir. 2015) (a "collective action waiver is a promise to forgo certain procedural mechanisms *in court*"). Here, the joinder of 1,028 individual actions into one Petition is a clear violation of the collective action waiver contained in the Arbitration Agreement that Petitioners elsewhere seek to invoke to compel arbitration. Petitioners' invocation of the Arbitration Agreement only suits them when it furthers their improper mass arbitration strategy (for example, by demanding that SEA pay fees for each individual arbitration). In bringing this action, however, Petitioners ignore the collective action waiver provision of the very same Arbitration Agreement because seeking relief by filing separate petitions before this Court would entailing paying a filing fee of $402 for each petition, or

13

$413,256 in total.[12]  Because the Arbitration Agreement that Petitioners seek to invoke contains

an express bar on collective actions (such as this Petition), the Petition should be denied because

it violates the very agreement on which it is premised.

## IV.    PETITIONERS HAVE FAILED TO SHOW THAT THEY ENTERED INTO ARBITRATION AGREEMENTS WITH SAMSUNG

Before the Court could compel arbitration, it must first be "satisfied that the making of

the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.

Each of the 1,028 Petitioners seek an order compelling Samsung to arbitrate with them, and thus

each must present admissible evidence that they are a party to a valid arbitration agreement with

Samsung.  *See Freestone v. CACI, Inc.-Fed.*, No. 22-1322 (JEB), 2022 WL 16569197, at *3

(D.D.C. Aug. 22, 2022) ("When considering a petition to compel arbitration, 'the appropriate

standard of review for the district court is the same standard used in resolving summary

judgment motions pursuant to Fed. R. Civ. P. 56(c).'" (citations omitted)); *Thomas D.*

*Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*, No. 11-3274, 2012 WL 4513903, at *1

(N.D. Ill. Oct. 1, 2012) (Leinenweber, J.) ("In making that determination [of whether a valid

arbitration agreement exists], courts apply a standard akin to that for summary judgment").

Contrary to Petitioners' assertion, it is not "beyond dispute" that each Petitioner has a valid

arbitration agreement with Samsung: the Petition provides no such evidence.  *See* Mot. to

Compel Arb. at 9.

### A.    Petitioners' Own Legal Authorities Confirm That The Court Cannot Compel Arbitration, Because Petitioners Have Failed To Establish That Each Of Them Entered Into A Valid Arbitration Agreement With Samsung

The existence of a valid arbitration agreement is a prerequisite to a court's ability to

---

[12]    *See* Northern District of Illinois, *Fees Schedule*, https://www.ilnd.uscourts.gov/
Pages.aspx?VAOKCfUfUrENJEfItoKzJ1y8ME5cnOTZ (stating that "Civil Filing Fee" is $402).

compel arbitration under the FAA. 9 U.S.C. § 4; *accord Abernathy v. DoorDash, Inc.*, 438 F.

Supp. 3d 1062, 1065 (N.D. Cal. 2020) (cited in Mot. to Compel Arb. at 13–14) ("Under the

Federal Arbitration Act, a district court determines 'whether a valid arbitration agreement

exists . . . .'" (citation omitted)); *Muhammad v. Dollar Tree*, No. 18-4192, 2020 WL 1530750 at

*3 (N.D. Ill. Mar. 31, 2020) (Alonso, J.) ("A party seeking to compel arbitration must show,"

*inter alia*, "the existence of a valid written arbitration agreement . . . ."), *see also Avon Cap.,*

*LLC*, 2012 WL 4513903, at *1 ("To compel arbitration, the Court must find that a written

arbitration agreement existed.").[13]  Further, it is well settled that "[t]he party seeking to compel

arbitration"—here, Petitioners—"has the burden of establishing an agreement to arbitrate."

*Gilbert v. I.C. Sys., Inc.*, No. 19-CV-04988, 2021 WL 292852, at *2, *6 (N.D. Ill. Jan. 28, 2021)

(Valderrama, J.).  If there is a genuine issue of material fact as to the existence of a valid

arbitration agreement, a motion to compel arbitration cannot be granted.  *See Gen. Ass'n of*

*Regular Baptist Churches v. Scott*, 549 F. App'x 531, 533–34 (7th Cir. 2013) (affirming denial

of motion to compel arbitration and explaining that "speculation that the [opposing party] 'would

have had to sign' the agreement . . . may not be used to manufacture a genuine issue of fact"

(citation omitted)); *Muhammad*, 2020 WL 1530750, at *6 (denying motion to compel arbitration

because "there is a genuine dispute of fact as to whether an agreement to arbitrate exists at all"

---

[13]   This is so even where an agreement contains a provision delegating issues of arbitrability
to the arbitrator, as Petitioners acknowledge.  (*See* Mot. to Compel Arb. at 8 (stating that where
an arbitration clause contains "a broad 'delegation clause,'" "the court need only determine that
the parties have entered into a valid arbitration agreement").); *Henry Schein, Inc. v. Archer &*
*White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *see also Carter v. CVS Pharmacy, Inc.*, No. 18 CV
01482, 2019 WL 11505578, at *1 (N.D. Ill. Jan. 15, 2019) (Kendall, J.) ("[I]t is only proper for
the Court to assess the threshold matter of formation of the arbitration agreement before
tendering the remaining issues to an arbitrator.").

and ordering a trial on the issue).[14]

The Petition does not allege facts showing that each Petitioner entered into a particular arbitration agreement with Samsung. Courts have held that the formation of an arbitration agreement is not established where the movant fails to make clear which version of a contract was in effect on the applicable date or the process by which the relevant party assented to its terms. *See Johnson*, 2017 WL 1155384, at *2 (step-by-step account of the current version of an application was insufficient to demonstrate notice and assent because it was not alleged to involve the same process as when plaintiff downloaded it); *Gilbert*, 2021 WL 292852, at *7 (movant failed to establish existence of arbitration agreement where it submitted a declaration "devoid of any facts regarding how or when" opposing party received the terms and conditions, failing to demonstrate opposing party's assent); *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447, 450–51 (N.D. Ill. 2021) (Bucklo, J.) (declining to compel arbitration in part because movant had not made clear the "language, layout, [and] other features of the Website" presenting the agreement).

Here, the Petition alleges that "Petitioners are purchasers of Samsung's Devices" and proceeds to conclude that "[e]ach Petitioner and Samsung entered into a valid and enforceable agreement requiring them to arbitrate all claims related to the sale, condition, or performance of the Samsung product, before AAA." (Pet. ¶¶ 27, 39.) It further asserts that "[b]y opening the Samsung Galaxy device's ('Device') packaging or using the Device (even if not the purchaser), every Device user, including Petitioners here, agreed to Samsung's Terms & Conditions, which

---

[14] *Accord Wembi v. Gibson's Rest. Grp. Mgmt. Co.*, No. 21 C 586, 2021 WL 2272399, at *3 (N.D. Ill. May 13, 2021) (Lefkow, J.) (continuing motion to compel arbitration "pending an evidentiary hearing on the existence of an arbitration agreement"); *Johnson v. Uber Techs., Inc.*, No. 16 CV 5468, 2017 WL 1155384, at *2 (N.D. Ill. Mar. 13, 2017) (Lee, J.) (denying motion to compel arbitration and ordering discovery on limited issue of arbitration agreement formation).

were provided with the Device and contained, among other things: (1) Samsung's 'Arbitration Agreement.'" (*Id.* ¶ 3.) The Petition also states that "[t]he full names and locations of each of the Individual Petitioners are listed in Exhibit A." (*Id.* ¶ 19 (emphasis in original); *see also id.* Ex. A (providing the "First Name," "Last Name," "City," and "State" for each of the "Individual Petitioners.").) The Petition's bald allegations, together with a list of each Petitioner's name, "City," and "State," fall far short of meeting Petitioners' burden to establish with evidence the existence of a valid arbitration agreement between *each* of them and Samsung. For example, Petitioners have failed to provide:

- Any evidence that each Petitioner actually purchased a Samsung device, activated the device, and assented to the arbitration agreement.[15]
- Information showing to which of Samsung's arbitration agreements each Petitioner assented, such as information as to which version of the agreement was in effect on the date on which the Petitioner assented to the agreement or a copy of the specific agreement to which he or she assented.[16]

Accordingly, because Petitioners have failed to provide evidence to support their conclusory assertion that each of them entered into an arbitration agreement with Samsung, their Petition should be dismissed—a result mandated by *Petitioners' own legal authorities*. In *DoorDash*—cited in Petitioners' Motion to Compel Arbitration (*see* ECF No. 28 at 14)—a petition was filed purportedly on behalf of 5,879 individuals, which sought to compel arbitration of labor claims against an online food delivery service company for whom the petitioners alleged

---

[15] The Petition's reference to non-purchaser users (*see* Pet. ¶ 3) is irrelevant: the Petition has specifically pled that "Petitioners are purchasers of Samsung's Devices" (*id.* ¶ 27), and in the underlying demands for arbitration, each Petitioner also claims to "own[] a Samsung Galaxy smartphone." (*See* Pet. Ex. E at pdf p. 4.)

[16] The example underlying demand for arbitration submitted by Petitioner Garcia likewise fails to provide sufficient evidence on this point. It alleges that Petitioner Garcia "currently owns a Samsung Galaxy." (Pet. Ex. E at pdf p. 11.) But it provides no evidence of Petitioner Garcia's purchase nor does it identify the specific arbitration agreement that he allegedly agreed to— rather, it attaches only an "[e]xemplar" arbitration agreement. (*Id.*).

they had worked. *DoorDash*, 438 F. Supp. 3d at 1064. The AAA had closed the underlying arbitrations after the company declined to tender the administrative fees, citing "significant deficiencies" with the petitioners' filings. *Id.* The court denied the motion to compel arbitration as to 869 of the petitioners who had only provided witness statements that listed their residential addresses and certain other information, but did not provide the identifying information that each individual used to register with the company and did not reference the specific arbitration agreement that the individual had "clicked through." *Id.* at 1065. The court held that it could not "conclude that an arbitration agreement exist[ed] as to those petitioners." *Id*; *see also Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2021 WL 540155, at *12 (C.D. Cal. Jan. 19, 2021) (cited in Mot. to Compel Arb. at 13) (where "factual disputes as to the existence of a valid agreement to arbitrate" existed, a "motion to compel must be denied"; refusing to compel arbitration as to 233 petitioners who had not demonstrated the existence of a valid arbitration agreement); *In re Evanston Nw. Corp. Antitrust Litig.*, No. 07-4446, 2015 WL 13735423, at *4 (N.D. Ill. Sept. 4, 2015) (Chang, J.) (declining to compel arbitration as to entities for which petitioner failed to identify specific applicable arbitration agreements); *Van Tassell v. United Mtkg. Grp., LLC*, 795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) (Castillo, J.) (denying motion to compel arbitration "because there is a genuine issue of material fact pertaining to whether [p]laintiffs ever viewed the enrollment web pages containing the Terms and Conditions").

In sum, Petitioners' bare allegations that they agreed to arbitrate with Samsung, together with a list of each Petitioner's name, "City," and "State," is an even weaker showing than what was rejected as insufficient in *DoorDash* and falls far short of establishing the existence of a valid arbitration agreement between *each* Petitioner and Samsung. Petitioners therefore have

failed to meet the necessary prerequisites to compel arbitration.

**B.     If The Petition Is Not Dismissed, Then Discovery And An Evidentiary Hearing Must Be Had As To Whether Each Petitioner Entered Into An Agreement To Arbitrate**

While the Petition should be dismissed for the reasons stated above, at a minimum, Samsung is entitled to challenge in a trial whether each individual Petitioner is a party to an agreement to arbitrate. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."). "[D]etermining whether any other persons did not actually sign or consent to the [agreement] would require a trial for every individual." *Andrade v. Am. First Fin., Inc.*, No. 18-cv-06743-SK, 2022 WL 3369410, at *4–5 (N.D. Cal. Aug. 16, 2022) (denying class certification on the ground that plaintiff, who was not subject to an arbitration agreement, could not represent a class of persons who were subject to such an agreement); *see also Muhammad*, 2020 WL 1530750, at *6.

For example, in *Adkins v. Midland Credit Management, Inc.*, No. 5:17-cv-04107, 2020 WL 5791295 (S.D.W. Va. Sept. 28, 2020) the court required a trial on contract formation as to each individual claiming to be subject to an arbitration clause. *Id.* at *4. After the plaintiffs commenced a putative class action and moved to certify a class, the defendant moved to compel arbitration and enforce class action waivers as to thousands of proposed class members. But the defendant submitted only "exemplar" "arbitration and/or waiver agreements" specifically applicable to eight members of the proposed class and provided an affidavit identifying the remaining agreements, which were "not set forth in the record." *Id.* at *3-4. The court denied the defendant's motion pending a summary trial as to the existence of those remaining agreements, observing that the defendant "encounter[ed] strong headwinds in attempting to essentially bypass production of the actual agreements." *Id.* at *4-5; *accord Hilton v. Fluent,*

19

*LLC*, 297 F. Supp. 3d 1337, 1342-43 (S.D. Fla. 2018) (where defendants moved to compel arbitration and plaintiffs denied having entered into arbitration agreements, court ordered trial to determine whether an agreement existed as to each named plaintiff); *Dassero v. Edwards*, 190 F. Supp. 2d 544, 556-57 (W.D.N.Y. 2002) (on motion to compel, where plaintiffs contested having signed arbitration agreements or challenged circumstances under which they had signed them, the court stated it was prepared to hold trial to determine existence of agreements).[17]

## **CONCLUSION**

For all the of foregoing reasons, the Petition should be dismissed with prejudice.

Dated: June 14, 2023

Respectfully submitted,

*/s/ Randall W. Edwards*

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
   SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

---

[17] Prior to trial, each Petitioner would also be subject to discovery as to whether that Petitioner entered into a valid arbitration agreement with Samsung. *See, e.g.*, *Johnson*, 2017 WL 1155384, at *2 (ordering expedited discovery as to the formation of the arbitration agreement at issue, after which the parties were to indicate whether they would move for summary judgment or proceed to trial); *Melvin*, 553 F. Supp. 3d at 452 (same); *Wembi*, 2021 WL 2272399, at *3 (continuing motion to compel arbitration pending an evidentiary hearing as to the existence of an arbitration agreement and permitting limited discovery as to the existence of an agreement).

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*