**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELANIE HOEG, ANGELA DAVIS, MELINDA GARCIA, and 1,025 OTHER INDIVIDUALS, | ) ) ) ) | |
| Petitioners, | ) ) | Civil Action No. 1:23-cv-01951 |
| vs. | ) ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD. (d/b/a Samsung Electronics America, Inc.), | ) ) ) ) | |
| Respondents. | ) ) ) | |

**PETITIONERS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT ....................................................................................................................... 6

I.   SAMSUNG PLAINLY REFUSED TO ARBITRATE PETITIONERS' CLAIMS ................. 6

  A.  Samsung's Refusal to Pay Its Share of Fees Is a Refusal to Arbitrate ................................. 6

  B.  The Request to Stay Arbitration Pending Mediation Did Not Absolve Samsung of Its
      Obligation to Pay AAA Fees ........................................................................................ 7

  C.  Samsung's Pattern of Refusing to Pay Its Share of Arbitration Fees ................................. 10

II.  THERE IS NO DISPUTE THAT PETITIONERS ADEQUATELY DEMANDED
     ARBITRATION AGAINST SAMSUNG ELECTRONICS AMERICA, LLC ..................... 11

III. THE COURT CAN AND SHOULD ORDER SAMSUNG TO ARBITRATION AND PAY
     ITS SHARE OF FEES ................................................................................................ 11

  A.  Samsung's Arbitral Fees Were Due and Owing to AAA ................................................. 12

  B.  The Court Has Authority to Order Samsung to Pay Arbitral Fees Pursuant to the Terms
      of the Contract ......................................................................................................... 13

IV.  PETITIONERS DO NOT HAVE ADEQUATE REMEDIES AT LAW ............................... 16

V.   JUDICIAL ESTOPPEL PREVENTS SAMSUNG FROM TAKING DIAMETRICALLY
     OPPOSITE POSITION ............................................................................................... 18

CONCLUSION .................................................................................................................. 19

## TABLE OF AUTHORITIES

*Accord McClenon v. Postmates Inc.*,
　　473 F. Supp. 3d 803 (N.D. Ill. 2020) .............................................................. 11

*Allemeier v. Zyppah, Inc.*,
　　2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ....................................... passim

*Armbrister v. Pushpin Holdings*, LLC,
　　896 F. Supp. 2d 746 (N.D. Ill. 2012) ................................................................ 9

*AT&T Mobility LLC v. Concepcion*,
　　563 U.S. 333 (2011) ......................................................................................... 13

*Bain v. Airoom, LLC*,
　　2022 IL App (1st) 211001, ¶ 42 (June 29, 2022) ........................................... 17

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
　　2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) .................................................. 10

*Brandifino v. CryptoMetrics, Inc.*,
　　27 Misc. 3d 513 (N.Y. Sup. Ct. 2010) ............................................................ 13

*Brown v. Dillard's, Inc.*,
　　430 F.3d 1004 (9th Cir. 2005) ............................................................ 6, 11, 13

*Cannon-Stokes v. Potter*,
　　453 F.3d 446 (7th Cir. 2006) ........................................................................... 18

*Carnegie v. Household Int'l, Inc.*,
　　376 F.3d 656 (7th Cir. 2004) ............................................................................. 2

*Cox v. Ocean View Hotel Corp.*,
　　533 F.3d 1114 (9th Cir. 2008) ......................................................................... 16

*Davis v. Fenton*,
　　26 F. Supp. 3d 727 (N.D. Ill. 2014) ................................................................ 14

*Discover Bank v. Superior Court*,
　　36 Cal. 4th 148 (2005) ....................................................................................... 2

*Epic Sys. Corp. v. Lewis*,
　　138 S. Ct. 1612 (2018) ....................................................................................... 2

*Evans v. Affiliated Computer Servs. Inc.*,
　　682 F. App'x 608 (9th Cir. 2017) .................................................................... 15

*Garcia v. Mason Cont. Prod., LLC*,
　　No. 08-23103-CIV, 2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) ................... 7

*Gingiss Int'l, Inc. v. Bormet*,
    58 F.3d 328 (7th Cir. 1995) ........................................................ 18

*Jacobs v. USA Track & Field*,
    374 F.3d 85 (2d Cir. 2004)........................................................... 9

*Jones v. General Motors Corp.*,
    640 F. Supp. 2d 1124 (D. Ariz. 2009) ........................................ 8

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) .................................................... 15

*Livingston v. Assocs. Fin., Inc.*,
    339 F.3d 553 (7th Cir. 2003) ...................................................... 18

*McLellan v. Fitbit, Inc.*,
    No. 3:16-CV-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018).......................... 16

*Noe v. Smart Mortg. Ctrs., Inc.*,
    No. 21 CV 1668, 2021 WL 4283027 (N.D. Ill. Sept. 21, 2021)...................................... 18

*Patterson v. ITT Consumer Fin. Corp.*,
    14 Cal. App. 4th 1659 (1993) ..................................................... 17

*Phillips v. Assocs. Home Equity Servs., Inc.*,
    179 F. Supp. 2d 840 (N.D. Ill. 2001) ......................................... 17

*Pohlman v. NCR Corp.*,
    No. 12 CV 6731, 2013 WL 3776965 (N.D. Ill. July 17, 2013) ...................................... 18

*Postmates Inc. v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. Jan. 19, 2021) ................................ 6

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) .............................................. 6, 9

*Rapaport v. Soffer*,
    2011 WL 1827147 (D. Nev. May 12, 2011) ................................ 6

*Sink v. Aden Enters, Inc.*,
    352 F.3d 1197 (9th Cir. 2003) .................................................... 6

*Sjogren v. Maybrooks, Inc.*,
    214 Ill. App. 3d 888, 892 (1991) ............................................... 16

*Spaine v. Cmty. Contacts, Inc.*,
    756 F.3d 542 (7th Cir. 2014) ...................................................... 18

*Tillman v. Tillman*,
  825 F.3d 1069 (9th Cir. 2016) ....................................................................... 12, 14, 15, 18

*U.S. Titan, Inc. v. Guangzhou Zhen HUA Shipping Co.*,
  2003 WL 23309445 (S.D.N.Y. Sept. 26, 2003)................................................................. 16

*United Computer Sys., Inc. v. AT&T Corp.*,
  298 F.3d 756 (9th Cir. 2002) ........................................................................................... 15

*Wallrich v. Samsung Elecs. Am., Inc.*,
  No. 1:22-cv-05506 (N.D. Ill., filed Oct. 7, 2022) ........................................................... 10

**STATUTES**

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*,............................. passim

## <u>INTRODUCTION</u>

Samsung—the multi-billion-dollar tech giant—aggressively imposes mandatory arbitration upon individual consumers when it suits Samsung's economic interests, only to jettison that forum when consumers actually decide to pursue their claims there. Petitioners ask the Court to put an end to Samsung's refusal to arbitrate.

The core issue before the Court is whether a party to an arbitration agreement may, under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, seek an order compelling arbitration *in accordance with the terms of the agreement*, which includes the payment of arbitration filing fees, where the party whose adhesion contract requires arbitration refused to pay such fees and the arbitration proceedings were administratively closed as a result. The answer is yes on all counts. Samsung's refusal to timely pay its share of filing fees is a quintessential refusal to arbitrate under Section 4 and further entitles Petitioners to the relief sought.

Samsung has fought for years to close the courts to consumers and limit claims to individual arbitrations. Based on representations Samsung repeatedly made to other courts, Samsung requires that every user of its Galaxy smartphones agree to mandatory arbitration set forth in its adhesion contracts. The Motion listed several examples, Mot. at 7-8, but there are many more. Indeed, arbitration is fundamental to Samsung's enterprise. On the rare occasions when Samsung's arbitration provisions are invalidated, Samsung appeals to any court that will hear it—including the U.S. Supreme Court. Supplemental Declaration of Gary M. Klinger ("Suppl. Klinger Decl.") Ex. U [Samsung 6/26/2017 Pet. for Certiorari] at 19-20 ("Many companies [like Samsung] include arbitration provisions in their warranties as a routine part of commercial practices consistent with state and federal law.").

The reason is obvious: it is Samsung's business model to chill consumer litigation by compelling individual arbitration. Samsung leverages individual arbitration as a tool to deter

consumer litigation and shield itself from accountability. *Cf. Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original) (Posner, J.); *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 165 (2005) (class action waivers can be unconscionable exculpatory clauses). When companies like Samsung succeed in that endeavor, cases rarely proceed to judgment—it is simply not economical for attorneys to take on small-value individual arbitration matters that cost multiples of that amount in experts and legal expense. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1647-48 (2018) (Ginsburg, J., dissenting) ("Employers, aware that employees will be disinclined to pursue small-value claims when confined to proceeding one-by-one, will no doubt perceive that the cost-benefit balance of underpaying workers tips heavily in favor of skirting legal obligations."). The consequence is a lopsided playing field where consumers face significant obstacles in pursuing legal action.

Now, as thousands of its customers pursue individual arbitrations to vindicate their rights under Illinois law, Samsung has sought to shut that pathway down as well by refusing to arbitrate. Having made this bed and finding it uncomfortable, Samsung no longer wants to lie in it. This is the claims-making scenario that Samsung created for itself. The Court should order Samsung to live with it. Here, Samsung imposed a mandatory arbitration agreement upon Petitioners that incorporated the American Arbitration Association's ("AAA") Rules. The AAA Rules provide that "the business's portion of the filing fees is due upon written confirmation from the AAA that the claimant's filing satisfies the filing requirements." On November 18, 2022, the AAA provided written confirmation that the Petitioners' filings met AAA's requirements and that, to proceed with arbitration, Samsung was responsible for paying its $311,000 share of initial fees by December 19, 2022. Instead of honoring its obligation to arbitrate and pay its share, Samsung obfuscated,

delayed, and plotted to evade arbitration. Despite multiple requests from AAA, Samsung did not pay its share of fees, request or receive accommodations to the amount owing, request or receive an order that Petitioners cover its share, or demonstrate an inability to afford payment. AAA then terminated the arbitration and closed the cases citing Samsung's refusal to pay.

If Samsung is dissatisfied with the forum into which the adhesion contracts of its own creation have directed their customers' claims, it should not have imposed a mandatory arbitration agreement. As Samsung's Opposition makes clear, its failure to pay arbitration filing fees and wholesale opposition to arbitrating Petitioners' claims—while compelling other consumers to arbitration in other courts time and time again—is a calculated scheme. The Court should not turn a blind eye to Samsung's bad faith, vexatious tactics and should compel Samsung to arbitration as other courts have in analogous cases, including ordering Samsung to pay its share of the arbitration fees to AAA.

## **FACTUAL BACKGROUND**

As a preliminary matter, Samsung spends most of its brief on irrelevant (and incorrect) criticisms of Petitioners' counsel and their firms. Samsung's grievance reduces to a claim that Petitioners' counsel are representing too many consumers at once, and as a result, the Court should conclude that they are acting unfairly and unethically. Petitioners decline the invitation to wade in such mudslinging while noting, briefly, that Petitioners' counsel are steadfast advocates for consumers, have repeatedly been appointed by courts to represent putative and certified classes based on their skill and experience, and have been commended by judges for their exceptional results. Petitioners also strongly believe in the merits of their claims, retained experts who have investigated Samsung's technology, and look forward to proving Samsung's privacy violations at arbitration. The Court should take Samsung's diatribe for what is—a cynical effort to distract from Samsung's unabashed hypocrisy.

Petitioners' Motion set forth the underlying facts in detail. Mot. at 4-8. In short, beginning October 11, 2022, Petitioners filed their 1,028[1] individual demands before AAA and in correspondence dated November 18, 2022, AAA confirmed that each claimant's filing met AAA's filing requirements, including the payment of the claimant filing fees. Petition ¶¶ 9-10; Ex. E; Ex. F. The correspondence also stated that "***Samsung is now responsible for payment*** of the initial administrative filing fees totaling $311,000," and provided a due date of "December 19, 2022." Petition ¶ 10; Ex. F at 1.

Rather than promptly paying its share of the arbitration fees, Samsung chose to wait until the last day before the fees were due to respond to AAA, claiming that it would "provide a substantive response to [AAA's e-mail] shortly." Petition ¶ 11; Ex. G [ECF 1-9]. Concerned about the status of the matter and Samsung's default, counsel for Petitioners inquired with AAA regarding the status of the matter and Samsung's payment. AAA provided Samsung with an extension to January 11, 2022 and warned that, "[a]bsent receipt of a payment ***from the Respondent***, the AAA will be closing our files administratively." Petition ¶ 12; Ex. H. Instead of complying and proceeding with arbitration, Samsung, with Petitioners' consent, requested that "AAA stay the matter and all related deadlines concerning the 1,044 individual consumer demands" pending the outcome of an upcoming mediation. Petition ¶ 13; Ex. I. AAA rejected Samsung's request and Samsung's deadline to pay expired.

---

[1] Originally, Petitioners' counsel initiated 1,044 arbitration demands. Through further investigation it was determined that 16 demands should be withdrawn, and as a result, 1,028 Petitioners moved to compel arbitration. As set forth in Petitioners' opposition to Samsung's Motion to Dismiss, counsel for Petitioners have since investigated and resolved the issue of multiple representations for the 241 individuals identified by Samsung. A complete list of the Petitioners remaining in this action, totaling ***807*** individuals, is attached as Ex. W to the Suppl. Klinger Decl. Of these individuals, ***672*** concurrently submit declarations in support. See Suppl. Klinger Decl. Ex. X.

Samsung knew that, under the AAA Rules, "The business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements, even if the matter is settled or withdrawn." AAA Consumer Arbitration Rules, Costs of Arbitration (2020) at 2[2]. Samsung knew that the "AAA has the initial authority to apply or not to apply the Consumer Rules" and that before an arbitrator is appointed, AAA administers the arbitration. Ex. C [R-1 (e)]. Samsung knew that AAA's Supplementary Rules for Multiple Case Filings[3] establish the procedure Samsung must follow if it disagreed with AAA's determination that it pay filing fees:

> MC-1: "The AAA's determination to apply these Supplementary Rules ***shall be final, unless*** a party seeks review of that determination by a Process Arbitrator, as provided for in Section MC-6."

> MC-6: "(a) ***After all filing requirements have been met, including payment of the AAA's initial administrative fees***, and prior to the appointment of arbitrators to determine the merits (the Merits Arbitrator(s)), any party may notify the AAA and opposing parties in writing that the party disagrees with the AAA's initial determination as to any administrative issue(s)." MC-6. Challenges to Initial Administrative Determinations

Samsung, however, did not notify AAA and Petitioners in writing that it disagreed with AAA's initial determination as mandated by MC-6. Samsung simply decided to violate the Rules, ignore AAA's directive, and avoid paying filing fees. Ultimately, AAA administratively closed the cases and returned Petitioners' filing fees, all due to Samsung's failure to pay its share of the required filing fees. Petition ¶¶ 14-17; Ex. J; Ex. K.

---

[2] Available at https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf.

[3] Available at
https://www.adr.org/sites/default/files/Supplementary_Rules_MultipleCase_Filings.pdf

## ARGUMENT

## I. SAMSUNG PLAINLY REFUSED TO ARBITRATE PETITIONERS' CLAIMS

### A. Samsung's Refusal to Pay Its Share of Fees Is a Refusal to Arbitrate

If any party fails, neglects, or refuses to arbitrate under a written agreement, the aggrieved party may petition a district court "for an order directing that such arbitration proceed in the manner *provided for in such agreement*." 9 U.S.C. § 4 (emphasis added). Payment of initial filing fees is a prerequisite to commencing arbitration. When a business refuses to pay initial fees as stipulated in the operative contract and under the AAA Rules, it effectively prevents the arbitration from proceeding.

As a matter of law, refusing to participate in properly initiated arbitration by failing to pay filing fees as required by an arbitration agreement constitutes default and a refusal to arbitrate. *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *1, *4 (C.D. Cal. Sept. 21, 2018) (defendant refused to arbitrate in part by repeatedly refusing to pay its portion of the filing fee as determined by the AAA); *Sink v. Aden Enters, Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (failure to pay required costs of arbitration was a material breach of obligations in connection with the arbitration); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (concluding that defendant Dillard's failure to pay its share of the arbitration fees constituted a refusal to participate in the arbitration proceedings the employee properly initiated and breach of its arbitration agreement); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1297 (10th Cir. 2015) (holding that a party defaulted on its arbitration agreement when AAA terminated the arbitration due to the party's nonpayment); *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *9 (C.D. Cal. Jan. 19, 2021) ("under the FAA, 'failure to pay required costs of arbitration [i]s a material breach' that allows the counterparty to elect to proceed in court *or compel specific performance*.") (emphasis added); *Rapaport v. Soffer*, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011) (finding the

defendant was in default under FAA § 3 because the AAA "closed" or "terminated" the case because of his failure to pay fees); *Garcia v. Mason Cont. Prod., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010) ("[T]his default was ... an intentional and/or reckless act because the AAA provided repeated notices to the Defendant that timely payment of the fee had not been received.... There is no other description the Court can find for this self-created situation other than 'default.'").

Samsung's refusal to pay duly allocated filing fees is therefore a refusal to arbitrate.

## B. The Request to Stay Arbitration Pending Mediation Did Not Absolve Samsung of Its Obligation to Pay AAA Fees

Samsung principally argues that Petitioners' acquiescence in Samsung's request to administratively stay the cases pending mediation somehow means that Samsung has not refused to arbitrate. Opp. at 25 (citing Ex. I). Not so.

First, Samsung's conclusion does not logically follow. AAA made clear that Samsung's "portion of the initial administrative filing fees were due no later than January 11, 2023" and that AAA rejected the request to extend this deadline via an administrative stay. Ex. J. AAA further explained that, because "Respondent's initial filing fee has not been received, the filing requirements for the arbitrations have not been met." *Id.* For that reason, AAA "will not place the matters on hold, and will be administratively closing our files." *Id.* Thus, Samsung's portion of the filing fees were due and owing. Samsung should have paid its fees prior to the January 11, 2023 deadline, and at minimum should have paid or offered to pay its fees after AAA declined to stay this case. Samsung chose not to.

Second, the AAA's Rules state that the prospect of settlement does not operate to extend the payment deadline. *See* Supplementary Rules for Multiple Case Filings, Rule MC-10 ("***Neither settlement nor withdrawal*** of any individual claim or group of multiple cases shall result in

*extension of payment due dates* or waiver of administrative fees.").[4]  The Rules also establish the procedure Samsung had to follow if it disagreed with AAA's determination that it pays filing fees. Under Rule MC-1, "The AAA's determination to apply these Supplementary Rules *shall be final*, unless a party seeks review of that determination by a Process Arbitrator, as provided for in Section MC-6." *Id.* (emphasis added). And under Rule MC-6, "After all filing requirements have been met, *including payment of the AAA's initial administrative fees*, and prior to the appointment of arbitrators to determine the merits (the Merits Arbitrator(s)), any party may notify the AAA and opposing parties in writing that the party disagrees with the AAA's initial determination as to any administrative issue(s)." *Id.* (emphasis added).

Samsung incorporated these Rules into its contract with Petitioners, agreed to these Rules, and understood that Petitioners' cases would be administratively closed if Samsung did not make payment.

<u>Third</u>, Samsung's opposition to the instant Motion, standing alone, is sufficient for the Court to find that Samsung refused to arbitrate. As explained in *Jones v. General Motors Corp.*, 640 F. Supp. 2d 1124 (D. Ariz. 2009) (citations and internal quotation marks omitted):

> [T]he right to compel arbitration accrues once one of the parties takes an unequivocal position that it will not arbitrate . . . . Here, Plaintiff has opposed [the] motion to enforce arbitration on numerous grounds. Plaintiff has thereby resisted arbitration and unambiguously manifested an intention not to arbitrate the subject matter of this dispute.

*Id.* at 1145 (citations and internal quotation marks omitted).

Indeed, Samsung leaves no doubt that it refuses to arbitrate and pay its share of fees. Again, Samsung does not argue that it was willing to pay its portion of administrative filing fees before AAA closed Petitioners' cases, nor does Samsung argue that it will pay its portion of fees if the

---

[4] Available at
https://www.adr.org/sites/default/files/Supplementary_Rules_MultipleCase_Filings.pdf

cases are refiled with AAA—which Petitioners will pursue upon an order compelling arbitration. Instead, it argues that Petitioners have no basis to compel arbitration and, at best, Petitioners should advance Samsung's share of fees or waive arbitration and proceed in court. Opp. at 32.

Fourth, and finally, Samsung's cited authorities do not demonstrate that Samsung's refusal to pay filing fees after AAA declined to extend its deadline is not a refusal to arbitrate. Opp. at 24-25. For example, the dispute in *Jacobs v. USA Track & Field*, 374 F.3d 85 (2d Cir. 2004) concerned which set of rules applied at arbitration. There, the AAA determined that the Supplementary Procedures applied, and Jacobs sought to undo that finding by compelling arbitration. The Second Circuit found that the respondents had not refused to arbitrate because they neither commenced litigation against petitioner nor failed to comply with an order to arbitrate by the AAA.

Here, by contrast, AAA already determined that Samsung's filing fees were payable, and it is Samsung that is non-compliant. It is also irrelevant that AAA's directive came via letter instead of a more formal order. What matters is that Samsung "had received multiple notices to pay, did not report inability to pay, and had not made genuine efforts to make alternative arrangements." *Pre-Paid Legal Servs., Inc.*, 786 F.3d at 1296 (collecting cases).

Likewise, *Armbrister v. Pushpin Holdings*, LLC, 896 F. Supp. 2d 746 (N.D. Ill. 2012) does not help Samsung—and has nothing to do with a party's nonpayment of arbitration filing fees following a duly submitted arbitration demand. There, the court noted that the "parties have not presented, nor have I found, any Seventh Circuit cases interpreting the meaning of a party's 'failure, neglect or refusal to arbitrate' under Section 4 of the FAA." *Id.* at 752. The court went on to consider "settlement negotiations" as one factor in determining whether a party refused to arbitrate, but that factor was not dispositive. The decision turned on the plaintiffs' failure to "file[] an arbitration proceeding" in the first instance. *Id.* at 753. Of note, during the "settlement

negotiations," the supposed non-compliant party (Pushpin Holdings) actually **"*request[ed]*** that Armbrister arbitrate his dispute pursuant to the binding arbitration clause." *Id.* (emphasis added).

These facts are in stark contrast to Samsung's conduct here. Petitioners submitted their arbitration demands, paid their fees, and Samsung did not. Lest there be doubt, Samsung vigorously opposes any order compelling arbitration. The totality of Samsung's conduct makes clear that it refuses to arbitrate. *See Beauperthuy v. 24 Hour Fitness USA, Inc.,* 2011 WL 6014438, at *2-4 (N.D. Cal. Dec. 2, 2011) (rejecting argument that defendants were not refusing to arbitrate under the FAA because they were willing to arbitrate in another location).

### C.     Samsung's Pattern of Refusing to Pay Its Share of Arbitration Fees

This is not the first time Samsung refused to pay its share of arbitration fees. As the Court is aware, *Wallrich v. Samsung Elecs. Am., Inc*., No. 1:22-cv-05506 (N.D. Ill., filed Oct. 7, 2022)— repeatedly referenced in Samsung's Opposition—concerns a petition to compel arbitration based on the same underlying privacy claims at issue. In connection with *Wallrich*, Samsung explicitly told AAA that it would not pay its share of fees because it believed the claims were meritless.  As set forth in *Wallrich*:

> "On September 27, 2022, the same day Petitioners were invoiced and paid their filing fees, Respondent [Samsung] sent AAA a letter advising that it would not be paying its Business Filing Fee in connection with 49,9863 of the filed demands. *Wallrich*, Dkt. 36 at 3.

In Samsung's words:

> After careful consideration, we write to inform the AAA that (assuming the intake requirements are deemed satisfied), to protect the integrity of the process and to vindicate its rights, Respondent will not be paying the Business Filing Fees in connection with the Demands. Respondent is providing notice of its decision at this early stage to ensure that the AAA's resources are conserved. *Wallrich*, Dkt. 1-15 at 3.

Every defendant thinks a plaintiff's claims are meritless, but the response is not to refuse to proceed with litigating the claims on that basis.  If Samsung believed Petitioners claims were "meritless, its proper course of action was to make that argument in arbitration. Instead, [Samsung]

refused to participate in the arbitration process at all." *Brown*, 430 F.3d at 1010. This is a "breach of its obligations under the arbitration agreement." *Id.*

## II. THERE IS NO DISPUTE THAT PETITIONERS ADEQUATELY DEMANDED ARBITRATION AGAINST SAMSUNG ELECTRONICS AMERICA, LLC

Samsung argues that the underlying arbitration demands were brought only against Samsung Electronics America, Inc. (SEA), and not against Samsung Electronics Co., Ltd. (SEC). Opp. at 25-26. Petitioners agree and withdraw the Motion only as applied to Samsung Electronics Co., Ltd. and without prejudice to refiling the same. There is no dispute that Petitioners submitted arbitration demands against Samsung Electronics America, Inc., Petitioners paid their share of arbitral filing fees, and Samsung did not.

## III. THE COURT CAN AND SHOULD ORDER SAMSUNG TO ARBITRATION AND PAY ITS SHARE OF FEES

As explained in the Motion, Petitioners seek an order compelling Samsung to arbitration. Mot. at 14-15. Pursuant to the FAA, a court must enter an order "directing that such arbitration proceed in the manner provided for in such agreement" if it determines a valid arbitration agreement exists and a refusal to arbitrate. 9 U.S.C. § 4; *accord McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 806 (N.D. Ill. 2020) (FAA "mandates that district courts shall direct the parties to proceed to arbitration."). Here, Petitioners and Samsung entered into an arbitration agreement; AAA invoiced its fees to Petitioners and Samsung; Petitioners paid; Samsung did not pay; and Samsung refused to arbitrate. An order compelling arbitration "in the manner provided for in [Samsung's] agreement," which uncontrovertibly includes each side paying its share of AAA's fees, is warranted.

Samsung does not dispute the Court's statutory authority to compel arbitration or that Samsung's arbitration agreement incorporates AAA's Rules, which requires each side to pay its share of AAA's fees; it only disputes the Court's authority to concurrently compel arbitration and

order payment of arbitral filing fees. As explained below, the Court is empowered to issue such an order.

## A. Samsung's Arbitral Fees Were Due and Owing to AAA

According to Samsung, any order compelling arbitration and requiring Samsung to "pay[] the arbitration fees and costs necessary to empanel arbitrators and proceed with the arbitrations" is improper because there are "no outstanding fees that SEA has been asked to pay." Opp. at 27 (citing Petition ¶ 43). This, of course, is the result of Samsung's doing. Again, AAA administratively closed the cases because Samsung did not timely pay its share of fees. That AAA closed Petitioners' cases does not mean that Samsung never incurred fees. Samsung's reasoning is also circular—if Samsung were correct, a party previously invoiced fees by an arbitrator never actually owed those fees because the party declined to pay.

*Allemeier,* 2018 WL 6038340 is illustrative. There, the petitioner filed a demand for arbitration with AAA against his former employer. *Id.*, at *1. AAA determined that the petitioner satisfied his filing requirements and directed the employer to pay its share of the filing fees. *Id.*, at *2. An AAA manager then informed the parties that, if the employer did not pay its share, "the arbitration could be suspended or terminated." *Id.* After the employer expressly refused, the AAA manager offered the petitioner the option of advancing the employer's share, which the petitioner declined. *Id.* As a result, AAA administratively closed the case. *Id.* Because of that nonpayment, the petitioner moved to compel.

The court granted the motion and ordered the employer to proceed with the petitioner's arbitration by "***pay[ing] any fees that the AAA allocate[d] to it*** and . . . comply[ing] with any other requirements that the AAA impose[d]." *Id.*, at *4 (emphasis added). The court cited an earlier Ninth Circuit case, *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016), as making clear that a party cannot "refuse to arbitrate by ***choosing*** not to pay for arbitration." *Id.* (emphasis in original). "If

[a party] ha[s] refused to pay for arbitration despite having the capacity to do so, the district court probably could still . . . compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate." *Id.* at 1075 (quoting 9 U.S.C. § 4).

So too here. Samsung refused to pay for arbitration despite having the capacity (and obligation) to do so. Samsung should be compelled to arbitration and pay its share of AAA fees.

**B. The Court Has Authority to Order Samsung to Pay Arbitral Fees Pursuant to the Terms of the Contract**

Samsung also argues that the Court "does not have the authority" to order a party to pay arbitration fees, Opp. at 27, but that authority exists by virtue of the FAA and contract law. *Allemeier*, 2018 WL 6038340, at *2-4 ("Zyppah has not established that the AAA will not hear the parties' dispute if it pays its portion of the AAA's filing fee. Accordingly, the Court orders Zyppah to pay any fees that the AAA allocates to it and to comply with any other requirements that the AAA imposes."); *c.f. Brown*, 430 F.3d at 1012 (9th Cir. 2005) ("We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings."); *Brandifino v. CryptoMetrics, Inc.*, 27 Misc. 3d 513, 522 (N.Y. Sup. Ct. 2010) ("there is precedent for this court to issue an order compelling CryptoMetrics to pay its share of the arbitration fees").

As Samsung often argues to other courts, and the Supreme Court has held, the FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Id.* The FAA codifies the right of a party to specific performance of an arbitration agreement: "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . .

. for an order directing that such arbitration proceed *in the manner provided for in such agreement*." 9 U.S.C. § 4 (emphasis added).

To this end, it is "contrary to 'the structure and purpose of the FAA' to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules." *Tillman*, 825 F.3d at 1076 n.1. In other words, a party cannot avoid the arbitral forum by simply refusing to pay fees required by the underlying arbitration agreement (assuming that party can pay such fees[5]). *See id.*

Here, the Terms contain a provision addressing payment of arbitral fees:

> In a Small Claim case, you shall be required to pay no more than half of the total administrative, facility and arbitrator fees, or $50.00 of such fees, whichever is less, and [Samsung] shall pay the remainder of such fees. Administrative, facility, and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules.

Ex. B-1 at 10; Ex. B-2 at 2; Ex. B-3 § 16.

The Terms also provide that each Petitioner's arbitration "shall be governed by the [AAA's] Commercial Arbitration Rules applicable to consumer disputes." *Id.* Pursuant to the AAA's rules:

- AAA's Multiple Case Filing Fee Schedule in effect when Petitioners filed their demands capped an individual's filing fee at $100 for the first 500 individuals and $50 for the remainder of individuals, and imposes a filing fee on companies of $300 per individual for the first 500 individuals, $225 per individual for the next 1,000 individuals, $150 per individual for the next 1,500 individuals, and $75 per individual for the remainder, plus a $1,400 case management fee for each individual.[6]

---

[5] A party seeking "to invalidate an arbitration agreement [because] arbitration would be prohibitively expensive . . . must provide some individualized evidence to show that [he] is likely to face prohibitive costs in the arbitration and that [he] is financially incapable of meeting those costs." *Davis v. Fenton*, 26 F. Supp. 3d 727, 739 (N.D. Ill. 2014).

[6] AAA Consumer Arbitration Rules (eff. Nov. 1, 2020), https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf.

- The Multiple Case Fee Schedule further provides that "[t]he business's share of filing fees *is due as soon as the employee or individual meets his or her filing requirements*." *Id*. at 2 (emphasis added).

- AAA's Supplementary Rules for Multiple Case Filings, Rule MC-10, provides that "Administrative fees . . . are due *on or before the deadline established by the AAA*. *Neither settlement nor withdrawal* of any individual claim or group of multiple cases *shall result in extension of payment due dates* or waiver of administrative fees. Administrative fees, as well as arbitrator compensation and expenses, for each Multiple Case Filing will be billed and must be paid prior to the AAA completing the applicable administrative procedures."[7]

As explained above, AAA directed Samsung to pay its share of fees. Accordingly, the Court may invoke its authority under Section 4 of the FAA and compel Samsung to arbitrate pursuant to the terms of the arbitration agreement which, in turn, obligates Samsung to pay its share of fees as directed by AAA. *Allemeier*, 2018 WL 6038340, at *2-4; *see also United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) ("Since the arbitration clause also binds the parties to the rules of the California AAA, UCS will have to abide by these administrative requirements, including the payment of the necessary filing fees, in order to obtain [arbitration].").[8] If Samsung does not pay its allocated share of AAA fees following an order compelling arbitration, Samsung will be in violation of a court order and subject to civil contempt.[9]

---

[7] Supplementary Rules, available at, https://www.adr.org/sites/default/files/Supplementary_Rules_MultipleCase_Filings.pdf.

[8] Samsung's reliance on *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2004) is misplaced. Opp at. 29 n.26. As explained in the *Allemeier* order compelling arbitration and payment of fees, "*Lifescan* and *Tillman* involved a party's *inability* to pay required fees. Here, the AAA terminated the parties' arbitration because Zyppah [like Samsung] simply *refused* to pay its portion of the filing fee." 2018 WL 6038340, at *3 (emphasis added).

[9] *See Evans v. Affiliated Computer Servs. Inc.*, 682 F. App'x 608, 609 (9th Cir. 2017) ("The district court did not abuse its discretion in granting defendants' motion for contempt where, on more than one occasion, Evans violated the district court's order to arbitrate her employment-based claims."); *U.S. Titan, Inc. v. Guangzhou Zhen HUA Shipping Co.*, 2003 WL 23309445, at *5 (S.D.N.Y. Sept.

## IV. PETITIONERS DO NOT HAVE ADEQUATE REMEDIES AT LAW

In another remarkable attempt to avoid the consequences of its actions, Samsung dedicates two paragraphs to argue that Petitioners may advance Samsung's arbitral fees which provides Petitioners with a sufficient remedy. Stated differently, while the Court is empowered to compel Samsung to arbitration, Petitioners are not entitled to the "equitable remedy of forcing Samsung to pay arbitration fees because they have an adequate remedy at law." Opp. at 32. This argument deserves short shrift.

"[A]n action to compel arbitration is in essence a suit in equity to compel specific performance of the arbitration agreement." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir. 2008) (internal quotation marks omitted). Petitioners seek specific performance of the arbitration agreement through an order directing Samsung to arbitration. The arbitration agreement requires Samsung to pay its share of filing fees—including if directed by AAA. AAA, in fact, directed Samsung to submit its share of fees. AAA did not order Petitioners to advance Samsung's share. Samsung thus refused to arbitrate and an order compelling Samsung to perform "in the manner provided for in such agreement" is proper. 9 U.S.C. § 4.

In Samsung's view, defendants have no obligation to pay the fees under their self-imposed arbitration contracts because, if they decided not to, it would become the claimants' responsibility to pay the fees for them. None of Samsung's cited authorities stand for this proposition. *Sjogren v. Maybrooks, Inc.*, 214 Ill. App. 3d 888, 892 (1991), for example, was a breach of oral contract case discussing the statute of frauds. The passage in *Phillips v. Assocs. Home Equity Servs., Inc.*,

---

26, 2003) ("The Court . . . orders that unless Guangzhou complies with that Order by proceeding with arbitration in London as promptly as is reasonably practicable, this Court will impose sanctions . . . ."); *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 3549042, at *6 (N.D. Cal. July 24, 2018) (imposing sanctions on defendant where it "delayed and impeded the arbitration on frivolous grounds" and warning of further sanctions for failure to arbitrate).

179 F. Supp. 2d 840, 845 (N.D. Ill. 2001) quoted by Samsung concludes that an arbitration agreement did not waive the substantive right to an award of attorneys' fees conferred by the federal Truth In Lending Act ("TILA"). It does not address a corporate defendant's willful failure to pay arbitral filing fees or whether consumers must shoulder that burden. If anything, *Phillips* supports Petitioners—the court noted that plaintiff, a consumer in a TILA class action, could not be compelled to arbitration because she would be saddled with thousands of dollars in fees for a relatively small claim. *Id.* at 846-47. Samsung, by contrast, seeks to impose its disproportionate share of fees on Petitioners who are individual consumers—an inadequate remedy at a prohibitive and disproportionate cost.

Regardless, Samsung's view is perverse. There is a reason why AAA's rules impose heightened fees on respondent-corporations and reduced fees on petitioner-consumers.[10] Forcing individual consumers to advance Samsung's fees effectively shuts the door to arbitration and deters the pursuit of claims altogether. For that same reason, arbitration agreements imposing heightened fees on consumers are often held unconscionable. *See, e.g, Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1656 (1993) (to secure recovery of $2,000, a fee of $850 was contractually required to commence the arbitration procedure and found to be substantively unconscionable); *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, ¶ 42 (June 29, 2022) (arbitration agreement unconscionable in part because it imposed "unnecessarily costly" fees on homeowner).

Samsung's view also cannot be reconciled with the rule that a party breaches its obligation to arbitrate where, as here, its failure to satisfy its fee obligations causes the arbitral forum to close

---

[10] In addition to the heightened filing fees, only businesses must pay a non-refundable case management fee of $1,400, plus a hearing fee of $500 and at least $1,500 in arbitrator compensation. Consumer Arbitration Rules, Costs of Arbitration at 1-4, available at https://www.adr.org/sites/default/files/Consumer_Fee_Schedule.pdf.

the arbitration. The "fact that the AAA arbitration rules allow the arbitrator to ask [Petitioner] whether [Petitioner] would like to pay in order to prevent termination does not create an obligation for [Petitioner] to do so, nor does it change the fact that [Respondent] owed the unpaid fees." *Allemeier*, 2018 WL 6038340, at *3. Again, it is "contrary to 'the structure and purpose of the FAA' to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules." *Tillman*, 825 F.3d at 1076 n.1.

## V. JUDICIAL ESTOPPEL PREVENTS SAMSUNG FROM TAKING DIAMETRICALLY OPPOSITE POSITION

Petitioners explained that Samsung is judicially estopped from taking diametrically opposite positions in two federal district courts as to the enforceability of its arbitration agreements. Mot. at 1, 10-11. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial estoppel is designed to prevent the perversion of the judicial process") (Easterbrook, J.); *see also Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014) ("The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions."). None of Samsung's cited cases hold that a party who successfully enforced the very same arbitration agreement in one action may subsequently argue against enforceability of that same agreement in a different action.[11]

As is relevant here, Samsung's brief does not dispute the enforceability of its arbitration agreements or walk back the under-oath testimony of its own declarants in prior actions. Opp. at

---

[11] In *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 n.4 (7th Cir. 2003), the court was not presented with any evidence that a party argued "for arbitration" and "against arbitration" and did not discuss that issue. *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995) does not address judicial estoppel. *Pohlman v. NCR Corp.*, No. 12 CV 6731, 2013 WL 3776965, at *5 (N.D. Ill. July 17, 2013) and *Noe v. Smart Mortg. Ctrs., Inc.*, No. 21 CV 1668, 2021 WL 4283027, at *3 n.7 (N.D. Ill. Sept. 21, 2021) involved the inverse scenario—litigating a case in court (where unenforceability of an arbitration agreement is not argued) does not waive the right to arbitrate a subsequent case.

34 ("Here, Samsung has not . . . argued that the Arbitration Agreement is unenforceable"). And

for good reason: judicial estoppel prevents Samsung from successfully enforcing its arbitration

agreement in prior litigation and subsequently arguing that same agreement is unenforceable.

## CONCLUSION

Petitioners respectfully submit that the Court should reject Samsung's abusive, vexatious

tactics and compel Samsung to arbitration, including payment of its share of the arbitration fees.

If the judiciary does not police multi-billion-dollar companies from abusing mandatory arbitration

agreements, nobody will.

Dated:  July 28, 2023

Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

Jonathan B. Cohen (*pro hac vice*
forthcoming)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
(813) 699-4056
jcohen@milberg.com

Stuart A. Davidson
Mark Dearman
Alexander C. Cohen (*pro hac vice*)
**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000

561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
acohen@rgrdlaw.com

Attorneys for Petitioners