# EXHIBIT 34

July 6, 2023

Mr. Enrique Zuniga
Public Trust Liaison
The State Bar of California
845 S. Figueroa Street
Los Angeles, CA 90017-2515

Re:    Request for Inquiry into Potential Ethical Issues Arising in the Context of Mass Arbitration Filings

Dear Mr. Zuniga,

Congratulations on your appointment as the first Public Trust Liaison for the California State Bar! By way of introduction, my name is Jaime Huff and I am the Vice President and Counsel for the Civil Justice Association of California (CJAC). We are a more than 40-year-old nonprofit organization representing a broad and diverse array of businesses and professional associations. A trusted source of expertise in legal reform and advocacy, we confront legislation, laws, and regulations that create unfair litigation burdens on California businesses, employees, and communities.

We are reaching out to express our concern about a phenomenon that has grown in California and across the nation in recent years: abusive "mass arbitrations," in which counsel threaten to file massive numbers of identical arbitration demands against a business—which would immediately obligate the business to pay huge fees to the arbitration provider—to extract a settlement unrelated to the merits of the claims.

As you well know, arbitration greatly benefits consumers and workers who are able to have their disputes resolved fairly in a faster and more efficient manner than in California's overcrowded courts. When handled appropriately, there is nothing inherently wrong with the same set of lawyers representing multiple bona fide clients who seek to pursue legitimate claims. Arbitration enables those claims to be resolved on the merits at a low cost.

But for certain lawyers who have abused the arbitral process, resolution of their clients' claims on the merits is not the goal. Instead, their goal is to use the threat of arbitration fees to coerce settlements unrelated to the merits of the underlying claims. These lawyers use online solicitations to amass as large a pool of clients as possible. That way, they can threaten the targeted business with ever-greater arbitration fees, which the business must pay even if it wins every case. These lawyers' goal is to make it too expensive for the business to defend itself; the only option is to settle.[1]

---

[1] A recent report published by the U.S. Chamber of Commerce Institute for Legal Reform, attached to this letter, provides additional details about the mass arbitration playbook and the ethical issues that it poses. *See* U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* (Feb. 28, 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf ("*Mass Arbitration Shakedown*").

Reasonable observers can debate the policy implications of the rise in mass arbitrations. But when some lawyers treat their clients as fungible entries on a spreadsheet designed to maximize settlement payments and concomitant attorneys' fees—rather than treating their clients as unique individuals with claims to be resolved—ethical abuses predictably can and do occur. Unscrupulous or negligent lawyers may transgress the ethical rules relating to vetting claims, creating an attorney-client relationship, soliciting clients, and communicating with their clients. They may also run afoul of the rules prohibiting the unauthorized practice of law.

Below we discuss some of the issues that are implicated by reports about publicly disclosed mass arbitrations—almost all of which include arbitration demands or threatened arbitration demands involving California claimants or California defendants.[2] And because many threatened or actual mass arbitrations are never made public; the reported issues may be only the tip of the iceberg.

**Failure to vet claims** - because complaints or arbitration demands, and threats to file them, make factual assertions about a client's situation at the time of filing, lawyers are required to investigate and disclose whether their clients are legitimate claimants.[3] Yet business defendants, including businesses located in California, have alleged numerous ways in which lawyers filing or threatening to file mass arbitrations in the names of people recruited online have not properly vetted their putative clients' claims. For example, businesses have alleged that they have faced arbitration demands or threatened arbitration demands brought on behalf of:

- fake or fictitious claimants;
- claimants who are deceased or incarcerated, and thus almost certainly never authorized an arbitration filing;
- individuals who were never consumers of or workers for the defendant, yet assert claims as if they were;
- individuals who are in bankruptcy, and therefore aren't permitted to assert claims outside the bankruptcy process;
- multiple purported individuals who turn out to be the same person;
- individuals who never authorized the filing; and
- individuals already represented by other lawyers in pursuing similar claims against the same company.[4]

Businesses also have argued that the online solicitations used to recruit claimants nationwide, including recruiting of claimants residing in California, worsen the problem because the solicitations are misleading. For example, some businesses have reported that the advertisements make it appear that individuals are merely signing up to participate in an investigation or a class action, rather than an individual arbitration proceeding in which the claimant must engage personally. Businesses also have argued that advertisements describe the claims at issue in

---

[2] *See Mass Arbitration Shakedown*, *supra*, at 19-21 (providing examples of publicly reported mass arbitrations).

[3] *See*, *e.g.*, ABA Model R. of Prof. Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous ...."). As the comments to the rule make clear, lawyers bringing an action have an obligation to "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." *Id.* cmt. 2; *see also Mass Arbitration Shakedown*, *supra*, at 35-38. California's ethical rules similarly require lawyers to have "probable cause" to "bring or continue an action." Cal. R. of Prof. Conduct 3.1(a).

[4] *See Mass Arbitration Shakedown*, *supra*, at 36-38; *see also id.* at 38 (discussing findings by a federal district court judge in California about insufficiently supported arbitration demands).

misleading ways (causing individuals without claims to believe they are affected when they are not).[5]

There has been little to no consequence for the filing or threatened filing of these bogus demands. Unlike in court cases governed by Federal Rule of Civil Procedure 11 or California Code of Civil Procedure § 128.7, businesses have no ready mechanism to seek sanctions against lawyers who file frivolous claims in arbitration. Rather, the mass arbitration filers typically just voluntarily cross the bogus claimants off their list of clients once the defendant identifies them—essentially outsourcing to defendants the vetting that the mass arbitration filers were ethically obligated to conduct *before* bringing the claims. That result turns the ethical rules on their head. And if the arbitration already has been filed, as is sometimes the case, the business already has been forced to pay arbitration fees that are not refunded merely because the arbitration is later withdrawn.

**Failure to convey settlement communications and offers or to obtain informed consent to aggregate settlements** - another problem that occurs when some lawyers purport to represent thousands of individual clients is that they are unable to meet their ethical obligations to communicate with each of their individual clients.

For example, the ethical rules require lawyers to notify clients promptly of all settlement offers.[6] The rules also give clients the right to decide whether to accept or reject the offer and require lawyers to abide by that decision.[7]

Businesses faced with mass arbitration may have good reason to respond with individualized settlement offers. Such offers are often tied to the merits of the particular claims, which vary from claimant to claimant. These offers can make legitimate claimants whole (or more than whole) without the need for any further adversarial proceedings. And (as in civil litigation) defendants sometimes make "nuisance-value" settlement offers that individual plaintiffs would accept when they know that their claims are meritless.

Yet there is reason to doubt that at least some lawyers threatening or filing mass arbitration filings are engaging in the thousands—or even tens or hundreds of thousands—of individualized communications needed to meaningfully convey and discuss settlement offers with each of their clients.[8] Certainly plaintiffs' counsel have little incentive to engage in these discussions. The threat of a mass arbitration filing is most acute when the filing is imminent (unless the defendant agrees to settle, of course), and once the demands are filed, the business has a very short time to try and resolve the demands before it is required to pay case-management, administrative, and arbitrator fees on top of the filing fees it has already paid. Lawyers pursuing mass arbitrations are unlikely to forgo the leverage from these looming fees by having meaningful settlement discussions with each of their clients. But that is what the ethics rules require.

Relatedly, these lawyers often insist on aggregate settlements rather than individualized ones, under which claimants with stronger claims get larger recoveries, claimants with weaker claims get less, and bogus claimants get nothing at all. These lawyers use the threat of arbitration fees that

---

[5] *See id.* at 32-34.

[6] *See* Cal. R. of Prof. Conduct 1.4.1 ("A lawyer shall promptly communicate to the lawyer's client ... all amounts, terms, and conditions, of any written offer of settlement made to the client."); ABA Model R. of Prof. Conduct 1.4.

[7] *See* Cal. R. of Prof. Conduct 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."); ABA Model Rule 1.2(a).

[8] *See Mass Arbitration Shakedown*, *supra*, at 38-39.

even false claims can trigger in order to increase the payoff. The ethics rules require that each client give informed consent to an aggregate settlement.[9] But it is hard to see how lawyers pursuing mass arbitrations designed to extract aggregate settlements can adequately represent both those clients who want to accept whatever settlement the firm decides is fair and those clients who do not. Rather than protecting their individual clients' interests, as the ethical rules require, the lawyers may only be looking out for their own bottom line.

**Unauthorized practice of law** - unfortunately, some lawyers pursuing mass arbitrations do not seem to care where they are licensed to practice, instead simply soliciting consumers or workers across the country—including in California—in order to maximize the number of arbitrations they can threaten to file.

This approach, however, is highly likely to result in the unauthorized practice of law. Many states do not permit law firms to prepare or file arbitration demands or negotiate settlements on behalf of claimants who live in states where their lawyers are not admitted to practice.[10] Such law firms are likely routinely ignoring the requirements of programs like California's Out-of-State Arbitration Counsel (OSAAC) program, which requires the out-of-state attorney to associate with a California attorney, complete an application process for each arbitration taking place in California, and obtain the arbitrator's approval.[11]

Nor could a Florida or Texas lawyer, for example, justify soliciting residents of our state and filing mass arbitrations on their behalf in California by invoking Model Rule of Professional Conduct 5.5(c). That rule applies only when, among other circumstances, the client has previously been represented by the lawyer, or lives in or has substantial contacts with the lawyer's home state.[12]

In sum, the State Bar should investigate these serious alleged ethical violations in the mass-arbitration context. Given the potential for literally hundreds of thousands of ethical violations, this issue could rival the Tom Girardi scandal that has brought discredit to our profession in California. If the Bar finds these ethical concerns to be well founded, it should propose mechanisms to prevent California lawyers, and out-of-state lawyers purporting to pursue arbitrations here, from undermining the State's ethical standards and rules of professional conduct. If you have any questions or would like to chat further, please contact me at jhuff@cjac.org or at 916-956-2905.

Sincerely,

*Jaime R. Huff*

Jaime Huff
Vice President and Counsel, Public Policy

---

[9] *See* Cal. R. of Prof. Conduct 1.8.7 ("A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, … unless each client gives informed written consent."); ABA Model R. of Prof. Conduct 1.8(g) (similar); *see also Mass Arbitration Shakedown*, *supra*, at 39-40.

[10] *See* Cal. R. of Prof. Conduct 5.5(a)-(b); ABA Model R. of Prof. Conduct 5.5(a)-(b); *see also Mass Arbitration Shakedown*, *supra*, at 30-31.

[11] *See* Cal. Code of Civil Proc. § 1282.4; *see also* https://www.calbar.ca.gov/Admissions/Special-Admissions/Out-of-State-Attorney-Arbitration-Counsel-OSAAC.

[12] *See Mass Arbitration Shakedown*, *supra*, at 31-32.