**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HOEG,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Case No.  23 C 1951** |
| **SAMSUNG ELECTRONICS OF AMERICA, INC,** *et al.,* | **Judge Harry D. Leinenweber** |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court GRANTS, in part, Petitioners' Motion to Compel Arbitration (Dkt. No. 28) and DENIES, in part, Defendants' Samsung Electronics America, Inc. ("SEA"), and Samsung Electronics Co., Ltd. ("SEC") (collectively "Samsung"), Motion to Dismiss the Petition (Dkt. No. 39).

## I.   BACKGROUND

Though the particulars differ, this case is related to *Wallrich v. Samsung Elecs. Am., Inc.,* No. 1:22-cv-05506, another arbitration case against the same Samsung Defendants before this Court. After the parties examined the extensive lists of petitioners in both actions, it became apparent that there were 240 overlapping Petitioners. Counsel for Petitioners have investigated and resolved the multiple representations for the 240 individuals identified by Samsung. Petitioners' counsel will continue to represent 24 of the 240 overlapping Petitioners identified in Ex. V to the Suppl. Decl. of Gary M. Klinger

("Suppl. Klinger Decl."). As a result, this Order only concerns the remaining 806 Petitioners, instead of the original 1,028 Petitioners that joined this action.

Samsung requires customers to sign valid, binding arbitration agreements, which command that:

> YOU AND SAMSUNG EACH AGREE THAT ALL DISPUTES BETWEEN YOU AND SAMSUNG RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY.

(Dkt. No. 1, Complaint ("Compl."), Plaintiff Exhibit ("PX") B 1-3).

Adhering to these terms, 806 Petitioners filed individual arbitration actions for alleged violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1, *et seq*. But after paying their portion of the fees as set by the arbitration agreement, Defendant Samsung Electronics America, Inc. ("SEA") rebuffed, failing to pay its portion of fees by the deadline set by the presiding American Arbitration Association arbitrator ("AAA"). The AAA then closed the Petitioners' cases on an administrative basis.

The central issue before the Court is whether a party to an arbitration proceeding may, under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, seek an order compelling arbitration where a duly initiated arbitral proceeding was administratively closed because of the opposition's failure to pay its fees. The answer is yes on all counts. As explained in further detail below, Samsung's scheme is a quintessential refusal to arbitrate under Section 4. Petitioners are entitled to their requested relief.

## II. <u>VENUE</u>

Neither party disputes the Court's jurisdiction. However, Samsung claims that Petitioners failed to establish that venue is proper in this Court. (Dkt. No. 38; Resp'ts' Resp. to Pet.). "Unlike jurisdiction, which refers to the power of a court, venue refers to the right place to exercise that power. Venue determines *which* federal court – usually meaning which federal district – should hear the case. The basic idea is that there needs to be a nexus between the forum and the dispute." *Ford-Reyes v. Progressive Funeral Home,* 418 F.Supp. 3d 289, 286 (N.D. Ill. 2019) (emphasis in original) (cleaned up). As described below, the Court finds venue is proper both because the relevant contracts were executed in Illinois, and because Defendants reside in this district for purposes of personal jurisdiction.

### A. Analysis

Petitioners plead that venue is proper under 28 U.S.C. § 1391 "because many of the Petitioners live in this District and the arbitrations were venued to take place in this District." (Compl., ¶ 25). 28 U.S.C. § 1391 provides that an action "may be brought" in three – and only three – locations:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Thus, Defendants are correct that Petitioners' residence is not directly relevant for purposes of pleading venue, but Petitioners' chosen venue remains proper. Petitioners allege that they entered into arbitration agreements with Samsung, and that Petitioners entered these agreements in Illinois, where they reside. It is well-settled that the location where a party entered a contract – even for sign-in-, slick-, or click-wrap agreements – surmises "a substantial part of the events or omissions giving rise to" contractual disputes under subsection (2) of the venue statute. 28 U.S.C. § 1391(2); *See, e.g., Gamboa v. P&G Comp.*, 2022 WL 1639559, at *4 (N.D. Ill., May 24, 2022) ("Venue is proper in this district under 28 U.S.C. § 1391(b) because Gamboa bought the toothbrush and used it and the app in Illinois, and he alleges that a class of Illinois residents suffered BIPA violations."). Hence, venue is proper in this district because the purported contracts were executed here, in Illinois. (*see* Compl., PX A) (listing individual claimants with residences throughout Illinois).

Samsung also contends that 318 of the 806 Petitioners "appear to reside outside this District." (Dkt. No. 39; Resp'ts Mot. to Dismiss at 11-12). This contention is impossible to address – Samsung does not identify which of the Petitioners live outside of the district. (*See* Resp'ts Mot. to Dismiss at 11-12). But even assuming that Samsung is correct that some Petitioners live outside of this District, venue is still proper because Samsung is subject to personal jurisdiction in this district and therefore is said to "reside" here, making venue appropriate in this district. Recall that 28 U.S.C. § 1391(b)(1) provides that a civil action may be

brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Entities like Samsung can sue or be sued where it is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). In states with more than one judicial district, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. §1391(d).

Aside from the 318 Petitioners that supposedly live outside this District, Samsung raises no issue that it would be subject to personal jurisdiction in this District with respect to their claims: Samsung sells smart phones in this District, and Petitioners' claims arise from the use of those smart phones that were purchased in this District. Without question, there is specific personal jurisdiction over Samsung in this District with respect to those Petitioners. *See, e.g., Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1025 (2021) (For specific personal jurisdiction, "[t]he plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum.") (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.,* 582 U.S. 255, 272 (2017)).

Samsung is subject to personal jurisdiction in this District, so Defendants "reside" here under Section 1391(d) for at least 488 of the Petitioners' claims and thus venue is appropriate. *Hutchinson v. Fitzgerald Equip. Co., Inc.,* 2016 WL 878265, at *3 ("Because we have personal jurisdiction over Defendant, venue

throughout the Northern District of Illinois is proper."). Since venue is proper as to those 488 Petitioners, it would be inappropriate to dismiss the claims of the remaining Petitioners under the doctrine of pendent venue. As explained by a court in this circuit:

> Under the rule that venue must be proper for each claim, it would seem that Pacer's claim against Jimco should be dismissed or transferred. Yet, this outcome is unsatisfactory for it undermines the very goals of judicial economy, fairness to litigants, and convenience to parties and witnesses on which venue is based. If two or more claims arise out of the same set of facts, it is wasteful of judicial resources and unfair to one or more of the parties to require that the claims be litigated in separate judicial districts.

*Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.,* 272 F.Supp. 2d 784, 789 (E.D. Wisc. 2003); *see also CSX Transp., Inc. v. Zayo Grp., LLC,* 2022 WL 2356075, at *7 (S.D. Ind., Mar. 4, 2022) ("[a]ccording to the doctrine of 'pendent venue,' a claim that is not properly venued standing alone still can be heard by a court as long as another properly venued claim arising out of a common nucleus of operative facts also is brought at the same time in the same district.") (citing *Solomon v. Wardlaw Claim Serv., LLC,* 2018 WL 3715690, at *4 (N.D. Ind., Aug. 3, 2018)).   Petitioners' chosen venue is secure.

### III.   <u>MOTION TO COMPEL ARBITRATION</u>

806 Petitioners move to compel Samsung to arbitrate alleged BIPA violations. Under the FAA, arbitration may be compelled if three elements are shown: (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Armbrister v. Pushpin Holdings, LLC,* 896 F.Supp. 2d 746, 752 (citing *Zurich Am. Ins. Co. v. Watts. Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005)).

Excluding supplementary briefing on the matter, Samsung submits 43 pages to respond in direct opposition to Petitioners' motion to compel arbitration (Dkt. No. 38) and an additional 28 pages to urge the Court to dismiss the Petition. (Dkt. No. 39). The Court dissects and rejects each argument below.

### A.  Existence of an Arbitration Agreement

In their Motion to Dismiss, Samsung offers contradictory arguments. First, they claim that Petitioners failed to submit enough evidence that they assented to Samsung's Terms and Conditions. At the very same time, Samsung argues that Petitioners' action is "in direct violation of the arbitration agreement's collection action waiver." (Resp'ts' Resp. to Pet. at 12). Which is it — have Petitioners violated contract terms, or have they failed to provide enough evidence of a valid contract at all?

Briefly assuming Petitioners' have submitted enough evidence, as Samsung's collective action waiver argument demands, the FAA strips the Court of the jurisdiction to decide whether specific clauses, such as the arbitration clause, are valid or have been violated. In *Buckeye Check Cashing, Inc. v. Cardegna,* the Supreme Court explained that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. 440, 445-46 (2006). Thus, "because respondents challenge the [collective action waiver], but not specifically its arbitration provisions, [the arbitration provisions] are enforceable apart from the remainder of the contract. The challenge [to the collective action waiver] should therefore be considered by an arbitrator, not a court." *Id.* at 446. Hence, the appropriate forum to raise any collective action argument is with the AAA, which implicitly approved the posture

of individual arbitration claims filed together at once when the presiding arbitrator wrote to the parties that "[t]he consumers have now met the administrative filing requirements on each of the 1,044 cases filed." (PX F).

But the Court need not and cannot assume that Petitioners have assented to a written agreement to arbitrate because it is "an indispensable element" of the Court's § 4 power to compel arbitration under the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21 (1983); *accord Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1051 (7th Cir. 2020) ("determining whether a valid arbitration agreement exists is generally within the court's authority"); *Muhammad v. Dollar Tree,* 2020 WL 1530750, at *3 (N.D. Ill., Mar. 31, 2020) ("A party seeking to compel arbitration must show," inter alia, "the existence of a valid written arbitration agreement . . . ."). State law governs the Court's assessment. *Scholz v. Americare at Adams Pointe Assisted Living, LLC,* 2021 WL 661841, at *2 (C.D. Ill., Feb. 19, 2021) (citing *Janiga v. Questar Capital Corp.,* 615 F.3d 735, 742 (7th Cir. 2010)).

"While the FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet, most courts apply a standard similar to 'that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure for a motion for summary judgment: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists.'" *Van Tassell v. United Mktg. Grp., LLC,* 795 F.Supp 2d 770, 787 (N.D. Ill. 2011) (quoting *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002)). Accordingly, the party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement

in order to obtain a trial on the merits of the contract." *Id*. "The Court may consider matters outside the pleadings when ruling on a motion to stay the litigation and compel arbitration." *Scholz,* 2021 WL 661841, at *2. Samsung has failed to identify a triable issue of material fact that an agreement to arbitrate existed and, as a consequence, is not entitled to a trial on the matter.

Rather than present any such evidence, Samsung merely attacks the sufficiency of Petitioners' pleading and flips the evidentiary burden on its head, challenging Petitioners' pleading as "bare" and "conclusory." (Defs. Mot. to Dismiss at 18). Samsung argues deficiencies like the fact that Petitioners do not provide "[a]ny evidence that each Petitioner actually purchased a Samsung device, activated the device, and assented to the arbitration agreement" require dismissal. (*Id.*). Not only does this not satisfy Samsung's evidentiary burden, but an ocean of authority compels the Court to rule another way.

For starters, every case Samsung relies on is distinguishable from this case because those courts could not identify any agreement at all. A look at *In re Evanston Northwestern Corporation Antitrust Litigation* reveals that the court dismissed Northshore's motion to compel two parties to arbitration because NorthShore "failed to identify any contract that bind[ed] them to do so." 2015 WL 13735423, at *4 (N.D. Ill., Sept. 4, 2015). Instead, petitioner Northshore provided a weblink, which led to a "Provider Manual," which contained the purported binding arbitration provisions applicable to the respondents. *Id.* The *Northwestern* court then "downloaded the Provider Manual and looked it over — in vain — for the word arbitration" — the *Northwestern*

petitioners failed to identify any arbitration agreement at all. *Id.* Similarly, in *Abernathy v. DoorDash,* the court could not conclude that an agreement existed for the 869 petitioners challenged by DoorDash because "[i]nstead of submitting declarations for [those] petitioners, petitioners' counsel submitted mere 'witness statements' in which they stated, among other things, their residential address, the amount of time they have worked for DoorDash, and that they did not recall opting out of arbitration." 438 F.Supp. 3d 1062, 1065 (N.D. Cal. 2020). This contravened a previous order from the court that asked petitioners to provide a declaration setting forth "the identifying information he or she used to register with DoorDash" and "at least referencing in an ascertainable way the specific arbitration he or she clicked through." *Id.*

Unlike in *Abernathy* and *Northwestern,* the disputed arbitration agreement here is easy to find. Petitioners' attach Samsung's Terms & Conditions as an exhibit, which includes the arbitration agreement quoted above, *supra,* Section I. The leading section of the Terms and Conditions – "Arbitration Agreement" – are also the first words under the title on its cover page. The actual agreement itself manages to fit the word "arbitration" 16 times into just four pages. (PX B-1). The agreement itself instructs that, "Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions." (PX B-1). Accordingly, Petitioners further claim that they are purchasers of Samsung's devices, and that, by opening the packaging and using their devices, they assented to Samsung's Terms & Conditions that come provided with their particular device. 672 of these 806

Petitioners have submitted declarations in support of their assent. (Dkt. No. 43-4, Exhibit X).

Illinois courts have routinely recognized the validity of assenting to contract terms by use, or "adhesion." In *Boomer v. AT&T,* for instance, the Seventh Circuit affirmed that the plaintiff accepted AT&T's contract because he "continued to use his AT & T services." 309 F.3d 404, 415 (7th Cir. 2002). Similarly, in *Hill v. Gateway 2000, Inc.,* the court held the plaintiffs, who purchased a computer from the defendant, to a disputed arbitration clause as the plaintiffs kept the computer beyond 30 days, which constituted an acceptance of the contract's arbitration terms. 105 F.3d 1147, 1150. And, ironically, in *Taylor v. Samsung Electronics America,* Judge Kapala compelled arbitration in Samsung's favor concerning what appears to be an identical agreement to arbitrate, which was assented to in the very same way. 2018 WL 3921145. at *7 (N.D. Ill., Aug. 16, 2018). *See also Swanson v. U-Haul Intern., Inc.,* 2014 IL App (2d) 140227-U, at *6 (2d Dist. 2014) Thus, Petitioners' evidence is more than sufficient to show their assent to Samsung's arbitration agreement and have summarily shown that a valid arbitration agreement exists.

## B. Refusal to Arbitrate

As for the third element needed to compel arbitration, Samsung contends that they never refused to arbitrate. They are partially correct.

In their motion to compel arbitration, Petitioners include two Samsung entities: Samsung Electronics America, Inc., ("SEA") and Samsung Electronics Co., Ltd. ("SEC"). However, Petitioners' arbitration demands only name SEA, not SEC. (*See* PX E). Section 4

of the FAA requires that a party seeking to compel arbitration must first provide "written notice of the demand so that responding parties may agree to arbitrate and thus avoid court involvement. Judicial involvement prior to this sequence is premature, since it is only the alleged failure, neglect, or refusal of another to arbitrate which triggers jurisdiction under 9 U.S.C. § 4.'" *Marzano v. Proficio Mortg. Ventures, LLC,* 942 F.Supp. 2d 781, 798–99 (N.D. Ill. 2013) (cleaned up); *accord* 9 U.S.C. § 4 (party seeking to compel arbitration must provide "[f]ive days' notice in writing of such application"). Petitioners' current request appears to be the first time SEC has been provided notice of any BIPA action Petitioners may have. This clearly demands SEC's dismissal from Petitioners' move to compel arbitration.

It cuts the other way, but SEA's refusal to arbitrate is just as clear. The exhibits tell the following story:

- June 30, 2022: After obtaining notice of Petitioners' intent to file BIPA claims against SEA, SEA counsel Randall Edwards responded by disputing Petitioners' claims and asking to schedule an informal mediation.

- July 7, 2022: Counsel for Petitioners Gary Klinger sends email to schedule meeting with SEA counsel Randall Edwards. Klinger does not receive answer.

- July 30, 2022: Klinger sends a follow-up email to Edwards. Again, he does not receive an answer.

- August 2, 2022: Klinger sends yet another follow-up email, probing, "If Samsung is no longer interested in discussing this, just let us know so we can proceed in arbitration."

- August 8, 2022: SEA Counsel Matt Powers intervenes, and he informs Klinger that co-counsel Edwards was out of the country. He also affirmed that "Samsung would like to proceed first with an informal discussion

where we can give you some information on how the Gallery App works and you can ask us questions."

- September 6, 2022: Klinger provides SEA Counsel with courtesy notice that they would be filing arbitration actions.

- September 6, 2022: Edwards, presumptively back in town, replies to Klinger and again disputes the Petitioners' basis for arbitration, explaining why BIPA does not apply to the Gallery App.

- November 18, 2022: AAA sends an email to both parties acknowledging receipt of individual consumer demands, asserting that, "The consumers have now met the administrative filing requirements on each of the 1,044 cases filed. A list of these cases are *[sic]* enclosed." The e-mail then sets out Samsung's responsibility for payment of the initial administrative filing fees totaling $311,000, due "on or before December 19, 2022."

- November 29, 2022: Petitioners' Counsel Christian Torres asks AAA if "it would be possible to receive an update as to the status of Respondent's payment?"

- December 19, 2022: SEA counsel acknowledges November 18th e-mail from AAA. Randall Edwards sends email to inform AAA "that the parties have agreed to a mediation on March 22, 2023" and requests an extended deadline.

- December 20, 2022: Petitioner Counsel Torres emails AAA again for an update concerning SEA's payment and writes that she understands "that the payment was due yesterday." AAA administrator Victoria responds to all parties, extending SEA's deadline to pay its portion of fees to January 11, 2022.

Finally, on January 18, 2023, after two blown deadlines and last-minute exigencies,

the AAA administratively closed the case, writing:

Pursuant to our correspondence dated November 18, 2022, and December 23, 2022, the American Arbitration Association (AAA) advised the Respondent their portion of the initial administrative filing fees were due no later than January 11, 2023. As the payment for the Respondent's initial filing fee has not been received, the filing requirements for the arbitrations

have not been met. Accordingly, as these cases have not met the filing requirements, we will not place the matters on hold, and will be administratively closing our files. Claimant's filing fee, totaling $38,600.00 will be refunded. Should the parties not settle these matters through mediation, the Claimant may refile these cases.  (PX J).

SEA holds the arbitrators' final words near and dear, arguing Petitioners should and must refile their cases before the Court can compel arbitration under Section 4. Ignoring the irony that SEA is currently *fighting* arbitration, were the Court to accept SEA's argument, Petitioners and SEA could end up in a never-ending game of cat-and-mouse: Petitioners file their arbitration claims and pay their required share of fees, SEA fails to pay, the administrator administratively closes the case, allowing Petitioners to again file and pay their required share of the fees, which SEA will of course fail to do, and so on . . ..

This clever scheme to game the rules of arbitration has already been disavowed by federal courts. In *Tillman v. Tillman,* the Ninth Circuit explained that if a party refuses to "pay for arbitration despite having the capacity to do so," the district court could compel arbitration "under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate.'" 825 F.3d 1069, 1075 (9th Cir. 2016). Applying *Tillman,* a familiar scheme was thrown out by a federal court in *Allemeier v. Zyppah, Inc.,* wherein the petitioner paid his portion of fees; the defendant disputed his portion; the arbitrator affirmed the defendant's obligation to pay the fees after some motion practice and subsequently closed the case on administrative grounds when the defendant failed to pay by the deadline. 2018 WL 6038340 (C.D. Cal., Sept. 21, 2018). The

*Allemeier* court held that the defendant refused to arbitrate by "repeatedly refusing to pay its portion of the filing fee as determined by the AAA." *Id.*, at *4. Similarly, in *Pre-Paid Legal Services, Inc. v. Cahill,* the Tenth Circuit explained that the defendant's refusal to pay was in violation of § 4 where he never showed that he was unable to afford payment, never asked the arbitrators to modify his payment schedule, and never moved for an order requiring petitioners to pay his share for him so that arbitration could continue. 786 F.3d 1287 (10th Cir. 2015). "Instead, by refusing multiple requests to pay, he allowed arbitration to terminate." *Id.* at 1294.

And 20 years ago, Mississippi's Supreme Court weighed in another familiar game of cat-and-mouse on its docket, finding the defendant in default "by refusing to pay its one-half of the costs associated with filing and administrative fees and/or the additional charges presented for payment one month before the scheduled arbitration hearing. This refusal amounts to an act inconsistent with the right to arbitrate." *Sanderson Farms, Inc. v. Gatlin,* 848 So.2d 828, 838 (Miss. 2003). Thus, SEA's repeated failure to pay after multiple deadlines, without any showing of hardship, is a classic refusal to pay scheme in violation of Section 4.

\* \* \*

Because neither party disputes that the arbitration agreement applies to any dispute "ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT" (PX B-1) – including Petitioners' BIPA complaints – Petitioners' have satisfactorily pled every element for the

- 15 -

Court to compel arbitration under Section 4: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement (BIPA violations), and a refusal to arbitrate. *Armbrister,* 896 F.Supp. 2d 746, 752.

After nearly two years of motion practice, it is time for Petitioners to have their claims arbitrated. Hence, Samsungs' Motion to Stay (Dkt. No. 48) is also denied; the Court is unpersuaded that any current appeals will materially affect this decision. As such, the Court orders SEA to stick to its own terms and arbitrate Petitioners' BIPA claims. And despite Samsung's contentions, this Order can and does compel Samsung to pay the requisite fees as set by the AAA. *See Allemeier,* 2018 WL 6038340, at *4 (ordering the defendant to pay arbitration fees); *Pre-Paid Legal Servs., Inc.,* 786 F.3d 1287 (10th Cir. 2015) (affirming district court's order compelling the defendant to pay arbitration fees).

## IV.   CONCLUSION

For the reasons stated herein, the Court GRANTS in part Petitioners' Motion to Compel Defendant Samsung Electronics America, Inc., to arbitration as to the Petitioners attached in the Complaint, (Dkt. No. 1) and DENIES in part Defendants' Motion to Dismiss (Dkt. No. 39). Defendant Samsung Electronics, Co., Inc., is DISMISSED from the matter. Defendants' Motion to Stay is DENIED. (Dk. No. 48).

**IT IS SO ORDERED.**

_____

Harry D. Leinenweber, Judge
United States District Court

Dated: 2/15/2024

- 16 -